ORIGINAL

Edwin J. Richards #43855
Christopher D. Glos #210877
KUTAK ROCK LLP
Suite 1100
18201 Von Karman Avenue
Irvine, CA 92612-1077
Telephone: (949) 417-0999
Facsimile: (949) 417-5394

Attorney for Plaintiffs
ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and STEADFAST INSURANCE COMPANY, a Delaware corporation

FILED
AUG 29 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and STEADFAST INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL L. PHILPOT, an individual; VIRGINIA B. HIRSCH, an individual; JOHN B. KUYKENDALL, an individual; RENE ALEJANDRO LACAPE, an individual; C. RICHIE MCNAMEE, an individual; and NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, an Iowa corporation,<br><br>Defendants. | '08 CV 1588 DMS NLS<br>Case No. ________<br><br>**COMPLAINT** |

Plaintiffs ZURICH AMERICAN INSURANCE COMPANY ("Zurich") and STEADFAST INSURANCE COMPANY ("Steadfast") (Zurich and Steadfast are collectively referred to herein as "Plaintiffs"), as and for their Complaint against Defendants herein, allege, aver, and assert as follows:

**I. NATURE OF THIS ACTION**

1. This matter concerns the rights and obligations under Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability insurance policies issued by Zurich to Virginia B. Hirsch ("Hirsch") and Rene Alejandro Lacape ("Lacape") and issued by Steadfast to Michael L. Philpot ("Philpot"), John B. Kuykendall ("Kuykendall"), C. Richie McNamee ("McNamee"), and Lacape (Philpot, Hirsch, Kuykendall, McNamee and Lacape are collectively referred to herein as the "Agent Insureds") with respect to the allegations in *North American Company for Life and Health Insurance v. Michael L. Philpot, Virginia B. Hirsch, John B. Kuykendall, Rene Alejandro Lacape, C. Richie McNamee, and Hector Paez Valdez*, No. 08 CV 0270 BEN NLS (S.D. Cal.) ("Underlying Suit"). A true and correct copy of that complaint ("Underlying Complaint") is attached as Exhibit 1.

**II. PARTIES**

2. Plaintiff Zurich is an insurance company and a corporation organized under the laws of the State of New York with its principal place of business in Illinois.

3. Plaintiff Steadfast is an insurance company and a corporation organized under the laws of the State of Delaware with its principal place of business in Illinois.

4. Upon information and belief, Defendant Philpot resides in and is a citizen of California.

5. Upon information and belief, Defendant Hirsch resides in and is a citizen of California.

6. Upon information and belief, Defendant Kuykendall resides in and is a citizen of California.

7. Upon information and belief, Defendant Lacape resides in and is a citizen of California.

8. Upon information and belief, Defendant McNamee resides in and is a citizen of California.

9. Upon information and belief, defendant North American Company for Life and Health Insurance ("North American") (Philpot, Hirsch, Kuykendall, Lacape, McNamee and North American are collectively referred to herein as the "Defendants") is an insurance company and corporation organized under the laws of the State of Iowa with its principal place of business in Iowa.

## III. JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of all claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because Zurich and Steadfast are New York and Delaware corporations, respectively, each of the Defendants is either a citizen of California or Iowa, and the amount in controversy herein exceeds the sum of $75,000, exclusive of costs and interests.

11. This Court also has jurisdiction over the person of each party hereto, as Plaintiffs, by filing this civil action, consent to the Court's jurisdiction over them for purposes of this action only, and Defendants Philpot, Hirsch, Kuykendall, Lacape, McNamee, and North American all are legally present in California for all legal purposes, including for suit, and/or they have transacted business within this state or committed an allegedly tortious act within this state, or otherwise committed acts in this state from which the claims for relief asserted herein arise.

12. Venue for litigating and trying this civil action is properly laid in this judicial district pursuant to, *inter alia*, 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims for relief asserted herein occurred in this judicial district.

## IV. DECLARATORY RELIEF

13. This is an action by Plaintiffs for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57, Federal Rules of Civil Procedure, seeking an adjudication of the rights and obligations of the parties under the respective insurance policies issued by Zurich and Steadfast which are the subject of this Complaint.

14. There is an actual substantial and justiciable controversy between the parties concerning the rights and duties of the parties with respect to insurance coverage for the

below-mentioned claims, including, but not limited to, indemnification under the respective insurance policies.

15. A judicial determination is necessary and appropriate at this time so that the parties may ascertain their present and/or future obligations.

## V. GENERAL ALLEGATIONS

### A. The Underlying Complaint

16. The Agent Insureds were producers of insurance policies, including those issued by Defendant North American. (Ex. 1 at ¶¶ 2-11, 33-34). Philpot was an insurance general agent for North American. (Ex. 1 at ¶ 2). Hirsch, Kuykendall, Lacape and McNamee were insurance sales agents for North American. (Ex. 1. at ¶¶ 7-10).

17. In the Underlying Complaint, North American alleges the Agent Insureds engaged in a scheme to "illegally obtain compensation" for the sale of life insurance policies issued by North American and other insurers. (Ex. 1 at ¶ 3).

18. The Agent Insureds allegedly perpetuated an "Illegal Commission Scheme" from 2004 to May 2007, whereby they offered and paid monetary incentives to individuals who posed as "legitimate potential insureds" and applied for North American life insurance policies (and policies issued by other companies) so the Agent Insureds could collect commissions and bonuses on the sales of these policies, which ultimately lapsed with significant negative account values. (*E.g.*, Ex. 1 at ¶¶ 5, 36).

19. In the Underlying Complaint, North American contends it paid $24 million in commissions and bonuses to the Agent Insureds arising from these "Sham Policies" and that the Agent Insureds were thereby "able to wrongfully collect at least $19 million in unearned, ill-gotten up-front sales commissions." (Ex. 1 at ¶ 48).

20. The Underlying Complaint alleges nine causes of action against the Agent Insureds: (1) Statutory Unfair Competition; (2) Breach of Contract; (3) Breach of the Covenant of Good Faith and Fair Dealing; (4) Fraud; (5) Negligence; (6) Unjust Enrichment; (7) Violations of 18 U.S.C. § 1962(c) (RICO); (8) Declaratory Relief; and (9) Accounting. (Ex. 1 at 1).

///

21. The Underlying Complaint seeks disgorgement, restitution, compensatory damages, exemplary and punitive damages, treble damages, an accounting, attorneys' fees, costs, and interest. (Ex. 1, Prayer).

**B. The Policies**

**1. Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy Issued by Zurich**

22. On November 1, 2007, Zurich issued Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy No. 9678553 01 ("North American Policy") to Named Insured "Agents Professional Liability Service Organization". A true and correct copy of the North American Policy is attached hereto as Exhibit 2.

23. The North American Policy affords life insurance agents errors and omissions liability insurance on a claims made and reported basis.

24. The North American Policy has a policy period of November 1, 2007 to November 1, 2008. (Ex. 2 at 1).

25. The Professional Liability Insuring Agreement of the North American Policy provides, in pertinent part:

> The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4 of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Insured" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:
>
> 1. The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period"[.]

(Ex. 2, Insuring Agreement § I(A)).

///

26. The North American Policy defines "Insured" as:

1. The "Named Certificate Holder";

2. Any corporation, partnership or other business entity which engages in "Professional Services" and which is owned by the "Named Certificate Holder" and then only with respect to those operations of the business entity related to the "Professional Services" provided by the "Named Certificate Holder";

3. Any person acting on behalf of the "Named Certificate Holder" who was or is an employee of the "Named Certificate Holder" or "Named Certificate Holder's" business entity or a partner, officer, director or stockholder of the "Named Certificate Holder's" business entity, provided that such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"; and

4. The heirs, executors, administrators, or legal representatives of the "Named Certificate Holder" in the event of death, incapacity or bankruptcy.

(Ex. 2, Definitions § II(J); Endorsement ("End.") 2).

27. The North American Policy defines "Named Certificate Holder" as the "Agent", the "General Agent", or the "Registered Representative" shown in Item 1 of the "Certificate of Insurance". (Ex. 2, Definitions § II(L)).

28. The North American Policy defines "Certificate of Insurance" as "the certificate issued in accordance with the 'Master Policy' to the 'Named Certificate Holder'". (Ex. 2, Definitions § II(D)).

29. Upon information and belief, Defendants Hirsch and Lacape were individuals identified by name in Item 1 on certificates or verifications of insurance issued by Zurich. As such, Hirsch and Lacape were "Agents," "Named Certificate Holders," and "Insureds" as defined by the North American Policy.

30. The North American Policy defines "Professional Services" as:

1. The sale or servicing of:

a. Life insurance, accident and health insurance, disability income insurance and annuities;

KUTAK ROCK LLP
18201 VON KARMAN AVE
IRVINE, CA 92612-1077

b. Variable insurance products, including but not limited to variable annuities, flexible and scheduled premium annuities and variable life insurance;

c. Employee benefit plans funded with those products listed in Section II – DEFINITIONS, Subsections, P.1.a., b., and d.

d. Mutual funds registered with the Securities and Exchange Commission and sold by a "Registered Representative" through a "Broker/Dealer" so long as at the time of sale the "Registered Representative" had a contract with such "Broker/Dealer" and was authorized to sell such mutual funds.

2. The supervision and training by a "General Agent" over the conduct of any "Insured".

(Ex. 2, Definitions § II(P); End. 3).

31. The North American Policy provides it does not apply to any claim "[m]ade against any 'Insured' or the 'Additional Insured'" by:

1. Any "Insured";

2. Any "Additional Insured";

3. Any "Broker/Dealer";

4. Any other insurance company;

5. Any other insurance agency; or

6. Any person or entities who in the past were, but are not currently, parties to an agent contract with the "Additional Insured".

(Ex. 2, Exclusions § VI(K)).

32. The North American Policy defines "Additional Insured" as "the company(ies) shown in Item 2 of the 'Certificate of Insurance'". (Ex. 2, Definitions § II(A)).

33. North American is an "Additional Insured" under the North American Policy. Additionally, North American is an "insurance company".

34. The North American Policy provides it does not apply to any claim:

Arising out of any act, error or omission of the "Insured" committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently

> proven by a final adjudication. In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company.

(Ex. 2, Exclusions § VI(A)).

35. The North American Policy provides it does not apply to any claim "[a]rising out of the 'Insured's' inability or refusal to pay or collect premium, claim or tax monies, including surcharges or assessments of any kind[.]" (Ex. 2, Exclusions § VI(M)).

36. The North American Policy provides it does not apply to any claim "[a]rising out of the 'Insured's' activities in exercising discretionary authority, management or control over a customer's account[.]" (Ex. 2, Exclusions § VI(V)).

37. The North American Policy provides it does not apply to any claim:

> Prior to the first effective date of coverage issued to the "Named Certificate Holder", no "Insured" had any basis:
>
> 1. To believe that any "Insured" had knowledge of any negligent act, error or omission or "Personal Injury";
>
> 2. To foresee that any such negligent act, error or omission or "Personal Injury" or any related negligent act, error or omission or "Personal Injury" might reasonably be expected to be the basis of a "Claim".

(Ex. 2, Exclusions § VI(Z)).

38. The North American Policy affords coverage for "damages", which are defined as:

> [T]he monetary amounts for which an "Insured" is legally liable, including sums paid as judgments, awards or settlements, and any taxes, fines or penalties incurred by a third party and included in such third party's "Claim" against the "Insured." However, "Damages" do not include:
>
> 1. Fines or penalties imposed by law, or taxes levied on or against an "Insured" or "Additional Insured";
>
> 2. Punitive, exemplary or treble damages;
>
> 3. The return, restitution, offset or withdrawal of fees, premiums, commissions or brokerage charges, including but not limited to, surrender charges and contingent deferred sales charges;
>
> 4. Non-pecuniary or injunctive relief; or
>
> 5. Judgments or awards from acts deemed uninsurable by law.

(Ex. 2, Definitions § II(G)).

39. The North American Policy provides coverage only with respect to negligent acts, errors or omissions that "occurred on or after the 'Retroactive Date'". (Ex. 2, Insuring Agreements § I(A)(1)).

40. The North American Policy defines "Retroactive Date" as:

> the earlier of the "Named Certificate Holder's" date of first continuous contract with the "Additional Insured" or the inception date of the "Named Certificate Holder's" first claims made Life Agents or Registered Representatives Professional Liability policy from which date of coverage has been maintained in force without interruption.

(Ex. 2, Definitions § II(R); End. 4).

41. Section 533 of the California Insurance Code proscribes insurance for "loss caused by the willful act of the insured". (Cal. Ins. Code § 533).

**2. Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy Issued by Steadfast**

42. Steadfast issued Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy No. EOC 9213881-02 ("West Coast Policy") (the North American Policy and the West Coast Policy are referred together herein as the "Policies") to Named Insured "The Agents of West Coast Life Insurance Company". A true and correct copy of the West Coast Policy is attached hereto as Exhibit 3.

43. The West Coast Policy has a policy period of December 31, 2007 to December 31, 2008. (Ex. 3 at 1).

44. The West Coast Policy affords life insurance agents errors and omissions coverage on a claims made and reported basis.

45. The Professional Liability Insuring Agreement of the West Coast Policy provides, in pertinent part:

> The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4 of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Insured" and reported to the Company in

> writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:
>
> 1. The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period"[.]

(Ex. 3, Insuring Agreement § I(A)).

46. The West Coast Policy defines "Insured" as

> 1. The "Named Certificate Holder";
>
> 2. Any corporation, partnership or other business entity which engages in "Professional Services" and which is owned by the "Named Certificate Holder" and then only with respect to those operations of the business entity related to the "Professional Services" provided by the "Named Certificate Holder";
>
> 3. Any person acting on behalf of the "Named Certificate Holder" who was or is an employee of the "Named Certificate Holder" or "Named Certificate Holder's" business entity or a partner, officer, director or stockholder of the "Named Certificate Holder's" business entity, provided that such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"; and
>
> 4. The heirs, executors, administrators, or legal representatives of the "Named Certificate Holder" in the event of death, incapacity or bankruptcy.

(Ex. 3, Definitions, § II(J); End. 4).

47. The West Coast Policy defines "Named Certificate Holder" as the "Agent", the "General Agent", or the "Registered Representative" shown in Item 1 of the "Certificate of Insurance". (Ex. 3, Definitions § II(L)).

48. The West Coast Policy defines "Certificate of Insurance" as "the certificate issued in accordance with the 'Master Policy' to the 'Named Certificate Holder'". (Ex. 3, Definitions § II(D)).

49. Upon information and belief, Defendants Philpot, Kuykendall, Lacape, and McNamee were individuals identified by name in Item 1 on certificates or verifications of insurance issued by Steadfast as evidence of insurance. As such, Philpot, Kuykendall, Lacape, and McNamee were "Agents," "Named Certificate Holders," and "Insureds" as defined by the West Coast Policy.

50. The West Coast Policy defines "Professional Services" as:

1. The sale or servicing of:

a. Life insurance, accident and health insurance, disability income insurance and annuities;

b. Variable insurance products, including but not limited to variable annuities, flexible and scheduled premium annuities and variable life insurance;

c. Employee benefit plans funded with those products listed in Section II – DEFINITIONS, Subsections, P.1.a., b., and d.

d. Mutual funds registered with the Securities and Exchange Commission.

e. Financial Planning

2. The supervision and training by a "General Agent" over the conduct of any "Insured".

(Ex. 3, Definitions § II(P); End. 2; End. 6).

51. The West Coast Policy provides it does not apply to any claim: "[m]ade against any 'Insured' or the 'Additional Insured'" by:

1. Any "Insured";

2. Any "Additional Insured";

3. Any "Broker/Dealer";

4. Any other insurance company;

5. Any other insurance agency; or

6. Any person or entities who in the past were, but are not currently, parties to an agent contract with the "Additional Insured".

(Ex. 3, Exclusions § VI(K)).

52. North American is an "insurance company."

53. The West Coast Policy provides it does not apply to any claim:

> Arising out of any act, error or omission of the "Insured" committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication. In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company.

(Ex. 3, Exclusions § VI(A)).

54. The West Coast Policy provides it does not apply to any claim "[a]rising out of the 'Insured's' inability or refusal to pay or collect premium, claim or tax monies, including surcharges or assessments of any kind". (Ex. 3, Exclusions § VI(M)).

55. The West Coast Policy provides it does not apply to any claim:

> If prior to the first effective date of coverage issued to the "Named Certificate Holder", the "Insured" had any basis:
>
> 1. To believe that any "Insured" had knowledge of any negligent act, error or omission or "Personal Injury";
>
> 2. To foresee that any such negligent act, error or omission or "Personal Injury" or any related negligent act, error or omission or "Personal Injury" might reasonably be expected to be the basis of a "Claim".

(Ex. 3, Exclusions § VI(U); End. 9).

56. The West Coast Policy affords coverage for "damages", which are defined as:

> [T]he monetary amounts for which an "Insured" is legally liable, including sums paid as judgments, awards or settlements, and any taxes, fines or penalties incurred by a third party and included in such third party's "Claim" against the "Insured." However, "Damages" do not include:
>
> 1. Fines or penalties imposed by law, or taxes levied on or against an "Insured" or "Additional Insured";
>
> 2. Punitive, exemplary or treble damages;
>
> 3. The return, restitution, offset or withdrawal of fees, premiums, commissions or brokerage charges, including but not limited to, surrender charges and contingent deferred sales charges;
>
> 4. Non-pecuniary or injunctive relief; or

5. Judgments or awards from acts deemed uninsurable by law.

(Ex. 3, Definitions § II(G)).

57. The West Coast Policy provides coverage only with respect to negligent acts, errors, or omissions that "occurred on or after the "Retroactive Date". (Ex. 3, Insuring Agreements § I(A)(1)).

58. The West Coast Policy defines "Retroactive Date" as follows:

> the earlier of the inception date of the "Named Certificate Holder's" first claims made agent's professional liability policy from which date coverage has been maintained in force without interruption and for which written proof is provided to the Company or the "Named Certificate Holder's" first date of continuous, uninterrupted contract with the "Additional Insured".

(Policy, End. 7).

59. Section 533 of the California Insurance Code proscribes insurance for "loss caused by the wilful act of the insured". (Cal. Ins. Code § 533).

### 3. Retroactive Dates

60. Upon information and belief, the Retroactive Dates for each Agent Insured are as follows: Hirsch – November 1, 2006; Lacape – September 3, 2003; Kuykendall – July 1, 2007; Philpot – December 31, 2007; and McNamee – December 31, 2007.

## VI. CLAIMS FOR RELIEF

### A. First Claim for Relief
**(For a Declaration That the Underlying Suit is Not Covered by the Policies Because the Underlying Suit is by any Additional Insured or Insurance Company)**

61. Plaintiffs incorporate and reallege Paragraphs 1 through 60 above as if fully set forth herein.

62. A dispute and controversy now exists concerning rights and duties under the Policies. The Policies do not apply to any claim made by "[a]ny 'Additional Insured'" or "[a]ny other insurance company". (Ex. 2, Exclusions § VI(K); Ex. 3, Exclusions § VI(K)).

63. The Underlying Suit was filed by North American, which is an "Additional Insured" with respect to the North American Policy and an "insurance company" under the West

Coast Policy. Accordingly, coverage for the Underlying Suit with respect to all the Agent Insureds is precluded under the North American Policy and the West Coast Policy.

64. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and that Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with respect to the Underlying Suit.

65. A judicial declaration is necessary and appropriate at this time and under the circumstances in order that Plaintiffs may ascertain their rights and duties regarding potential liabilities arising from the Underlying Suit.

**B. Second Claim for Relief**
**(For a Declaration That the Underlying Suit is Not Covered by the Policies Because the Underlying Suit Does Not Fall Within the Policies' Insuring Agreements)**

66. Plaintiffs incorporate and reallege Paragraphs 1 through 65 above as if fully set forth herein.

67. The Policies provide coverage only for Claims that arise out of the Insured's "negligent act, error or omission" in the "rendering or failure to render 'Professional Services'". (Ex. 2, Insuring Agreement § I(A); (Ex. 3, Insuring Agreement § I(A)).

68. The alleged acts, errors, or omissions in the Underlying Complaint are not negligent acts, errors, or omissions in the "rendering or failure to render 'Professional Services'". Rather, the Underlying Suit alleges intentional, illegal acts by the Agent Insureds. (*E.g.*, Ex. 1 ¶ 96). Moreover, the alleged acts do not involve the "rendering or failure to render 'Professional Services'". Accordingly, coverage for the Underlying Suit with respect to all the Agent Insureds is outside the coverage of the North American Policy and the West Coast Policy.

69. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with regard to the Underlying Suit.

///

///

///

**C. Third Claim for Relief**

**(For a Declaration That the Underlying Suit is Not Covered by the Policies Because the Underlying Suit Arises Out of Acts, Errors or Omissions Committed with Dishonest, Fraudulent, Malicious or Knowingly Wrongful Purpose or Intent)**

70. Plaintiffs incorporate and reallege Paragraphs 1 through 69 above as if fully set forth herein.

71. The Policies do not apply to any claim "[a]rising out of any act, error or omission of the 'Insured' committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent". (Ex. 2, Exclusions § VI(A); Ex. 3, Exclusions § VI(A)).

72. Among other allegations, the Underlying Complaint contends: the Agent Insureds engaged in an "Illegal Commission Scheme"; the Agent Insureds "unlawfully" collected commissions and bonuses; the Illegal Commission Scheme involved "fraudulent and ill-gotten commissions, bonuses, rebates and free short-term insurance"; the Agent Insureds collected "unearned, ill-gotten" commissions; the Agent Insureds "continue to defraud and injure" insurance companies; the Agent Insureds engaged in "unlawful, unfair and/or fraudulent business acts and practices" in violation of California law; the Agent Insureds "acted intentionally, and with malice, oppression and fraud"; and the Agent Insureds engaged in "fraudulent conduct" and "fraudulently induced" North American into issuing the "Sham Policies." (Ex. 1 ¶¶ 5, 13, 38, 51, 56, 88, 96). Accordingly, coverage for the Underlying Suit with respect to all the Agent Insureds is precluded under the North American Policy and the West Coast Policy.

73. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and that Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with regard to the Underlying Suit.

///

///

///

///

///

**D. Fourth Claim for Relief**
**(For a Declaration That the Underlying Suit is Not Covered by the Policies Because the Underlying Suit Arises Out of the Agent Insureds' Inability or Refusal to Pay or Collect Premium, Claim or Tax Monies)**

74. Plaintiffs incorporate and reallege Paragraphs 1 through 73 above as if fully set forth herein.

75. The Policies do not apply to any claim "[a]rising out of the 'Insured's' inability or refusal to pay or collect premium, claim or tax monies, including surcharges or assessments of any kind". (Ex. 2, Exclusions § VI(M); Ex. 3, Exclusions § VI(M)).

76. The Underlying Complaint alleges the Insured Agents solicited and sold life insurance policies without the intention of collecting premiums. (*E.g.*, Ex. 1 ¶ 45). Accordingly, Coverage for the Underlying Suit with respect to all the Agent Insureds is precluded under the North American Policy and the West Coast Policy.

77. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and that Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with regard to the Underlying Suit.

**E. Fifth Claim for Relief**
**(For a Declaration That the Underlying Suit is Not Covered by the Policies Because the Agent Insureds had Knowledge of or a Basis to Foresee Negligent Acts, Errors or Omissions )**

78. Plaintiffs incorporate and reallege Paragraphs 1 through 77 above as if fully set forth herein.

79. The Policies do not apply to an y claim if prior to the first effective date of coverage issued to the "Named Certificate Holder", any "Insured" had any basis "[t]o believe that any 'Insured' had knowledge of any negligent act, error or omission or 'Personal Injury'" or "[t]o foresee that any such negligent act, error or omission or 'Personal Injury' or any related negligent act, error or omission or 'Personal Injury' might reasonably be expected to be the basis of a 'Claim'". (Ex. 2, Exclusions § VI(Z); Ex. 3, Exclusions § (U); End. 9).

///

KUTAK ROCK LLP
18201 VON KARMAN AVE
IRVINE, CA 92612-1077

80. The North American Policy incepted on November 1, 2006. (Ex. 2, Declarations). The West Coast Policy incepted on December 31, 2005. (Ex. 3, Declarations). However, the Underlying Complaint alleges acts by the Agent Insureds that occurred as early as 2004.

81. Accordingly, coverage for the Underlying Suit with respect to all the Agent Insureds is precluded under the North American Policy and the West Coast Policy.

82. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and that Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with regard to the Underlying Suit.

**F. Sixth Claim for Relief**
**(For a Declaration That the Underlying Suit is Not Covered by the North American Policy Because the Underlying Suit Arises Out of the Agent Insureds' Activities in Control of Customer Accounts)**

83. Plaintiffs incorporate and reallege Paragraphs 1 through 82 above as if fully set forth herein.

84. The North American Policy does not apply to any claim arising "out of the 'Insured's' activities in exercising discretionary authority, management or control over a customer's account". (Ex. 2, Exclusions § VI(V)).

85. The Underlying Complaint alleges, and the Underlying Suit arises out of, the exercise of discretionary authority, management, or control over customer accounts by the Agent Insureds. Accordingly, coverage for the Underlying Suit is precluded under the North American Policy.

86. Zurich is entitled to a declaratory judgment in its favor declaring that no coverage exists for the Underlying Suit under the North American Policy and that Zurich has no duty to defend or indemnify Hirsch or Lacape under the North American Policy with respect to the Underlying Suit.

///

///

///

///

**G. Seventh Claim for Relief**
**(For a Declaration That the Underlying Suit is Not Covered by the Policies Pursuant to Application of the Policies' Retroactive Dates)**

87. Plaintiffs incorporate and reallege Paragraphs 1 through 86 above as if fully set forth herein.

88. The Policies do not apply to any claim with respect to negligent acts, errors or omissions that "occurred on or after the "Retroactive Date". (Ex. 2, Insuring Agreements § I(A)(1); Ex. 3, Insuring Agreements § I(A)(1)).

89. Upon information and belief, the Retroactive Dates for each Agent Insured are as follows: Hirsch – November 1, 2006; Lacape – September 3, 2003; Kuykendall – July 1, 2007; Philpot – December 31, 2007; and McNamee – December 31, 2007.

90. Upon information and belief, the Underlying Complaint alleges acts prior to the Retroactive Dates listed in paragraph 89 *supra*.

91. Accordingly, coverage for the Underlying Suit is precluded under the North American Policy and the West Coast Policy to the extent the Underlying Suit arises from acts prior to the Retroactive Dates.

92. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and that Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with respect to the Underlying Suit.

**H. Eighth Claim for Relief**
**(For a Declaration That the Underlying Suit is Not Covered by the Policies Because the Underlying Suit Alleges Willful Acts)**

93. Plaintiffs incorporate and reallege Paragraphs 1 through 92 above as if fully set forth herein.

94. Section 533 of the California Insurance Code prohibits insurance for "loss caused by the wilful act of the insured". (Cal. Ins. Code § 533).

95. The Underlying Complaint alleges: the Agent Insureds engaged in an "Illegal Commission Scheme"; the Agent Insureds "unlawfully" collected commissions and bonuses; the Illegal Commission Scheme involved "fraudulent and ill-gotten commissions, bonuses, rebates

and free short-term insurance"; the Agent Insureds collected "unearned, ill-gotten" commissions; the Agent Insureds "continue to defraud and injure" insurance companies; the Agent Insureds engaged in "unlawful, unfair and/or fraudulent business acts and practices" in violation of California law; the Agent Insureds "acted intentionally, and with malice, oppression and fraud"; and the Agent Insureds engaged in "fraudulent conduct" and "fraudulently induced" North American into issuing the "Sham Policies." (Ex. 1 ¶¶ 5, 13, 38, 51, 56, 88, 96).

96. Accordingly, coverage for the Underlying Suit is precluded under the North American Policy and the West Coast Policy.

97. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for the Underlying Suit under the Policies and that that Plaintiffs have no duty to defend or indemnify the Agent Insureds under the Policies with respect to the Underlying Suit.

**I. Ninth Claim for Relief**
**(For a Declaration That Certain Damages Are Outside Coverage Afforded by the Policies)**

98. Plaintiffs incorporate and reallege Paragraphs 1 through 97 above as if fully set forth herein.

99. The Policies afford coverage only for "damages," which are defined as:

> [T]he monetary amounts for which an "Insured" is legally liable, including sums paid as judgments, awards or settlements, and any taxes, fines or penalties incurred by a third party and included in such third party's "Claim" against the "Insured." However, "Damages" do not include:
>
> 1. Fines or penalties imposed by law, or taxes levied on or against an "Insured" or "Additional Insured";
> 2. Punitive, exemplary or treble damages;
> 3. The return, restitution, offset or withdrawal of fees, premiums, commissions or brokerage charges, including but not limited to, surrender charges and contingent deferred sales charges;
> 4. Non-pecuniary or injunctive relief; or
> 5. Judgments or awards from acts deemed uninsurable by law.

(Ex. 2, Definitions § II(G); Ex. 3, Definitions § II(G)).

100. The Underlying Complaint seeks punitive, exemplary, treble, and restitutionary damages, including the return of commissions, injunctive relief, and awards which may be uninsurable by law, including alleged intentional acts. Such forms of relief are outside coverage afforded by the Policies.

101. To the extent the Underlying Suit may be within the coverage of the Policies, which it is not, such forms of relief are outside the coverage of the Policies.

102. Plaintiffs are entitled to a declaratory judgment in their favor declaring that no coverage exists for such forms of relief and that Plaintiffs have no duty to indemnify the Insureds under the Policies for any such relief that may be awarded in the Underlying Suit.

## VII. PRAYER FOR RELIEF

WHEREFORE, Zurich and Steadfast pray that judgment be entered in their favor and against Defendants as follows:

1. Declaring the Underlying Suit is outside the coverage afforded by the Policies, and Plaintiffs have no duty to defend or indemnify the Agent Insureds in connection therewith;

2. In the alternative, declaring that any damages awarded to North American in the Underlying Suit are excluded by the Policies and that Plaintiffs have no duty to indemnify the Agent Insureds in connection therewith; and

3. Awarding Plaintiffs such additional relief as shall be deemed appropriate in the circumstances, together with their costs and expenses.

Dated: August 28, 2008

KUTAK ROCK LLP

By: ______________________
Edwin J. Richards #43855
Christopher D. Glos, #210877
Attorney for Plaintiffs
ZURICH AMERICAN INSURANCE COMPANY and STEADFAST INSURANCE COMPANY

EXHIBIT 1

ORIGINAL

Robert D. Phillips, Jr. (SBN 82639)
rphillips@reedsmith.com
Miles M. Cooley (SBN 206783)
mcooley@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514

Telephone: 213.457.8000
Facsimile: 213.457.8080

Attorneys for Plaintiff
North American Company For Life and Health Insurance

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,

Plaintiff,

vs.

MICHAEL L. PHILPOT, an individual, VIRGINIA B. HIRSH, an individual, JOHN B. KUYKENDALL, an individual, RENE ALEJANDRO LACAPE, an individual, C. RICHIE MCNAMEE, an individual and HECTOR PAEZ VALDEZ, an individual,

Defendants.

No.: '08 CV 0270 BEN NLS

**COMPLAINT FOR:**

**(1) UNFAIR COMPETITION under California Business & Professions Code § 17200, et seq.;**

**(2) BREACH OF CONTRACT;**

**(3) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**

**(4) FRAUD;**

**(5) NEGLIGENCE;**

**(6) UNJUST ENRICHMENT;**

**(7) VIOLATION OF 18 U.S.C § 1962(c)– CIVIL RICO;**

**(8) DECLARATORY RELIEF; and**

**(9) ACCOUNTING**

**JURY TRIAL DEMANDED**

FILED

2008 FEB 13 PM 3:48

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY [signature] DEPUTY

Plaintiff North American Company for Life and Health Insurance ("North American" or "NACOLAH") complains of defendants Michael L. Philpot ("Philpot"), Virginia B. Hirsh, John B. Kuykendall, Rene Alejandro Lacape, C. Richie McNamee, and Hector Paez Valdez (collectively referred to herein as "Defendants"), and alleges as follows:

I.

**THE PARTIES**

1. Plaintiff North American is a corporation incorporated under the laws of the State of Iowa, having re-domesticated to Iowa from Illinois on September 27, 2007, having its principal place of business in the State of Iowa, with an executive office in the State of Illinois, and is authorized to do business and is doing business within the State of California generally, and this judicial district specifically, as an insurer. At all times mentioned herein, North American was an Illinois company.

2. Between January 2004 and May 2007, Defendant Philpot was an insurance general agent for North American. Philpot is licensed in the State of California as an insurance agent, and sold North American insurance products, specifically Universal Life or "UL" policies, in this judicial district between 2004 and 2007, and North American is informed and believes, and on these bases alleges, that defendant Philpot still sells life insurance products of other insurance companies in this judicial district. North American is informed and believes, and on these bases alleges, that at all times mentioned in this complaint Philpot was a citizen of the State of California, a resident of Downey, California, with a business in Lake Havasu City, Arizona.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3. In addition to selling insurance policies himself, Philpot as a general agent for North American, has recruited and supervises a number of writing agents (hereinafter referred to as the "Michael Philpot Agency"). The Michael Philpot Agency is a network of individual sales agents, an enterprise, located in this judicial district and elsewhere in California and Arizona, which is used to sell insurance products in interstate commerce. North American has learned, is informed and believes, and on these bases alleges, that Philpot and certain other individual agents in the network of agents constituting the Michael Philpot Agency, supervised by Philpot and acting at his direction, are and have been involved in a scheme to use the Michael Philpot Agency, through its sale of North American's and other insurance companies' life insurance products, to illegally obtain compensation for the sale of life insurance policies issued by North American and by other insurance companies, in the form of sales commissions from North American and other insurance companies and in the form of bonuses from other managing general agents or general agents for which he has worked, called "upline" agents in the insurance industry; agents working under the supervision of managing general agents or general agents are referred to as "downline" agents.

4. North American is informed and believes, and on these bases alleges, that Defendants, to wit, Philpot and certain other individual agents in the Michael Philpot Agency enterprise over which he presides, have illegally obtained millions of dollars in undeserved and unearned commissions and bonuses, through a scheme of offering and paying secret rebates and/or advancing premium payments to North American and other insurance companies in exchange for the application for life insurance policies from North American and other companies by certain complicit individuals, without any good faith intention of actually maintaining these policies or paying the premiums for them as those policies were designed or as these policies require. Defendants use instrumentalities of interstate commerce, specifically wire and mail, to apply for said

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

life insurance policies in the name of certain complicit individuals.

5. North American is informed, believes and on these bases alleges that Defendants either purchase these life insurance policies for the complicit individuals by advancing premium payments or paying these complicit individuals secret rebates for applying for these policies. A single premium is paid for each such policy in an amount equal to the minimum premium necessary for Defendants to earn the maximum commission on the policy, an amount insufficient to continue the policy in force for more than a few years. Defendants then unlawfully collect the up-front sales commissions paid to them by North American and other insurance companies for these policies. In addition, Defendants unlawfully collect bonuses paid to their upline agents for the sales of these policies. These policies lapse with significant negative account values within three years of their issue, long before collected premiums cover the costs and expenses associated with these policies incurred by North American.

6. Employing the afore-described scheme, through the Michael Philpot Agency enterprise, Defendants have been able to illegally obtain millions of dollars in commissions from North American and other life insurance companies and millions of dollars in bonuses from their upline agents. The afore-referenced scheme perpetrated by Defendants is described in more detail below, and is hereafter referred to as "the Illegal Commission Scheme". North American is informed, believes and upon these bases, alleges, that the Illegal Commission Scheme is ongoing and continuous and was and is done in the regular way that the Michael Philpot Agency did and does conduct its business.

7. Defendant Hirsh is an insurance sales agent with the Michael Philpot Agency, is licensed in the state of California as an insurance agent, and has sold North American UL policies, and presently sells the life insurance products of other

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

insurance companies, in this judicial district. North American is informed and believes, and on these bases alleges that acting in concert with Philpot and at his direction, defendant Hirsh has participated and actively participates in the Illegal Commission Scheme by way of her association with the Michael Philpot Agency enterprise. North American is informed and believes, and on these bases alleges, that defendant Hirsh is, and at all times mentioned in this complaint was, a citizen of the State of California, a resident of San Diego, California.

8. Defendant Kuykendall is an insurance sales agent with the Michael Philpot Agency, is licensed in the state of California as an insurance agent, and has sold North American UL policies, and presently sells the life insurance products of other insurance companies, in this judicial district. North American is informed and believes, and on these bases alleges that acting in concert with Philpot and at his direction, defendant Kuykendall has participated and actively participates in the Illegal Commission Scheme by way of his association with the Michael Philpot Agency enterprise. North American is informed and believes, and on these bases alleges, that defendant Kuykendall is, and at all times mentioned in this complaint was, a citizen of the State of California, a resident of San Diego, California.

9. Defendant Lacape is an insurance sales agent with the Michael Philpot Agency, is licensed in the state of California as an insurance agent, and has sold North American UL policies, and presently sells the life insurance products of other insurance companies, in this judicial district. North American is informed and believes, and on these bases alleges that acting in concert with Philpot and at his direction, defendant Lacape has participated and actively participates in the Illegal Commission Scheme by way of his association with the Michael Philpot Agency enterprise. North American is informed and believes, and on these bases alleges, that defendant Lacape is, and at all times mentioned in this complaint was, a citizen of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

State of California, a resident of San Diego, California.

10. Defendant McNamee is an insurance sales agent with the Michael Philpot Agency, is licensed in the state of California as an insurance agent, and has sold North American UL policies, and presently sells the life insurance products of other insurance companies, in this judicial district. North American is informed and believes, and on these bases alleges that acting in concert with Philpot and at his direction, defendant McNamee has participated and actively participates in the Illegal Commission Scheme by way of his association with the Michael Philpot Agency enterprise. North American is informed and believes, and on these bases alleges, that defendant McNamee is, and at all times mentioned in this complaint was, a citizen of the State of California, a resident of Brentwood, California.

11. Defendant Valdez is an insurance sales agent with the Michael Philpot Agency, is licensed in the state of California as an insurance agent, and has sold North American UL policies, and presently sells the life insurance products of other insurance companies, in this judicial district. North American is informed and believes, and on these bases alleges that acting in concert with Philpot and at his direction, defendant Valdez has participated and actively participates in the Illegal Commission Scheme by way of his association with the Michael Philpot Agency enterprise. North American is informed and believes, and on these bases alleges, that defendant Valdez is, and at all times mentioned in this complaint was, a citizen of the State of California, a resident of Bonita, California.

12. North American will amend this complaint to add as defendants in this action those individuals who have assisted Defendants in perpetrating the Illegal Commission Scheme and participated therein, including those complicit sales agents in the Michael Philpot Agency enterprise and those individuals who applied for and

purchased life insurance policies but who, unbeknownst to North American and other insurance companies, were complicit in the Illegal Commission Scheme, at such time as the identities of these individuals are discovered by North American.

13. The Illegal Commission Scheme is harmful, not only to North American, but to the life insurance industry as a whole, and to life insurance consumers across the country. The Illegal Commission Scheme violates that legitimate purpose of providing insurance, which is to provide benefits to individuals or entities with an insurable interest in the insured, by instead providing immediate and significant monetary benefits to a group of complicit individuals and sales agents through fraudulent and ill-gotten commissions, bonuses, rebates and free short-term insurance. The cost of insurance for those products utilized by the Illegal Commission Scheme is shifted to those honest policyholders who pay sufficient premiums to maintain their policies in force and who intend to keep their policies in force as those products have been designed by insurance companies, such as North American. In addition, the Illegal Commission Scheme deprives honest consumers of fairly priced life insurance products by transferring the expenses associated with underwriting and issuing such products thereby causing honest consumers to pay a higher price for the product than they would have if the Illegal Commission Scheme had not occurred.

## II.

## JURISDICTION AND VENUE

14. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. Section 1332 based on the diversity of the parties' citizenship --North American is a Iowa corporation and the Defendants are California residents-- and under federal question jurisdiction, based upon 28 U.S.C 1331 and the Civil RICO statute-- 18 U.S.C. §1962 (c), and because the amount in controversy exceeds

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

$75,000, exclusive of interest and costs.

15. This Court also has personal jurisdiction over Defendants pursuant to the RICO statute, specifically 18 U.S.C. § 1965(a) and (d), which confers nationwide service of process authority upon this Court. Additionally, this Court has personal jurisdiction over Defendants because they have sufficient contacts with California as to satisfy the "minimum contacts" doctrine articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

16. Venue is proper pursuant to 28 U.S.C. Section 1391 in that a substantial part of the events, acts and omissions giving rise to North American's claims occurred within this judicial district, and is also proper under 18 U.S.C. § 1965 (a) and (d) because Defendants, through the Michael Philpot Agency have transacted and, presently transact their affairs in this judicial district.

## III.
## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. North American's Business And Its Agents

17. North American offers a portfolio of life insurance products to consumers in the United States. The specific type of North American insurance products sold by Defendants to perpetrate the Illegal Commission Scheme was an UL policy known as the Custom Accumulator UL. North American's UL policies permit the policyholder to pay premiums in one sum (a single premium fixed life insurance) or in multiple payments over the life of the policy (a flexible premium adjustable life insurance). With a flexible premium adjustable life insurance plan, the policyholder has the option

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

to change the amount and timing of payments of his or her premiums (within certain limits as disclosed in the policy contract) during the life of the policy. The UL will remain in force as long as sufficient premiums have been paid to continue coverage pursuant to the policy contract. UL policies typically build account value, which may be used to cover the monthly deduction charges (which includes charges for the costs of providing the insurance coverage) and which may be taken as a loan (which may be repaid to restore the account value to its pre-loan level) or partial surrender (which decreases the account value by an amount equal to the partial surrender amount).

18. The primary manner by which North American retails its insurance products to consumers is through three tiers of independent agents: managing general agents or independent marketing companies who primarily recruit distributors and producers; general agents or "distributors", sometimes referred to as regional managers or marketing offices, who also recruit producers and may directly sell insurance; and independent sales agents or "producers", sometimes referred to as writing agents, who sell insurance directly to consumers. More specifically:

(a) North American's managing general agents or independent marketing companies (together referred to herein as "MGA") perform certain marketing related functions on North American's behalf, including recruiting, recommending for appointment and supervising other independent agents who are licensed to sell North American products (as well as those of other insurers);

(b) North American's independent general agents or "distributors" are authorized by North American to be its representatives for North American's business and their responsibilities include marketing, recruiting, recommending for appointment and supervising other

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

independent agents. General agents may also sell policies themselves;

(c) Independent sales agents or "producers" who have contracted to sell North American insurance products throughout the United States, usually by directly interfacing with consumers, and are primarily responsible for soliciting, selling and servicing insurance policies.

19. North American's managing general agents, general agents and sales agents are independent contractors, not North American employees and, as part of their insurance business activities, sell insurance for other life insurance carriers, including North American's competitors.

20. North American enters into a binding contract with each of its general agents called a "Distributor Application and Agreement". Pursuant to this agreement, North American's general agents agree to do, *inter alia*, the following:

(a) make reasonable efforts to maintain [North American's] policies (Section 2(a)5);

(b) Operate in compliance with all applicable laws and regulations (Section 2(a)6);

(c) Supervise and be responsible for keeping [their] Distributors informed of [North American's] published rules, guidelines, procedures, and practices which [North American] provides (Section 2(a)7);

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(d) Exercise reasonable due care for the faithful performance, fidelity and honesty of [their] employees, and Distributors and maintain responsibility for all funds collected and business done by or entrusted to [them and their] employees (Section 2(a)8); and

(e) Not pay any premium personally, or rebate premium to any policyholder (Section 3(b)).

21. North American also enters into a binding contract with each of its sales agents called a "Producer Application and Agreement." Pursuant to this agreement, North American's sales agents agree to do, *inter alia*, the following:

(a) make reasonable efforts to maintain [North American's] policies (Section 2(a)5);

(b) Operate in compliance with all applicable laws and regulations (Section 2(a)5);

(c) Be responsible for keeping [their] producers informed of [North American's] published rules, guidelines, procedures, and practices provided by [their] Distributor or published by [North American] (Section 2(a)6);

(d) Exercise reasonable due diligence for the faithful performance, fidelity and honesty of [their] employees and Producers and maintain responsibility for all funds collected and business done by or entrusted to [them] and [their] employees (Section 2(a)7);

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(e) Not pay any premium personally, or rebate premium to any policyholder (Section 3(b)).

22. The independent general agents and independent sales agents who have contracted to sell North American's products are compensated for the sale of North American's insurance products on a commission basis. A general agent is entitled to a higher level of commission compensation (percentage) than a producer and typically receives commission "overrides" on the business that his or her recruitee "producer" sales agents produce. In addition, if a general agent signed a Regional Manager contract with North American, the general agent will also earn production credits on the business that his or her recruitee "producer" sales agents generate. These production credits are used to qualify for various incentive programs that North American offers.

23. For the Custom Accumulator UL product, North American's independent sales agents receive a sizeable upfront commission on each policy they sell, usually between 70-120 percent of the total first year target premiums paid or to be paid by the policyholder for the policies they buy. Of this total compensation, between 80 to 100 percent typically goes to the sales agent as a commission, with a 15 to 20 percent "override" going to the general agent above the sales agent, and, when applicable, a 5 percent "override" going to the MGA above both of them.

24. In addition to the commission and overrides, MGAs earn a bonus on the total sales of each product by the downline agents who sell policies for them –between 28 to 36 percent for the Custom Accumulator product. This bonus is paid by North American to the MGA. An MGA may keep or distribute such bonus at his/her discretion. It is North American's belief that a significant portion of the bonuses paid

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

on the Custom Accumulator product to Philpot's MGA was distributed to him by his upline MGA.

25. Under North American's contracts with its agents, upfront commissions paid for the sale of North American's policies vest immediately; unless the policy lapses or is surrendered for any reason within the first year of issuance, in which case, these upfront commissions, or a percentage thereof, can be recovered by North American by way of a "chargeback" of commissions paid to the agent who sold the lapsed or surrendered policy.

26. Notably, because North American amortizes the recovery of its acquisition costs for every policy, which includes marketing, underwriting, new business, premium taxes, reinsurance, and the upfront commission and bonus paid to the sales agent, over the first 20 years of the policies it sells, the early lapse of a UL policy causes North American to incur a significant financial loss.

**B. <u>Philpot Becomes A Regional Manager For North American</u>**

27. Philpot joined North American under a Regional Manager contract in January 2004 upon the acquisition of Clarica Life Insurance Company-U.S. ("Clarica"), an insurance company for which Philpot had previously sold life insurance policies, by Midland National Life Insurance Company ("Midland National"), an affiliate of North American. All the sales agents previously appointed by Clarica were invited to become appointed with North American upon the merger of Clarica with Midland National by completing the appropriate appointment paperwork with North American.

28. Philpot and North American entered into a Distributor Application and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Agreement (hereinafter "the Philpot RM Agreement") pursuant to which North American and Philpot agreed in writing that Philpot would act as North American's regional manager. This agreement became effective on January 14, 2004. A true and correct copy of this agreement is attached hereto as Exhibit "1" and is incorporated herein by this reference.

29. Pursuant to Section 2 of the Philpot RM Agreement, Philpot agreed to "procure applications for policies written by [North American]," "operate in strict compliance with all applicable laws and regulations," "exercise reasonable due care for the faithful performance, fidelity and honesty of [its] employees, agents and brokers", and "make reasonable efforts to maintain [North American's] policies". Pursuant to Section 3(b) of this agreement, Philpot was prohibited from paying any premium personally or rebating any premium to any policyholder.

30. Philpot also completed a Confidential History Report, pursuant to which Philpot certified that it had received, understood and would conform with the procedures outlined in the brochure "Partnering with You on Compliance Matters" (hereinafter "Compliance Manual"). Pursuant to the Compliance Manual, a true and correct copy of which is attached hereto as Exhibit "2" and made a part hereof, North American associates agreed to "comply with applicable state and federal laws fostering fair competition."

## C. Philpot Becomes A Marketing Office For North American

31. On or about July 20, 2005, Philpot entered into a Distributor Application and Agreement with North American (hereinafter "the Philpot MO Agreement"). A true and correct copy of this agreement is attached hereto as Exhibit "3" and is incorporated herein by this reference. This agreement became effective on July 29,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2005, making Philpot a marketing office for North American as of this date.

32. Just as he did under the Philpot RM Agreement, under the Philpot MO Agreement, Philpot agreed to "procure applications for policies written by [North American]," "operate in strict compliance with all applicable laws and regulations," "exercise reasonable due care for the faithful performance, fidelity and honesty of [its] employees, agents and brokers" and "make reasonable efforts to maintain [North American's] policies". And, pursuant to the Philpot Distributor Agreement, Philpot was prohibited from paying any premium personally or rebating any premium to any policyholder.

**D. Philpot Develops The Michael Philpot Agency, Which Includes Defendants Hirsh, Kuykendall, Lacape, McNamee And Valdez**

33. Upon his appointment as an Regional Manager in 2004 and continuing with his appointment as a Marketing Office in 2005, Philpot proceeded to establish the Michael Philpot Agency, a network of sales agents, an enterprise, over which he presides. The Michael Philpot Agency enterprise presently consists of approximately 155-190 sales agents in various states, including, but not limited to, California, Arizona, Florida, Georgia, Illinois, Indiana, Louisiana, Minnesota, North Carolina, Nevada, New York, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Utah, and Wisconsin, who have sold North American UL policies, and, as North American is informed, believes and upon these bases alleges, is presently selling the life insurance products of other insurance companies. Approximately 54 of Philpot's sales agents are located in this judicial district. Defendants Hirsh, Kuykendall, Lacape, McNamee and Valdez also entered into producer agreements with North American as follows:

(a) Effective January 27, 2004, Defendants Hirsh, Kuykendall, Lacape

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and Valdez were appointed pursuant to the "North American Producer Contracting Application – *Transition from Clarica to North American*" appointment form, a specimen copy containing that agreement's material terms is attached as Exhibit "4" and is incorporated herein by this reference.

(b) Effective June 5, 2006 and August 21, 2006, Defendants Lacape and Kuykendall, respectively, were appointed under the "Producer Contract Application and Agreement", a specimen copy containing that agreement's material terms is attached as Exhibit "5" and is incorporated herein by this reference.

(c) Effective August 4, 2004, Defendant McNamee was appointed under the "North American Company for Life & Health Insurance's Producer's Agreement", a specimen copy containing that agreement's material terms is attached as Exhibit "6" and is incorporated herein by this reference.

(d) Copies of the signature pages of these producer agreements executed by defendants Hirsh, Kuykendall, Lacape, McNamee and Valdez are attached hereto as Exhibits "7", "8", "9", "10" and "11" respectively, and incorporated herein by this reference.

34. Like Philpot, Hirsh, Kuykendall, Lacape, McNamee and Valdez were obligated by their producer agreements to "procure applications for policies written by [North American]," "operate in strict compliance with all applicable laws and regulations," and "exercise reasonable due care for the faithful performance, fidelity and honesty of [its] employees, agents and brokers," as well as prohibited from paying

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

any premium personally or rebating any premium to any policyholder. The agreements entered into between North American referred to herein are hereinafter collectively "the Defendants' Agreements."

35. The Defendants' Agreements are standard agency agreements for the life insurance industry. North American is informed, believes, and on these bases alleges, that Defendants have also entered into other agreements with other insurance companies related to their sale of life insurance policies for those companies similar to the afore-referenced Defendants' Agreements.

**E. <u>The Illegal Commission Scheme</u>**

36. North American has learned, and is informed, believes and upon these bases alleges, that from at least 2004 through May 2007, Defendants, working through the Michael Philpot Agency as their enterprise, have engaged in the Illegal Commission Scheme. The Illegal Commission Scheme entails Defendants' offering of and paying to certain complicit individuals, posing as legitimate potential insureds, secret rebates and other monetary incentives, including advancing insurance premiums due North American, in exchange for these individuals applying for UL policies with North American, as well as for life insurance policies with other insurance companies.

37. North American has learned, is informed, believes and upon these bases alleges, that these insurance policies were applied for without any good faith intention on the part of Defendants or the complicit individuals that the policies would actually be maintained or that applicable premiums would be paid, as those policies were designed or as the policies required. The applications of these complicit individuals to purchase these life insurance policies were subsequently submitted by Defendants to North American and other insurance companies, using instrumentalities of interstate

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

commerce, specifically, by wire and mail.

38. Then, as North American has learned, is informed, believes and upon these bases alleges, Defendants either purchase these life insurance policies for the complicit individuals by advancing premium payments or paying these complicit individuals secret rebates for applying for these policies. A single premium is paid for each such policy in an amount equal to the minimum premium necessary for Defendants to earn the maximum commission on the policy, an amount insufficient to continue the policy in force for more than a few years. Defendants then unlawfully collect the up-front sales commissions paid to them by North American and other insurance companies for these policies. In addition, Defendants unlawfully collect bonuses paid to them by their upline agents for the sales of these fraudulent policies. These policies lapse with significant negative account values within three years of their issue, long before collected premiums cover the costs and expenses incurred by North American associated with these policies.

39. As a result of the applications submitted by Defendants on behalf of the individuals complicit in the Illegal Commission Scheme, said scheme being unbeknownst to North American, North American subsequently processed these applications and issued UL policies to certain policyholders.

40. North American is informed, believes and on these bases alleges, that Defendants submitted applications for life insurance to other insurance companies on behalf of the individuals complicit in the Illegal Commission Scheme, said scheme being unbeknownst to those insurance companies, and those companies subsequently processed these applications and issued life insurance policies to Defendants' co-conspirators in the Illegal Commission Scheme. North American is informed, believes and upon these bases, alleges, that the Illegal Commission Scheme is ongoing

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and continuous and was and is done in the regular way that the Michael Philpot Agency did and does conduct its business.

41. Based upon North American's historical data regarding policy lapse percentages and 122 years experience in the life insurance business, approximately 13 percent of UL policies it issues lapse before the end of the third year of the policy. However, of the 710 UL policies written through the Michael Philpot Agency since 2004, approximately 88 percent have lapsed by the end of the third year of the policy. Defendants were responsible for the sales of 291 of these UL policies, of which approximately 115 (or 40 percent) have already lapsed. This extraordinarily high level of lapsed policies is highly irregular for policies issued by North American and is evidence of the Illegal Commission Scheme.

42. And more evidence of the Illegal Commission Scheme resides in the Custom Accumulator UL policies sold by Defendants. The Custom Accumulator UL includes a "return of premium" feature, appealing to insureds who intend to hold their policies for long periods of time. The return of premium feature provides the policyholder with a surrender amount after the 10th anniversary of the policy equal to the amount of premiums paid for the policy up to the date the policyholder surrenders the policy, less any rider costs. To qualify for the return of premium feature, a policyholder must pay a certain percentage of the guideline single premium for the policy, as indicated in the policy contract, within six months of the date the policy is issued.

43. Not coincidentally, however, out of the 710 UL policies written by Defendants, not a single one qualified for the return of premium feature. For all other sales of the Custom Accumulator UL during the same period, 74 percent of the UL policies qualified for the return of premium feature. This indicates that out of the 710

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UL policies sold by Defendants, none reflected a long term position on the part of the policyholder. This is a fact that is irregular for policies issued by North American, and is further evidence of the Illegal Commission Scheme.

44. North American is informed, believes, and on these bases alleges, that the inordinately high number of lapsed UL policies, the clear lapse pattern of these policies, and the fact that none of the policies sold by Defendants qualified for the return of premium feature, are all indicia of the Illegal Commission Scheme.

45. North American is informed and believes, and on these bases alleges, that the complicit individuals who had applied for and purchased life insurance policies issued by North American sold to them by Defendants through the Michael Philpot Agency enterprise, who never intended to maintain or pay premiums on the policies written by Defendants, only applied and purchased said policies because of the Illegal Commission Scheme, and specifically, because of Defendants' illicit payments to them to do so. Such aforementioned policies are collectively hereafter referred to as "Sham Policies."

46. North American is informed and believes, and on these bases alleges, that as with the Sham Policies, the complicit individuals who had applied for and purchased life insurance policies issued by other insurance companies sold to them by Defendants through the Michael Philpot Agency enterprise, never intended to maintain or pay premiums on the policies written by Defendants, only applied and purchased said policies because of the Illegal Commission Scheme, and specifically, of Defendants' illicit payments to them to do so.

F. **North American Discovers The Illegal Commission Scheme And Terminates Defendants And The Michael Philpot Agency, But Not Before**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Suffering Substantial Financial Injury**

47. Between May and June 2007, North American terminated Philpot and the network of sales agents working for him through the Michaël Philpot Agency enterprise due to the indicia of the Illegal Commission Scheme referred to above, but not before it had already suffered serious financial damages at the hands of Defendants due to the Sham Policies and the Illegal Commission Scheme.

48. Because it was unaware of the Sham Policies and the Illegal Commission Scheme, North American has paid approximately $24 million in commissions and bonuses to Defendants for the Sham Policies, pursuant to its standard commission structure discussed above. Thus, as a result of the Illegal Commission Scheme, Defendants, through the Michael Philpot Agency enterprise, were able to wrongfully collect at least $19 million in unearned, ill-gotten up-front sales commissions from North American on the foregoing Sham Policies.

49. As a further result of the Illegal Commission Scheme, North American incurred underwriting costs for the applications that were submitted related to the issuance of the Sham Policies in an amount to be proven at trial.

50. Aside from the already discovered Sham Policies, approximately 344 UL policies written by Defendants and issued by North American remain in–force. North American has paid approximately $15 million in commissions and bonuses to Defendants and other agents in the Michael Philpot Agency on these in-force policies. North American is informed, believes, and on these bases alleges, that most, if not all, of these policies were written as a part of the Illegal Commission Scheme and that said policies will lapse on or before August 1, 2010, causing North American further significant financial harm at the hands of Defendants in addition to the harm it has

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

already suffered.

51. In order to redress the injuries sustained by North American to date due to Defendants' Illegal Commission Scheme and Defendants' use of the Michael Philpot Agency enterprise to perpetrate the same, as well as to prevent further financial losses by North American, as well as by those other insurance companies for whom Defendants continue to defraud and injure, because of the ongoing and continuous pattern of illegal conduct effected by the Illegal Commission Scheme and Defendants' use of the Michael Philpot Agency enterprise to perpetrate the same and the harm to the public at large, the judicial intervention of this Court is necessary, and North American therefore seeks the relief of this Court, as follows:

**FIRST CLAIM FOR RELIEF**

**UNFAIR COMPETITION**

**(California Business & Professions Code § 17200, et seq.)**

52. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 51 above and 61-96 and 102-104 below.

53. California Business and Professions Code Section 17200 prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

54. Business and Professions Code Section 17203 allows "orders or judgments… as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

55. Business and Professions Code Section 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to bring suit for unfair competition.

56. North American is informed, believes and on these bases alleges, that from at least 2004 through the present, Defendants, all or part of Philpot's network of sales agents constituting the Michael Philpot Agency enterprise, engaged in the Illegal Commission Scheme. The Illegal Commission Scheme, as described herein, involving Defendants' use of secret rebates, unearned discounts, the advancement of premium payments and other financial incentives to complicit applicants for life insurance policies, who never intended to maintain such policies as they were designed or as was required, in order to obtain from North American and other insurance companies unearned commissions and bonuses, constitutes unlawful, unfair and/or fraudulent business acts and practices in violation of Business and Professions Code Section 17200.

57. To date, as a direct and proximate result of the Illegal Commission Scheme, Defendants, through the Michael Philpot Agency, were able to collect approximately $19 million in ill-gotten up-front sales commissions from North American on the afore-referenced Sham Policies, and, as a further result of the Illegal Commission Scheme, North American incurred underwriting costs on those policies in an amount to be proven at trial.

58. Pursuant to Business and Professions Code Sections 17203, 17204 and 17208, North American is entitled to recover all amounts by which Defendants have been unjustly enriched from their unlawful, unfair, and fraudulent business acts and practices of unfair competition at North American's expense in the form of restitution, in an amount to be proven at trial. North American is also entitled to recover any and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

all ill-gotten gains obtained by Defendants with respect to the approximately 344 North American UL policies written by Defendants that are still in-force, but that ultimately lapse due to the Illegal Commission Scheme, according to proof.

59. An order requiring Defendants to disgorge all of their ill-gotten commissions, and all of the profits and gains they have reaped and restore such profits and gains to North American and other insurance companies from which they were unlawfully taken by Defendants by way of the Illegal Commission Scheme, according to proof, should be granted, as well as North American's reasonable attorneys' fees and costs.

60. Moreover, pursuant to Business and Professions Code Section 17203, an injunction is necessary and appropriate in order to prevent Defendants from obtaining further unearned commissions and bonuses from other insurance companies victimized by the Illegal Commission Scheme and the Michael Philpot Agency enterprise, due to their unlawful, unfair and/or fraudulent business acts and practices in violation of Business and Professions Code Section 17200, and which North American is informed, believes, and on these bases alleges, constitutes an ongoing, continuing pattern of illegal activity.

**SECOND CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

61. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 51 above.

62. Between 2004 through June 2007, Defendants breached the Defendant Agreements.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

63. Philpot breached the Philpot RM Agreement, the Philpot MO Agreement, and the Compliance Manual by using the Michael Philpot Agency to perpetrate and participate in the Illegal Commission Scheme between 2004 and May 2007.

64. If Philpot had complied with his agreements and the Compliance Manual by not participating in Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid Philpot millions of dollars in unearned and ill-gotten commissions nor incurred significant underwriting costs.

65. As a result of Philpot's breach of the Philpot RM Agreement, the Philpot MO Agreement, and the Compliance Manual, North American paid millions of dollars in undeserved and ill-gotten commissions to Philpot and incurred underwriting costs, to its damage in a total amount to be proven at trial.

66. From at least January 2004 through June 2007, defendant Hirsh breached her Producer Agreement by participating in the Illegal Commission Scheme as alleged herein.

67. If defendant Hirsh had complied with her agreement by not participating in Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid defendant Hirsh unearned and ill-gotten commissions or incurred significant underwriting costs.

68. As a result of defendant Hirsh's breach of her Producer Agreement, North American paid approximately $863,000 in unearned and ill-gotten commissions and incurred significant underwriting costs, to its damage in a total amount to be proven at trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

69. From at least January 2004 through June 2007, defendant Kuykendall breached his Producer Agreement by participating in the Illegal Commission Scheme as alleged herein.

70. If defendant Kuykendall had complied with his agreement by not participating in Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid defendant Kuykendall unearned and ill-gotten commissions or incurred significant underwriting costs.

71. As a result of defendant Kuykendall's breach of his Producer Agreement, North American paid approximately $286,000 in unearned and ill-gotten commissions and incurred significant underwriting costs, to its damage in a total amount to be proven at trial.

72. From at least January 2004 through June 2007, defendant Lacape breached his Producer Agreement by participating in the Illegal Commission Scheme as alleged herein.

73. If defendant Lacape had complied with his agreement by not participating in Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid defendant Lacape unearned and ill-gotten commissions or incurred significant underwriting costs.

74. As a result of defendant Lacape's breach of his Producer Agreement, North American paid approximately $865,000 in unearned and ill-gotten commissions and incurred significant underwriting costs, to its damage in a total amount to be proven at trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

75. From at least August 2004 through June 2007, defendant McNamee breached his Producer Agreement by participating in the Illegal Commission Scheme as alleged herein.

76. If defendant McNamee had complied with his agreement by not participating in Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid defendant McNamee unearned and ill-gotten commissions or incurred significant underwriting costs.

77. As a result of defendant McNamee's breach of his Producer Agreement, North American paid approximately $915,000 in unearned and ill-gotten commissions and incurred significant underwriting costs, to its damage in a total amount to be proven at trial.

78. From at least January 2004 through June 2007, defendant Valdez breached his Producer Agreement by participating in the Illegal Commission Scheme as alleged herein.

79. If defendant Valdez had complied with his agreement by not participating in Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid defendant Valdez unearned and ill-gotten commissions or incurred significant underwriting costs.

80. As a result of defendant Valdez's breach of his Producer Agreement, North American paid approximately $1,355,000 in unearned and ill-gotten commissions and incurred significant underwriting costs, to its damage in a total amount to be proven at trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

81. For its part, however, North American has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Defendants' Agreements.

82. As a direct and proximate result of Defendants' breaches of contract, by participating in the Illegal Commission Scheme and inducing the issuance of the Sham Policies, North American has suffered millions of dollars in damages, including consequential and incidental damages, plus interest thereon, with the total amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**BREACH OF THE IMPLIED COVENANT OF**

**GOOD FAITH AND FAIR DEALING**

83. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 82 above.

84. Implied in the Defendants' Agreements and the Philpot Compliance Manual was a covenant by Defendants that they would act in good faith and deal fairly with North American, act solely for benefit of North American in matters covered by the Defendants' Agreements and Philpot's Compliance Manual, and to keep North American informed on all matters which may come to its attention pertaining to the subject matter of the Defendants' Agreements and Philpot's Compliance Manual.

85. Defendants breached that covenant by failing to deal in good faith with North American by initiating, participating in and perpetuating the Illegal Commission Scheme.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

86. If Defendants had adhered to their duty of good faith and fair dealing by not participating in the Illegal Commission Scheme, North American would not have issued the Sham Policies and would not have paid millions of dollars in commissions to them and bonuses to their uplines or incurred significant underwriting costs.

87. Thus, as a direct result of Defendants' breach of the implied covenant of good faith and fair dealing, North American has suffered millions of dollars in damages, with the total amount to be proven at trial.

88. Defendants, in doing the things herein alleged, acted intentionally, and with malice, oppression and fraud as those terms are defined in California Code of Civil Procedure Section 3294, and North American therefore is entitled to an award of exemplary and punitive damages against Defendants in such amount as will adequately punish Defendants and set an example so as to deter them and others from acting as alleged herein.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**FOURTH CLAIM FOR RELIEF**

**FRAUD**

89. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 51 above.

90. From at least 2004 through the present, Defendants participated in the Illegal Commission Scheme, as described alleged herein. Defendants failed to reveal and suppressed the material fact of the Illegal Commission Scheme, which fact was known to Defendants at all times mentioned herein. The failure to disclose and suppression of Illegal Commission Scheme was likely to mislead North American and did in fact mislead North American, in light of Defendants' duty to inform North



EXHIBIT " 1 "
PAGE NO. 48

American, as such duty is described in the Defendants' Agreements and Philpot's Compliance Manual referenced herein.

91. Defendants signed and submitted or otherwise delivered all of the UL policy applications presented to North American in connection with the Illegal Commission Scheme and the issuance of the Sham Policies.

92. By signing and submitting or otherwise delivering these applications to North American, Defendants certified to North American, the completeness of the applications, including all of the material circumstances surrounding the submission of such applications. As such, Defendants had a duty to and was otherwise bound to not suppress or conceal facts within his knowledge, which materially qualify the aforementioned certification and other facts he stated to North American. Thus, Defendants had a duty to disclose the material fact of the Illegal Commission Scheme.

93. The failure to disclose and suppression of the material fact of the Sham Policies and larger Illegal Commission Scheme alleged herein, were made with the intent to induce North American to issue the Sham Policies, pay the undeserved, ill-gotten upfront commissions to Defendants, and causing North American to incur underwriting costs, in reliance thereon.

94. North American, at the time the failure to disclose and suppression of fact occurred, and at the time North American took the actions herein alleged (*e.g.*, issued the Sham Policies, paid the undeserved commissions to Defendants and incurred underwriting costs) was ignorant of the existence of the Illegal Commission Scheme that Defendants suppressed and failed to disclose. If North American had been aware of the existence of the Illegal Commission Scheme not disclosed by Defendants, North American would not have, as it did, issued the Sham Policies, paid the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



EXHIBIT " 1 "
PAGE NO. 49

undeserved commissions to Defendants and bonuses to their uplines and incurred underwriting costs thereon.

95. As a proximate result of the fraudulent conduct of Defendants as herein alleged, North American was fraudulently induced into issuing the Sham Policies, paying the undeserved commissions to the Defendants and bonuses to their uplines, and incurring underwriting costs thereon, by reason of which North American has suffered millions of dollars in losses, with the total amount to be proven at trial.

96. Defendants, in doing the things herein alleged, acted intentionally, and with malice, oppression and fraud as those terms are defined in California Code of Civil Procedure Section 3294, and North American therefore is entitled to an award of exemplary and punitive damages against Defendants in such amount as will adequately punish Defendants and set an example so as to deter them and others from acting as alleged herein.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENCE

97. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 51 above.

98. From at least January 2004 through the present, Defendants have participated in the Illegal Commission Scheme.

99. Defendants owed a duty to North American to abide by the Defendant Agreements and Compliance Manual.

100. Defendants negligently breached this duty of care by participating in the Illegal Commission Scheme, so as to directly and legally cause the damages described below.

101. As a direct and legal result of the negligence of Defendants and each of them, North American has lost millions of dollars in undeserved and ill-gotten commissions and bonuses, as well as significant underwriting costs related to the Sham Policies, and is entitled to recover these losses from Defendants.

**SIXTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

102. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 101 above.

103. Defendants were paid undeserved, upfront commissions and their uplines were paid undeserved bonuses by North American for the Sham Policies, sold by Defendants through the Michael Philpot Agency enterprise, as a result of the Illegal Commission Scheme. The payment of such commissions and bonuses by North American as a result of Defendants' wrongful conduct unjustly enriched Defendants.

104. North American is informed, believes and on that basis alleges that as a result of Defendants' wrongful and unlawful conduct and their unjust enrichment thereby at North American's expense, Defendants owe restitution and the disgorgement of their ill-gotten profits, in a total amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF 18 U.S.C § 1962 (c)– CIVIL RICO**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

105. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 96 above and 102 to 104 below.

106. Defendants, and each of them, are "persons" as defined under 18 U.S.C. § 1961(3).

107. At all times relevant herein, Defendants were employed by, and/or associated and affiliated with the Michael Philpot Agency, a network of individual sales agents, an enterprise, located in this judicial district and elsewhere in California and other states, which is used to sell insurance products in interstate commerce, using interstate mail and wire, specifically.

108. Defendants operated, managed and participated in the Michael Philpot Agency enterprise, supervised by Philpot and acting at his direction, are and have been employed by or associated with the Michael Philpot Agency enterprise, and conducted or participated, directly or indirectly, in the conduct of the enterprises' affairs, including, but not limited to, perpetuating the Illegal Commission Scheme, which involves using the Michael Philpot Agency to illegally obtain upfront sales commissions and bonuses paid to them for the sale of life insurance policies issued by North American and by other insurance companies through its sale of North American's and other insurance companies' life insurance products.

109. Since 2004 and up to the present, Defendants have engaged in an ongoing pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1), through Defendants' use of the Michael Philpot Agency enterprise as a mechanism to perpetuate the Illegal Commission Scheme to obtain millions of dollars in undeserved and unearned commissions and bonuses. This illegal activity includes offering and paying secret rebates and/or unearned discounts and/or advancing premium payments



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

to North American and other insurance companies to complicit individuals in exchange for such individuals applying for life insurance policies from North American and other companies, without any good faith intention of actually maintaining these policies or paying the premiums for them as those policies were designed or as these policies require. Defendants use instrumentalities of interstate commerce, specifically interstate wire and mail, to apply for said life insurance policies in the name of certain complicit individuals.

110. More specifically, Defendants either purchase these life insurance policies for the complicit individuals by advancing premium payments or paying these complicit individuals secret rebates for applying for these policies. A single premium is paid for each such policy in an amount equal to the minimum premium necessary for Defendants to earn the maximum commission on the policy, an amount insufficient to continue the policy in force for more than a few years. Defendants then unlawfully collect the up-front sales commissions paid to them by North American and other insurance companies for these policies. In addition, Defendants unlawfully collect bonuses paid to their upline agents for the sales of these policies. These policies lapse with significant negative account values within three years of their issue, long before collected premiums cover the costs and expenses associated with these policies to the detriment of North American and other insurance companies.

111. The conduct of Defendants in perpetrating the Illegal Commission Scheme sought the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics, to wit, to illegally obtain millions of dollars in commissions and bonuses from their victims -- North American and other insurance companies-- by way of the Illegal Commission Scheme described herein, resulting in the writing and issuance of the Sham Policies and other bogus policies issued by other insurance companies.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

112. Such conduct of Defendants, to wit, writing the Sham Policies, other bogus life insurance policies, submitting them to North American via the mail and wire, and otherwise perpetuating the Illegal Commission Scheme as alleged herein, constitutes mail and wire fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 1342, respectively, as well as a pattern of racketeering activity under 18 U.S.C. § 1961 (1) and (5). North American is informed, believes and upon these bases alleges, that the majority the over 700 policies written by the Michael Philpot Agency were fraudulently submitted to North American through the mail North American does not list all of the instances Defendants committed the predicate acts here, but as examples, and not exclusively, defendant Philpot submitted fraudulent policies LB00597230, LB00659630 and LB00697840 through the mail to North American on March 2, 2005, March 9, 2005 and July, 21, 2005, respectively; defendant Hirsh submitted fraudulent policies LB00505840, LB00506390 and B00504400 through the mail to North American on January 17, 2004, June 17, 2005 and June, 14, 2005, respectively; defendant Kuykendall submitted fraudulent policies LB00553040, LB00549650 and LB00552770 through the mail to North American on September 20, 2004, September 13, 2004 and September 30, 2004, respectively; defendant Lacape submitted fraudulent policies LB00511220, LB00511700 and LB00511720 through the mail to North American on June 28, 2004; defendant McNamee submitted fraudulent policies LB00506610 and LB00506650 on June 18, 2004 and policy LB00512160 on June 28, 2004, through the mail to North American; and defendant Valdez submitted fraudulent policy LB00526290 on July 26, 2004, and policies LB00527240 and LB00527220 on July 28, 2004, through the mail to North American. These and other predicate acts and racketeering activity were committed and conducted by Defendants, through the Michael Philpot Agency enterprise, in interstate commerce, as alleged herein.

113. North American is informed, believes, and on these bases alleges, that the aforementioned racketeering activity, to wit, the Illegal Commission Scheme, is

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ongoing and continuous, insomuch as the Michael Philpot Agency still engages in the same, continues to injure other insurance companies and consumers in this judicial district and beyond by writing bogus life insurance policies. North American is informed, believes, and upon these bases, alleges, that the Illegal Commission Scheme is ongoing and continuous and was and is done in the regular way that the Michael Philpot Agency did and does conduct its business.

114. Defendants, and each of them, acted knowingly and with the specific intent to engage in the Illegal Commission Scheme as alleged herein, and the activities underlying the Michael Philpot Agency enterprise and misconduct alleged herein, and Defendants, and each of them, aided and abetted in the violations of the Civil RICO statute and offenses, as alleged herein.

115. North American has suffered millions of dollars in damages as a result of Defendants' RICO violations, including the Illegal Commission Scheme, as alleged herein in an amount to be proven at the time of trial and trebled under 18 U.S.C. § 1964 (c), in addition to the grave damages suffered by other insurance companies and the public at large.

116. North American is also entitled to an award of their attorneys' fees under 18 U.S.C. § 1964 (c), in an amount to be proven at the time of trial.

**EIGHTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF**

117. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 116 above.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

118. In or about March 2007, North American learned, was informed and believes, and on these bases alleges, that Philpot and certain other individual agents in the Michael Philpot Agency, supervised by Philpot and acting at his direction, are and have been involved in the Illegal Commission Scheme to use the Michael Philpot Agency, through its sale of North American's and other insurance companies' insurance products, to illegally obtain upfront sales commissions, bonuses and other payments paid to them for the sale of life insurance policies by North American and by other companies.

119. North American alleges that it has paid Defendants millions of dollars in undeserved and ill-gotten commissions as result of the Illegal Commission Scheme, and incurred significant closing costs on the Sham Policies, in a total amount to be proven at trial.

120. An actual controversy has risen and now exists in that North American contends, and Defendants deny, that Defendants are liable to North American for the damages herein alleged.

121. Therefore, it is necessary and appropriate for this Court to now declare the rights and duties of the parties, so that they may ascertain their respective obligations. North American hereby requests a declaration that by this Court that Defendants are liable for the damages suffered by North American due to the Illegal Commission Scheme, according to proof.

**NINTH CLAIM FOR RELIEF**

**ACCOUNTING**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

122. North American realleges and incorporates herein, each and every allegation contained in Paragraphs 1 through 121 above.

123. North American is informed, believes, and on these bases alleges, that Defendants have engaged in unlawful, unfair, and fraudulent acts and practices, as described herein, the direct and proximate result of which is injury to North American.

124. As a result, the Defendants, owe damages, restitution and the disgorgement of profits, in an amount unknown to North American, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Defendants, and each of them.

**PRAYER FOR RELIEF**

WHEREFORE, North American prays for judgment against Defendants and each of them, as follows:

1. On North American's First Claim for Relief (Unfair Competition under California Business and Professions Code §17200, *et seq.*): for disgorgement, restitution of Defendants' ill-gotten gains, and an injunction;

2. On North American's Second Claim for Relief (Breach of Contract): compensatory damages and/or restitution in a total amount according to proof at trial;

3. On North American's Third Claim for Relief (Breach of the Covenant of Good Faith and Fair Dealing): for restitution in a total amount according to proof at

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

trial, and exemplary and punitive damages pursuant to California Civil Code section 3294;

4. On North American's Fourth Claim for Relief (Fraud): for damages according to proof at trial, and exemplary and punitive damages pursuant to California Civil Code section 3294;

5. On North American's Fifth Claim for Relief (Negligence): for damages according to proof at trial;

6. On North American's Sixth Claim for Relief (Unjust Enrichment): for restitution in a total amount according to proof at trial;

7. On North American's Seventh Claim for Relief (Violation of 18 U.S.C. § 1962 (c)--Civil RICO): for damages according to proof at trial, and for treble damages pursuant to 18 U.S.C. section 1964 (c);

8. On North American's Eighth Claim (Declaratory Relief): for a declaration that Defendants engaged in the Illegal Commission Scheme and are therefore liable for the damages suffered by North American because of the same;

9. On North American's Ninth Claim for Relief (Accounting): for an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from and of Defendants, and each of them, to ascertain the exact amount of ill-gotten profits due to the Illegal Commission Scheme that is to be restituted and disgorged from Defendants, the exact amount of which is presently unknown to North American;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

10. For interest on North American's damages at the highest rate allowed by law;

11. For attorneys fees as provided by law;

12. For costs of suit herein; and

13. For such other and further relief as the Court deems just and proper.

DATED: February 13, 2008

REED SMITH LLP

By ______________________
Robert D. Phillips, Jr. (SBN 82639)
Miles M. Cooley (SBN 206783)
Attorneys for Plaintiff
North American Company For Life and Health Insurance

**DEMAND FOR JURY TRIAL**

Plaintiff North American hereby demands a trial by jury.

DATED: February 13, 2008

REED SMITH LLP

By ______________________
Robert D. Phillips, Jr. (SBN 82639)
Miles M. Cooley (SBN 206783)
Attorneys for Plaintiff
North American Company For Life and Health Insurance

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# MASTER POLICY DECLARATIONS –

## Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy

ZURICH

This insurance is provided by the Company designated by an "X" in the box below:

☒ Zurich American Insurance Company

**Policy Number:** 9678553 01
**Replaces:** 9678553 00

THIS IS A CLAIMS MADE AND REPORTED POLICY. "CLAIMS" MUST FIRST BE MADE AND REPORTED IN WRITING TO THE COMPANY DURING THE "CERTIFICATE PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD OF THIS POLICY. THE PAYMENT OF "DEFENSE COSTS" REDUCES THE LIMITS OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.

Item 1. "Named Insured" and Address: Agents Professional Liability Service Organization:

North American Company for Life and Health Insurance
525 West Van Buren
Chicago, IL 60607

Item 2. Limits of Liability:

Option 1: $1,000,000 each "Claim"
$1,000,000 aggregate each "Named Certificate Holder"

Option 2: $1,000,000 each "Claim"
$2,000,000 aggregate each "Named Certificate Holder"

Item 3. "Policy Period": From: 12:01 A.M. on November 01, 2007 To: 12:01 A.M. on November 01, 2008
Local time at the address shown in Item 1 of the "Certificate of Insurance"

Item 4. Deductible:

$500 each "Claim" for the products of Midland National Life Insurance Company
$2,500 each "Claim" for all other covered products
Deductibles are applicable to "Damages" only.

Item 5. Premium: Subject to Agent Enrollment

Item 6. Endorsements Effective at Inception:

1. Wrongful Termination Endorsement
2. "Insured" Amendment Endorsement
3. Mutual Fund Endorsement
4. Retroactive Date Endorsement
5. One Year Automatic Extended Reporting Period Endorsement
6. Conditional Automatic Unlimited ERP for "Named Certificate Holder" Endorsement
7. Conditions Amendment Endorsement

8. Other Insurance Provision Endorsement
9. "Master Policy" Cancellation Non renewal Endorsement
10. All State Amendatory Endorsements

Louis J. Mannello Jr.

President

Corporate Secretary

Signed by: Timothy A. Rasool
Authorized Representative

01/03/2008
Date

# Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy

ZURICH

THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE
PLEASE READ THE ENTIRE POLICY CAREFULLY

**THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE. "CLAIMS" MUST FIRST BE MADE AND REPORTED IN WRITING TO THE COMPANY DURING THE "CERTIFICATE PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD OF THIS POLICY. THE PAYMENT OF "DEFENSE COSTS" REDUCES THE LIMITS OF LIABILITY.**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine an "Insured's" rights, duties and what is and is not covered.

This Policy provides insurance to the "Named Certificate Holder" shown in Item 1 of the "Certificate of Insurance" subject to the "Master Policy" Declarations issued to the "Named Insured". Unless otherwise stated, the phrase **the Policy** shall refer only to the insurance provided by the "Certificate of Insurance" and shall not refer to the "Master Policy" Declarations. Similarly, the phrase **Limits of Liability** shall refer to the Limits of Liability identified in the "Certificate of Insurance". The word **Company** shall refer to the company providing this insurance.

Refer to Section II – DEFINITIONS for the special meaning of words and phrases that appear in quotations.

In consideration of the payment of premium and in reliance upon the statements made by the "Additional Insured" in the application and its attachments and any material submitted therewith, all of which are made a part hereof, and subject to the "Certificate of Insurance" and the limitations, conditions, provisions and terms of this Policy (including any endorsements hereto), the Company and the "Named Certificate Holders" agree as follows:

## I. INSURING AGREEMENTS

### A. COVERAGE – PROFESSIONAL LIABILITY

The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4 of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Insured" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1. The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period"; or

2. The "Claim" is for a "Personal Injury" caused by an offense arising out of rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession identified in Section I – INSURING AGREEMENTS, Subsection A.1. above while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such "Personal Injury" occurred on or after the "Retroactive Date" and before the end of the "Certificate Period".

### B. COVERAGE – VICARIOUS LIABILITY

The Company shall pay on behalf of the "Additional Insured", subject to the shared Limits of Liability, all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Additional Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Additional Insured" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

EXHIBIT " 2 "
PAGE NO. 62

1. The "Claim" would otherwise be insured under Section I – INSURING AGREEMENTS, Subsection A. and is not due to any actual or alleged negligent act, error or omission or "Personal Injury" of the "Additional Insured";

2. The Limits of Liability available to the "Additional Insured" for such "Claim" shall be shared with the Limits of Liability that are applicable to the "Named Certificate Holder". Such Limits of Liability shall not be in addition to the "Named Certificate Holder's" Limits of Liability;

3. The "Additional Insured" shall be subject to all of the terms, conditions, limitations and exclusions of the Policy to the same extent as the "Insured" and shall not be entitled to any rights greater than those available to the "Insured"; and

4. Upon the request of the Company, the "Additional Insured" shall pay the Deductible on behalf of the applicable "Named Certificate Holder" for a "Claim" for which the "Additional Insured" is afforded coverage under the Policy.

C. DEFENSE AND SETTLEMENT

The Company has the right and duty to defend any "Claim" against the "Insured" and "Additional Insured" seeking "Damages" to which this insurance applies even if any of the allegations of the "Claim" are groundless, false or fraudulent. The Company has choice of counsel in defending any "Claim" against the "Insured" and "Additional Insured". The Company has the right to investigate and settle any "Claim". The Company shall investigate and settle any "Claim" as it deems expedient, but the Company shall not be obligated to pay any "Claim", settlement or judgment, or to defend or continue to defend any "Claim" after the Company's applicable Limits of Liability shown in Item 4 of the "Certificate of Insurance" have been exhausted by payment of "Damages" or "Defense Costs".

## II. DEFINITIONS

A. "Additional Insured" means the company(ies) shown in Item 2 of the "Certificate of Insurance".

B. "Agents" means the individuals as shown in Item 1 of the "Certificate of Insurance", provided that they are party to a contract with "Additional Insured" on the effective date of this Policy and that they are licensed by the appropriate authority to solicit and sell life, accident and health insurance products or services. Such individuals shall be specifically designated by name and their names shall be on file with the "Additional Insured". Any new "Agent" of the "Additional Insured" after the effective date of the "Master Policy" shall become a "Named Certificate Holder" upon the effective date of such contract.

C. "Broker/Dealer" means any firm in the business of buying and selling "Securities" for itself and others that is registered with the Securities and Exchange Commission and any applicable state regulatory organization and is a member of the National Association of Securities Dealers.

D. "Certificate of Insurance" means the certificate issued in accordance with the "Master Policy" to the "Named Certificate Holder".

E. "Certificate Period" means the period of time from the effective date as shown on the "Certificate of Insurance" to the date of the "Termination of Coverage".

F. "Claim" means a written demand received by the "Insured" or "Additional Insured" seeking "Damages".

G. "Damages" mean the monetary amounts for which an "Insured" is legally liable, including sums paid as judgments, awards or settlements, and any taxes, fines or penalties incurred by a third party and included in such third party's "Claim" against the "Insured." However, "Damages" do not include:

1. Fines or penalties imposed by law, or taxes levied on or against an "Insured" or "Additional Insured";
2. Punitive, exemplary or treble damages;
3. The return, restitution, offset or withdrawal of fees, premiums, commissions or brokerage charges, including but not limited to, surrender charges and contingent deferred sales charges;
4. Non-pecuniary or injunctive relief; or
5. Judgments or awards from acts deemed uninsurable by law.

H. "Defense Costs" mean:

1. All reasonable and necessary fees charged by any lawyer designatedby the Company for the defense of a "Claim";
2. All other reasonable fees, costs and expenses resulting from the investigation, adjustment or defense of a "Claim";

3. The premiums for appeal, attachment or similar bonds, if incurred by the Company or by the "Insured" or "Additional Insured" with the Company's written consent. However, the Company shall have no obligation to apply for or to furnish any such bond; and

4. Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the amount available for the judgment under this Policy. However, "Defense Costs" does not include remunerations of an "Insured's" or the Company's regular employees or officials or independent adjusters.

I. "General Agent" means an "Agent" designated by and on file with the "Additional Insured" as a "General Agent".

J. "Insured" means:

1. The "Named Certificate Holder";

2. Any corporation, partnership or other business entity which engages in "Professional Services" and which is owned by the "Named Certificate Holder", and then only with respect to those operations of the business entity related to the "Professional Services" provided by the "Named Certificate Holder";

3. Any person acting on behalf of the "Named Certificate Holder", who was or is a partner, officer, director, stockholder or an employee of the "Named Certificate Holder" or the "Named Certificate Holder's" business entity, provided such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"; or

4. The heirs, executors, administrators or legal representatives of the "Named Certificate Holder" in the event of death, incapacity or bankruptcy.

K. "Master Policy" means the "Master Policy" Declarations issued to the "Named Insured". The "Master Policy" provides the "Named Certificate Holders" no insurance separate and apart from the coverage provided by the "Certificate of Insurance".

L. "Named Certificate Holder" means:

1. The "Agent";

2. The "General Agent"; or

3. The "Registered Representative"

shown in Item 1 of the "Certificate of Insurance".

M. "Named Insured" means the entity shown in Item 1 of the "Master Policy" Declarations.

N. "Personal Injury" means one or more of the following offenses

1. False arrest, detention or imprisonment;

2. Malicious prosecution; or

3. Oral or written publication, in any manner, of material that slanders or libels a person or organization, or that violates a person's right of privacy.

O. "Policy Period" means the period of time shown in Item 3 of the "Master Policy" Declarations.

P. "Professional Services" mean:

1. The sale or servicing of:

a. Life insurance, accident and health insurance, disability income insurance and annuities;

b. Variable insurance products, including but not limited to variable annuities, flexible and scheduled premium annuities and variable life insurance;

c. Employee benefit plans funded with those products listed in Section II – DEFINITIONS, Subsections P.1.a., b., and d..

d. Mutual funds and "Securities" registered with the Securities and Exchange Commission and sold by a "Registered Representative" through a "Broker/Dealer" that is a subsidiary of the "Additional Insured"; or

Mutual funds and "Securities" registered with the Securities and Exchange Commission and sold by a "Registered Representative" through a "Broker/Dealer" prior to the "Certificate Period" so long as at the time of sale the "Registered Representative" had a contract with such "Broker/Dealer" and was authorized to sell such "Securities".

2. The supervision and training by a "General Agent" over the conduct of any "Insured".

Q. "Registered Representative" means an individual who is registered with the National Association of Securities Dealers, Inc. and is contracted with a "Broker/Dealer" that is a subsidiary of the "Additional Insured" to, for compensation, render "Professional Services" on behalf of the "Additional Insured". Such individual shall be specifically designated by name and his or her name shall be on file with the "Additional Insured". Any new "Registered Representative" of such "Broker/Dealer" after the effective date of the "Master Policy" shall become a "Named Certificate Holder" upon the effective date of such contract.

R. "Retroactive Date" means the inception date of the ""Named Certificate Holder's" first claims made agent's professional liability policy from which date coverage has been maintained in force without interruption and for which written proof is provided to the Company.

S. "Securities" mean the term used by the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act of 1940, as applicable, or any state securities laws, so long as such "Securities" are offered for sale on a United States securities exchange.

T. "Termination of Coverage" means the earlier of the following:

1. The nonrenewal of this Policy;
2. The cancellation of this Policy;
3. The termination of a contract between an "Agent" and the "Additional Insured"; or
4. The termination of a contract between a "Registered Representative" and a "Broker/Dealer" that is a subsidiary of the "Additional Insured".

## III. LIMITS OF LIABILITY, DEDUCTIBLE AND MULTIPLE "CLAIMS" AND CLAIMANTS

A. The Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" is the most the Company will pay for all "Damages" and "Defense Costs" arising out of "Claims" against the "Named Certificate Holder".

B. Subject to Subsection A. above, the Limits of Liability – Each "Claim"/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" shall apply in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" and is the most the Company will pay for "Damages" and "Defense Costs" arising out of any one "Claim" against the "Named Certificate Holder".

C. Subject to Subsections A. and B. above, the Limits of Liability available to the "Additional Insured" or the "Insured" identified in Section II – DEFINITIONS, Subsections J.2., J.3., and J.4. shall be shared with and not in addition to the Limits of Liability which is applicable to the "Named Certificate Holder".

D. The Deductible shown in Item 6 of the "Certificate of Insurance" applies only to the payment of "Damages". The Company shall pay only that portion of the "Damages" which is in excess of the Deductible for each "Claim", subject to the Limits of Liability under this Policy. If a "Claim" is made against more than one "Named Certificate Holder", the Deductible shall apply separately to each "Named Certificate Holder". If a "Claim" is made against an "Additional Insured" or "Insured" other than the "Named Certificate Holder", only one Deductible shall apply regardless of the number of "Additional Insureds" and "Insureds". In such an instance, the Deductible shall be the amount that is applicable to the "Named Certificate Holder" for whom the "Additional Insured" is vicariously liable, or on whose behalf the "Insured" was acting.

E. The bringing of "Claims" by more than one person or organization, or the making of two or more "Claims" against an "Insured" or "Additional Insured", arising out of a single negligent act, error or omission, or "Personal Injury", or a series of related negligent acts, errors or omissions, or "Personal Injury" shall be treated as a single "Claim". All such "Claims", whenever made, shall be considered first made during the "Certificate Period" in which the earliest "Claim" arising out of such negligent acts, errors or omissions, or "Personal Injury" was first made and all such "Claims" shall be subject to a single Each "Claim"/ Each "Named Certificate Holder" Limit of Liability and shall not operate to increase the Company's Limits of Liability.

## IV. EXTENDED REPORTING PERIODS

A. Automatic Extended Reporting Period -- Cancellation Or Nonrenewal Of The "Master Policy"

In the event of cancellation or nonrenewal of the "Master Policy", the "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of sixty (60) days after the date of such cancellation or nonrenewal to report in writing to the Company any "Claim" which is first made prior to the such cancellation or nonrenewal and arises out of a negligent act, error or omission or "Personal Injury" which occurred before the date of such cancellation or nonrenewal of the "Master Policy" and on or after the "Retroactive Date". However, there shall be no coverage hereunder in the event the "Named Certificate Holder" has any other applicable insurance, including a policy issued subsequent to this Policy. The Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period if such is purchased.

B. Optional Extended Reporting Period – Cancellation Or Nonrenewal Of The "Master Policy"

In the event of cancellation or nonrenewal of the "Master Policy", the "Additional Insured", acting on behalf of the "Named Certificate Holder", upon payment of an additional premium equal to two hundred percent (200%) of the deposited premium, shall have the right for an Optional Extended Reporting Period of three (3) years following the effective date of such cancellation or nonrenewal in which to report in writing to the Company any "Claim" which is first made during such three (3) year Optional Extended Reporting Period and arises out of a negligent act, error or omission or "Personal Injury" which occurred before the date of such cancellation or nonrenewal of the "Master Policy" and on or after the "Retroactive Date". The rights contained in this section shall terminate unless written notice of such election together with the additional premium due is received by the Company within sixty (60) days after the effective date of the cancellation or nonrenewal of the "Master Policy".

If the Company cancels or nonrenews the "Master Policy" because the "Additional Insured" has failed to pay a premium when due, or has not complied with the terms and conditions of the Policy, the "Additional Insured", acting on behalf of the "Named Certificate Holder", shall not have the right to the Automatic Extended Reporting Period or to purchase such Optional Extended Reporting Period at a later date.

The quotation of a different premium, Deductible, Limits of Liability or Policy terms and conditions for renewal shall not constitute a cancellation or refusal to renew for purposes of Section IV – EXTENDED REPORTING PERIODS, Subsections A. and B. above.

C. Extended Reporting Periods -- "Named Certificate Holder"

1. Automatic Extended Reporting Period Of Ninety (90) Days -- "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II -- DEFINITIONS, Subsections T.3. and T.4., the insurance under this Policy shall cease on such date. The "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of ninety (90) days after such date to report in writing to the Company any "Claim" which is first made during said Automatic Extended Reporting Period of ninety (90) days and arises out of a negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". This Automatic Extended Reporting Period of ninety (90) days, however, shall be limited to "Claims" solely involving products provided by the "Additional Insured". Notwithstanding Section VII -- CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance. This Automatic Extended Reporting Period shall be included within the Automatic Two (2) Year Extended Reporting Period below or the Optional Extended Reporting Period, if such is purchased.

2. Automatic Extended Reporting Period Of Two (2) Years – "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II -- DEFINITIONS, Subsections T.3. and T.4., by reason of the "Named Certificate Holder's" retirement from the business of providing "Professional Services" in accordance with the formal retirement procedure of the "Additional Insured", totally and permanently disability pursuant to and in accordance with formal disability procedures of the "Additional Insured", or death, the insurance under this Policy shall cease on such date. The "Named Certificate Holder" shall be entitled to a free Automatic Extended Reporting Period of two (2) years after such date to report in writing to the Company any "Claim" which is first made during said Automatic Extended Reporting Period of two (2) years and arises out of any negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". Notwithstanding Section VII – CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance. This Automatic Extended Reporting Period of two (2) years shall be included within the Optional Extended Reporting Period, if such is purchased.

3. Optional Extended Reporting Period - "Named Certificate Holder"

The Automatic Extended Reporting Period of two (2) years provided in Subsection C.2. above may be extended so that the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", or the legal representative of a deceased "Named Certificate Holder", may elect to purchase an Optional Extended Reporting Period for "Claims" which are first made and reported in writing within:

a. Three (3) years of the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4. if the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", or the legal representative of the deceased "Named Certificate Holder" pays an additional premium equal to two hundred percent (200%) of the "Named Certificate Holder's" last annual premium within sixty (60) days of such date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4.;

b. Five (5) years of the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., if the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", the legal representatives of the deceased "Named Certificate Holder" pays an additional premium equal to three hundred percent (300%) of the "Named Certificate Holder's" last annual premium within sixty (60) days of such date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4.; or

c. An unlimited amount of time of the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., if the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", or the legal representatives of the deceased "Named Certificate Holder" pays an additional premium equal to four hundred percent (400%) of the "Named Certificate Holder's" last annual premium within sixty (60) days of such date of "Termination of Coverage" as defined in Section II - DEFINITIONS, Subsections T.3. and T.4..

D. The Extended Reporting Periods do not reinstate or increase the Limits of Liability beyond the Limits of Liability available on the "Certificate of Insurance", nor extend the "Certificate Period."

E. The Extended Reporting Periods do not apply to any "Claim" that is covered under any subsequent insurance issued to the "Named Certificate Holder", or that would be covered but for the exhaustion of the Limits of Liability applicable to such insurance.

F. "Claims" for any negligent act, error or omission or "Personal Injury" which are first made and reported during an Extended Reporting Period, if applicable, will be deemed to have been made on the last day of the "Certificate Period".

## V. NOTICE PROVISION

A. NOTICE OF "CLAIM"

As a condition precedent to the insurance afforded by this Policy, the "Insured" or "Additional Insured" which seeks coverage shall:

1. As soon as practicable, but no later than sixty (60) days after the "Termination of Coverage", give to the Company at the address below, written notice of any "Claim" made against the "Insured" or "Additional Insured" during the "Certificate Period" or any applicable Extended Reporting Period.

2. Immediately forward to the Company at the address below, every "Claim", notice, summons or other process received directly by the "Insured", Additional Insured, or by any of his, her or its representatives in the event suit is brought against the "Insured" or "Additional Insured".

3. Give to the Company, at the address below, written proof of "Named Certificate Holder's" first claims made agent's professional liability policy from which date coverage has been maintained in force without interruption, in the event that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before the "Certificate Period".

4. Assist and cooperate with the Company by:

a. Meeting with representatives of the Company, submitting to their examination and interrogation, under oath if requested, and giving written statements to such representatives;

b. Attending hearings, depositions and trials;

c. Assisting in investigation, settlement, securing and giving evidence, and obtaining the attendance of witnesses in the conduct of suit;

d. Doing whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the "Insured" may have; and

e. Not demand or agree to arbitration of any "Claim" made against the "Insured" or "Additional Insured" without written consent of the Company, which shall not be unreasonably withheld. The "Insured" or "Additional Insured" shall not make any payment, admit any liability, settle any "Claim", assume any obligation or incur any expenses without the written consent of the Company.

B. NOTICE OF CIRCUMSTANCE

If during the "Certificate Period", the "Insured" or "Additional Insured" becomes aware of an act, error or omission or "Personal Injury" which may be expected to give rise to a "Claim" under the Policy, the "Insured" or "Additional Insured" shall provide written notice to the Company during the "Certificate Period" containing particulars sufficient to identify an "Insured" or "Additional Insured" and reasonably obtainable information with respect to:

1. A detailed description of the specific act, error or omission or "Personal Injury";

2. The "Damage", or "Personal Injury" which has or may result from such negligent act, error or omission or "Personal Injury";

3. The circumstances by which the "Insured" first become aware of such negligent act, error or omission or "Personal Injury"; and,

then any "Claim", for which coverage is provided by this Policy, that may be made against the "Insured" or "Additional Insured" arising out of such act, error or omission or "Personal Injury" shall be deemed for the purposes of this insurance to have been made and reported on the date on which the notice was received by the Company. No coverage shall be provided in the event the "Insured" has any other applicable insurance.

C. All notices of "Claim" or circumstances are to be submitted to the following address:

**Zurich North America**
**Diversified Financial Institutions Claims**
**P.O. Box 307010**
**Jamaica, NY 11430-7010**

VI. EXCLUSIONS

This Policy does not apply to any "Claim":

A. Arising out of any act, error or omission of the "Insured" committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication. In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company;

B. Alleging bodily injury, sickness or death of any person, or to injury or destruction of any tangible property, including loss of use thereof;

C. Alleging the liability of others assumed by the "Insured" under any contract or agreement unless such liability would have attached to the "Insured" even in the absence of such agreement;

D. By an enterprise which one or more "Insureds" own, operate, control or manage; or any "Claim" by an enterprise which owns, operates, controls or manages an "Insured";

E. Based upon or arising out of any Pension, Profit Sharing, Health and Welfare or other Employee Benefit Plan or Trust sponsored by the "Insured" as an employer;

F. Arising out of the "Insured" making representations, promises or guarantees as to the future value of any investment including but not limited to, representations, promises or guarantees as to interest rates, fluctuation in interest rates, future premium payments or market value(s);

G. Arising out of services performed by the "Insured" as an actuary, accountant, attorney, real estate agent or real estate broker, named fiduciary or third party claims administrator;

H. Arising out of, or contributed to by, any commingling of, or use of client funds;

I. Arising out of, directly or indirectly, the insolvency, receivership, bankruptcy, or inability to pay of any organization in which the "Insured"

1. Has placed or obtained a client's coverage;
2. Has placed a client's funds; or
3. Has recommend a client invest.

However, this exclusion shall not apply if the "Claim" is based upon the insolvency, receivership, liquidation or inability to pay of any insurance company that was rated as A- or better by A.M. Best Company at the time the business was placed, obtained or recommended;

J. Arising out of the "Insured's" activities in computer programming or processing if the resulting programs or software are sold or distributed or if a fee is charged for use of such program or software;

K. Made against any "Insured" or the "Additional Insured" by:

1. Any "Insured";
2. Any "Additional Insured";
3. Any "Broker/Dealer";
4. Any other insurance company;
5. Any other insurance agency; or
6. Any person or entities who in the past were, but are not currently, parties to an agent contract with the "Additional Insured";

L. Arising out of the use of confidential information by an "Insured", including but not limited to such use for the purpose of replacement of coverage;

M. Arising out of the "Insured's" inability or refusal to pay or collect premium, claim or tax monies, including surcharges or assessments of any kind;

N. Arising out of or involving investment products partially or totally owned by the "Insured";

O. Arising from or contributed to by the placement of client's coverage or funds directly or indirectly with any organization which is not licensed to do business in the state or jurisdiction with authority to regulate such business. However, this exclusion does not apply to any "Claim" arising from or contributed to by the placement of client's coverage or funds directly or indirectly with any organization which is an eligible surplus lines insurance company in the state or jurisdiction with authority to regulate such business;

P. Arising out of the brokering of structured settlements; however, this exclusion does not apply to any "Claim" arising from or contributed to the sale of annuity products used to fund the structured settlements;

Q. Arising out of the ownership, formation, operation, administration, advice, referral, recommendation or placement of coverage with any health maintenance organization, preferred provider organization, risk retention group, self insurance program or purchasing group;

R. Arising out of or based upon:

1. The Federal Telephone Consumer Protection Act (47 U.S.C. sec 227), Drivers Privacy Protection Act (18 U.S.C. sec. 2721-2725) or Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. sec. 7701, et seq.); or
2. Any other federal, state or local statute, regulation or ordinance that imposes liability for the:
   a. Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or
   b. Unlawful use, collection, dissemination, disclosure or redisclosure of personal information in any manner by an "Insured" or on behalf of any "Insured";

S. Arising out of the purchase, sale or the giving of advice regarding:

1. Commodities, commodity future contracts, or option contracts other than covered call option contracts;
2. Any security priced under five dollars ($5.00) at the time of purchase;
3. Promissory notes or other non-securitized evidence of debt; or
4. Viatical settlements, life settlements or any security backed by either viatical or life settlements;

T. Brought by, or on behalf of, the Securities Investor Protection Corporation, or any governmental, quasi-governmental, regulatory, or self-regulatory entity, whether directly or indirectly; however, this exclusion shall not apply to any "Claim" by such entity to enforce its rights as a direct customer of the "Insured" or "Additional Insured";

U. Brought by, or on behalf of, any clearing agency or arising out of any function of any "Insured" or "Additional Insured" as a clearing agency;

V. Arising out of the "Insured's" activities in exercising discretionary authority, management or control over a customer's account;

W. Arising out of or based upon infringement of patent, copyright, trademark, service mark, trade dress or trade name, unfair competition or piracy, theft or wrongful taking of concepts including using another's advertising ideas or other intellectual property;

X. For "Personal Injury":

1. Sustained by any "Insured" or "Additional Insured";
2. Caused by or at the direction of the "Insured" with the knowledge that the offense would violate the rights of another and would inflict "Personal Injury";
3. Arising out of oral or written publication of material, if done or at the direction of the "Insured" with knowledge of its falsity;
4. Arising out of an electronic chatroom or bulletin board the "Insured" hosts, owns or over which the "Insured" exercises control; or
5. Arising out of the unauthorized used of another's name or product in the "Insured's" email address, domain name or metatag, or any other similar tactics to mislead another's potential customer;

Y. Arising out of alleged discrimination of any kind;

Z. Prior to the first effective date of coverage issued to the "Named Certificate Holder", no "Insured" had any basis:

1. To believe that any "Insured" had knowledge of any negligent act, error or omission or "Personal Injury";
2. To forsee that any such negligent act, error or omission or "Personal Injury" or any related negligent act, error or omission or "Personal Injury" might reasonably be expected to be the basis of a "Claim";

## VII. CONDITIONS

### A. OTHER INSURANCE

1. If the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred during the "Certificate Period" and the "Insured" is covered by any other valid and collectible insurance, then this Policy shall be excess over any such other valid and collectible insurance and shall then apply only in the amount by which the applicable Limit of Liability of this Policy exceeds the sum of the applicable Limit of Liability of all such other insurance with the Company, or one of its affiliates. In this event, the "Insured" must elect the applicable policy under which the "Claim" will be made.
2. If the "Claim" arises out of a negligent act, error or omission, or "Personal Injury" that occurred before the "Certificate Period" and the "Insured" is covered by any other valid and collectible insurance, then there shall be no coverage under this Policy for such "Claim".

### B. SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all the "Insured's" rights of recovery, and the "Insured" shall execute and deliver instruments and all papers required and shall do

everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company to bring suit in the name of the "Insured".

C. CHANGES

Notices to any agent or representative, or knowledge possessed by any agent, representative or any other person shall not effect a waiver or a change in any part of this Policy or prevent the Company from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsements issued to form a part of this Policy.

D. ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, all "Insureds" have fully complied with all the terms of this Policy and not until the amount of all "Insured's" obligations to pay have been fully and finally determined either by judgment against all "Insureds" or by written agreement of the " Insured", the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the "Insured" to determine the "Insured's" liability, nor shall the Company be impleaded by the "Insured" or the "Insured's" legal representative.

E. ASSIGNMENT

The interest of the "Insured" under this Policy shall not be assignable to any other person. In the event of death or incompetency of the "Named Certificate Holder", this Policy shall cover the "Named Certificate Holder's" legal representative as an "Insured" as respects any liability previously incurred and covered by this Policy.

F. TERRITORY

This Policy applies to negligent acts, errors or omissions or "Personal Injury" which occur anywhere in the world provided that the "Claim" is made against the "Insured" or the "Additional Insured" in the United States of America, its territories or possessions.

G. CANCELLATION AND NONRENEWAL

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender thereof to the Company or any of its authorized representatives, or by mailing to the Company written notice stating when, thereafter, cancellation shall be effective.

   b. If this Policy has been in effect less than sixty (60) days and is not a renewal of a Policy issued by the Company, the Company may cancel this Policy for any reason.

   c. If this Policy has been in effect for sixty (60) days or more or is a renewal of a Policy issued by the Company, this Policy may not be canceled except for one (1) or more of the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation affecting the Policy;

      (3) Violation of any of the terms or conditions of the Policy; or

      (4) Substantial increase in hazard.

   d. Written notice of cancellation shall be mailed or delivered by the Company to the "Named Certificate Holder" at least:

      (1) Fifteen (15) days prior to the effective date of cancellation, if this Policy is canceled for nonpayment of premium; or

      (2) Sixty (60) days prior to the effective date of cancellation, if this Policy is canceled for any other reason.

   e. Written notice of cancellation, including the reasons for cancellation, shall be mailed or delivered to the "Named Certificate Holder".

f. Notice of cancellation shall be sent by certified mail. Delivery shall be considered to be equivalent to mailing. Proof of mailing shall be considered proof of notice.

g. If this Policy is canceled by the Company, the earned premium shall be computed pro rata. If this Policy is canceled by the "Named Certificate Holder", the Company shall retain the customary short rate proportion of the premium.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company will send notice at least sixty (60) days prior to expiration unless:

(1) The reason for the nonrenewal is due to nonpayment of premium or failure to meet Deductible obligations; or

(2) The "Additional Insured", acting on behalf of the "Named Certificate Holder", has obtained replacement coverage with another insurance company.

b. Written notice of nonrenewal shall be mailed by certified mail or delivered to the "Named Certificate Holder's " address shown in Item 1 of the "Certificate of Insurance". Proof of mailing shall be considered to be proof of notice.

H. CONFORMANCE TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.

I. SOLE AGENT

By acceptance of this Policy, the "Additional Insured" shall act on behalf of the "Insureds" and "Additional Insureds" for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of termination or nonrenewal, reimbursement to the Company of any Deductible advanced and the exercise of the rights provided in Section IV -- EXTENDED REPORTING PERIODS or VII – CONDITIONS, Subsection C..

J. BANKRUPTCY

Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate shall not relieve the Company of any of its obligations hereunder.

K. REPRESENTATION

In granting coverage under this Policy, the Company has relied upon the "Certificate of Insurance", agreements, representations and warranties in the written application for this Policy. All such "Certificate of Insurance", agreements, representations and warranties are the basis of coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

Louis J. Yannello Jr.

President

Corporate Secretary

EXHIBIT " 2 "
PAGE NO. 72

Endorsement # 1

# Wrongful Termination Coverage for "General Agents" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**
Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago , IL 60607

**Producer:**
AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that the following is added to Section I – INSURING AGREEMENTS:

D. WRONGFUL TERMINATION COVERAGE FOR "GENERAL AGENTS"

The Company shall pay on behalf of the "General Agent", subject to the Limits of Liability shown in Item 4 of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "General Agent" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "General Agent" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy for the actual or alleged wrongful termination of contract to engage in "Professional Services" between the "Insured" as identified in Section II – DEFINITONS, Subsections L.1. or L.3. and the "General Agent", provided that such wrongful termination of contract occurred on or after the "Retroactive Date" and before the end of the "Certificate Period". Such coverage as is provided hereunder shall not apply to any "Claim" alleging discrimination of any kind.

For purpose of the coverage provided under this endorsement only, Section VI – EXCLUSIONS, Subsection K.1. and K.6. are deleted in their entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

EXHIBIT " 2 "
PAGE NO. 73

Endorsement # 2

# "Insured" Amendment Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp Date of Pol | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**
Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago , IL 60607

**Producer:**
AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection II.J.3. is deleted and replaced with the following:

3. Any person acting on behalf of the "Named Certificate Holder" who was or is an employee of the "Named Certificate Holder" or "Named Certificate Holder's" business entity or a partner, officer, director or stockholder of the "Named Certificate Holder's" business entity, provided that such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"; and

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasool
Authorized Representative

01/03/2008
Date

EXHIBIT " 2 "
PAGE NO. 74

Endorsement # 3

# Mutual Funds Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**
Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago , IL 60607

**Producer:**
AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that Section II – DEFINITIONS, Subsection P.1.d. is deleted and replaced with the following:

d. Mutual funds registered with the Securities and Exchange Commission and sold by a "Registered Representative" through a "Broker/Dealer" so long as at the time of sale the "Registered Representative" had a contract with such "Broker/Dealer" and was authorized to sell such mutual funds.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Lassal
Authorized Representative

01/03/2008
Date

EXHIBIT " 2 "
PAGE NO. 75

Endorsement # 4

# Retroactive Date Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC - 96-78-553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**

Agents Professional Liability Service Organization:

North American Company for Life and Health Insurance

525 West Van Buren

Chicago, IL 60607

**Producer:**

AON Services Group

159 East County Line Road

Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Subsection II.R "Retroactive Date" is deleted and replaced with the following:

R "Retroactive Date" means the earlier of the "Named Certificate Holder's" date of first continuous contract with the "Additional Insured" or the inception date of the "Named Certificate Holder's" first claims made Life Agents or Registered Representatives Professional Liability policy from which date of coverage has been maintained in force without interruption.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

EXHIBIT "2"
PAGE NO. 76

Endorsement # 5

# Automatic Extended Reporting Period Of One Year Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**
Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago , IL 60607

**Producer:**
AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

For no additional premium, it is agreed that Section IV - EXTENDED REPORTING PERIODS, Subsection C.1. is deleted in its entirety and replaced with the following:

C. Extended Reporting Periods - "Named Certificate Holder"

Automatic Extended Reporting Period Of One (1) Year – "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., the insurance under this Policy shall cease on such date. The "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of one (1) year after such date to report in writing to the Company any "Claim" which is first made during said Automatic Extended Reporting Period of one (1) year and arises out of a negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". This Automatic Extended Reporting Period of one (1) year, however, shall be limited to "Claims" solely involving products provided by the "Additional Insured". Notwithstanding Section VII – CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance. This Automatic Extended Reporting Period shall be included within the Automatic Two (2) Year Extended Reporting Period below or the Optional Extended Reporting Period, if such is purchased.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rassoul
Authorized Representative

01/03/2008
Date

EXHIBIT " 2 "
PAGE NO. 77

Endorsement # 6

# Conditional Automatic Unlimited Extended Reporting Period For "Named Certificate Holder" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**

Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago , IL 60607

**Producer:**

AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

For no additional premium, it is agreed that Section IV – EXTENDED REPORTING PERIODS, Subsection C. is amended to include as follows:

C. Extended Reporting Periods – "Named Certificate Holder"

Conditional Automatic Unlimited Extended Reporting Period – "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., the insurance under this Policy shall cease on such date. However, nothwithstanding the Extended Reporting Periods provided in Section IV - EXTENDED REPORTING PERIODS, Subsections C.1 and C.2., so long as the "Master Policy" is maintained with the Company, the "Named Certificate Holder" shall have a free Conditional Automatic Unlimited Extended Reporting Period, after such date of "Termination of Coverage" to report in writing to the Company any "Claim" which is first made during said Conditional Automatic Unlimited Extended Reporting Period and arises out of a negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". Notwithstanding Section VII – CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance.

Any other applicable Automatic Extended Reporting Period and any Optional Extended Reporting Period, if such is purchased, shall be included within this Conditional Automatic Unlimited Extended Reporting Period.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasaol
Authorized Representative

01/03/2008
Date

EXHIBIT " 2 "
PAGE NO. 78

Endorsement # 7

# Conditions Amendment Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC – 96-78-553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**

Agents Professional Liability Service Organization:

North American Company for Life and Health Insurance

525 West Van Buren

Chicago, IL 60607

**Producer:**

AON Services Group

159 East County Line Road

Hatboro, PA 19040-1218

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

I. Subsection V.A.1. -- NOTICE OF CLAIM is deleted and replaced with the following:

1. As soon as practicable, but no later than sixty (60) days after the "Termination of Coverage", give to the Company at the address below, written notice of any "Claim" made against the "Insured" or "Additional Insured" during the "Certificate Period" or any applicable Extended Reporting Period.

II. The following is added to Subsection V.A. NOTICE OF CLAIMS:

Notwithstanding the requirement that a "Claim" must be first made and reported to the Company during the "Policy Period", if continuous coverage is in effect pursuant to consecutive policies issued by the Company, a "Claim" may be first made against the "Insured" during one policy period and may be reported to the Company in writing during the consecutive, immediately following policy period without constituting a violation of this requirement. In such circumstance, however, the "Insured" must report the "Claim" in writing to the Company as soon as practicable in compliance with Section V.A. Notice of "Claim".

III. Subsection V.B. is deleted and replaced by the following:

B. NOTICE OF CIRCUMSTANCE

If during the "Certificate Period" the Company is given written notice of any negligent act, error or omission or "Personal Injury" that could reasonably be expected to give rise to a "Claim" under the Policy, and provided that such written notice includes:

1. a detailed description of the specific act, error or omission; and,
2. the injury or damage which has or may result from such negligent act, error or omission; and,
3. the circumstances by which the "Insured" first became aware of such negligent act, error or omission

then any "Claim" which subsequently arises out of such negligent act, error or omission or "Personal Injury" shall be considered made during the "Certificate Period" in which the written notice was received. No coverage shall be provided in the event the "Insured" has any other applicable insurance.

IV. Subsection V.C. is deleted and replaced with the following:

All notices of "Claim" or circumstances shall be submitted to the Company at the following address:

By fax to:
Zurich North America
ATTN: DFI Claims
866-255-2962

OR

By regular mail to:
Zurich North America/DFI Claims
P.O. Box 307010
Jamaica, NY 11430-7010

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rassol
Authorized Representative

01/03/2008
Date

Endorsement # 8

# Other Insurance Provision Amendment Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**
Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago, IL 60607

**Producer:**
AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection VII.A.1. is deleted and replaced with the following:

1. If the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred during the "Certificate Period" and the "Insured" is covered by any other valid and collectible insurance, then this Policy shall be excess over any such other valid and collectible insurance and shall then apply only in the amount by which the applicable Limit of Liability of this Policy exceeds the sum of the applicable Limits of Liability of all such other insurance. This provision will not apply if the "Insured" has other insurance with the Company or one or more of its affiliates. In this event, the "Insured" must elect the applicable policy under which the "Claim" will be made.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

EXHIBIT " 2 "
PAGE NO. 81

Endorsement # 9

# "Master Policy" Cancellation and Nonrenewal Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 11/01/2008 | 11/01/2007 | 03375000 | | |

**Named Insured and Mailing Address:**
Agents Professional Liability Service Organization:
North American Company for Life and Health Insurance
525 West Van Buren
Chicago, IL 60607

**Producer:**
AON Services Group
159 East County Line Road
Hatboro, PA 19040-1218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

The following is added to Section VII -- CONDITIONS, Subsection G.:

3. Cancellation of the "Master Policy"

   a. The "Master Policy" may be canceled by the "Additional Insured" acting on behalf of the "Named Certificate Holders" by surrender of the "Master Policy" to the Company or any of its authorized representatives, or by mailing written notice to the Company or any of its authorized representatives stating when such cancellation shall take effect. If canceled by the "Additional Insured", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the "Master Policy" has been in effect less than sixty (60) days and is not a renewal of a Policy issued by the Company, the Company may cancel the "Master Policy" for any reason.

   c. If the "Master Policy" has been in effect for sixty (60) days or more or is a renewal of a Policy issued by the Company, the Company may cancel this "Master Policy" for the following reasons:

      (1) Nonpayment of the premium shown in Item 5 of the "Master Policy" Declarations;

      (2) Fraud or material misrepresentation affecting the "Master Policy"; or

      (3) Substantial increase in hazard.

   d. If the Company cancels subject to Subsections 3.c.(1) through 3.c.(3) above, the Company shall mail written notice of cancellation by certified mail or deliver to the "Named Insured" at the address shown in Item 1 of the "Master Policy" Declarations, and mail to the producer of record, if any. Proof of mailing shall be considered to be proof of notice.

   e. Written notice of cancellation shall take effect:

      (1) Fifteen (15) days from the date of mailing for the reasons set forth in Subsections 3.c.(1) above; or

      (2) Seventy-five (75) days from the day of mailing for the reasons set forth in Subsections 3.c.(2) and 3.c.(3) above.

   f. If "Master Policy" is canceled by the Company, the earned premium shall be computed pro rata. If "Master Policy" is canceled by the "Additional Insured" acting on behalf of all the "Named Certificate Holders" the Company shall retain the customary short rate proportion of the premium.

4. Nonrenewal of the "Master Policy"

   a. If the Company elects not to renew the "Master Policy", the Company shall mail written notice of nonrenewal by certified mail or delivered to the "Named Insured" at the address shown in Item 1 of the "Master Policy" Declarations, and mail to the producer of record, if any, at least seventy-five (75) days prior to the expiration, unless

(1) The reason for the nonrenewal is due to nonpayment of the premium shown in Item 5 of the "Master Policy" Declarations; or

(2) The "Additional Insured", acting on behalf of the "Named Certificate Holders" has obtained replacement coverage with another insurance company.

b. Proof of mailing shall be considered to be proof of notice.

5. In no event shall the "Master Policy" cancellation or nonrenewal become effective prior to the effective date of the cancellation or nonrenewal of all the "Certificates of Insurance".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rassel
Authorized Representative

01/03/2008
Date

Endorsement

# Alaska Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium, not to exceed seven point five percent (7.5%) of the unearned premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company. The Company shall return or credit the unearned premium within forty-five (45) days of the requested or the effective date of cancellation, whichever is later.

b. The Company may cancel this Policy for the following reasons:

(1) Conviction of the "Insured" of a crime having as one of its necessary elements an act increasing a hazard insured against; or

(2) Discovery of fraud or material misrepresentation made by the "Insured" or a representative of the "Insured" in obtaining the insurance or by the "Insured" in pursuing a "Claim" under the Policy;

(3) Nonpayment of premium;

(4) Failure or refusal of the "Insured" to provide the information necessary to confirm exposure or necessary to determine the Policy premium; or

(5) Any other reason, except those listed in Subsections 1.b.(1) through 1.b.(4) above.

If the Company cancels subjects Subsections 1.b.(1) through 1.b.(5) above, the Company shall mail written notice of cancellation by certified mail or first class mail with a certificate of mailing from the U.S. Postal Service to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.b.(1) and 1.b.(2);

(ii) Twenty (20) days from the date of mailing for the reasons set forth in Subsections 1.b.(3) and Subsections 1.b.(4).; and

(iii) Sixty (60) days from the date of mailing for the reason set forth in Subsection 1.b.(5).

EXHIBIT " 2 "
PAGE NO. 84

c. The unearned premium must be returned or credited to the producer of record, if any, or directly to the "Named Certificate Holder", or premium finance company prior to the effective date of cancellation; however if cancellation is for the following reasons, then return premium must be paid or credited within forty-five (45) days after notice of cancellation is given:

(1) Nonpayment of premium;

(2) Conviction of the "Insured" of a crime having as one of its necessary elements an act increasing a hazard insured against;

(3) Discovery of fraud or material misrepresentation made by the "Insured" or a representative of the "Insured" in obtaining the insurance or by the "Insured" in pursuing a "Claim" under the Policy; or

(4) Failure or refusal of the "Insured" to provide the information necessary to confirm exposure or necessary to determine the Policy premium.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rate, not to exceed seven point five percent (7.5%) of the unearned premium if the Policy is terminated by the "Named Certificate Holder" Under any other circumstances the refund shall be computed pro-rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or first class mail with a certificate of mailing from the US Postal Service to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If the Company fails to provide any written notice required by Subsection 2.a. above, the existing Policy shall remain in effect with no change in its terms and conditions until the Company provide the forty-five (45) days notice to the "Named Certificate Holder". The Policy may be extended in order to comply with the nonrenewal notice requirements.

c. The notice requirements set forth in Subsections 2.a. and 2.b. above do not apply when:

(1) The Company have in good faith manifested its willingness to renew; or

(2) The "Named Certificate Holder" has failed to pay the expiring Policy premium or the renewal Policy premium.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Conditional Renewal

If the Company elect to renew this Policy and the renewal is subject to any of the following:

a. Increase in premium by more than ten percent (10%) for a reason other than an increase in coverage or exposure base; or

b. The renewal Policy contains a material restriction or reduction in coverage not specifically requested by the "Named Certificate Holder";

the Company shall mail by first class mail with a certificate of mailing from the US Postal Service written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

EXHIBIT "2"
PAGE NO. 85

U-LAEO-125-A AK (05/06)

Endorsement

# Arizona Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Policy has been in effect sixty (60) days or less, we may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If the Policy has been in effect for more than sixty (60) days, the Policy may be canceled by the Company for the following reasons:

(1) Nonpayment of premium;

(2) Conviction of the "Insured" of a crime arising out of acts increasing the hazard insured against;

(3) Acts or omissions by the "Insured" or his or her representative constituting fraud or material misrepresentation in obtaining the Policy, in continuing the Policy or in presenting a "Claim" under the Policy;

(4) A substantial change in the risk, except to the extent we should reasonably have foreseen the change or contemplated the risk in writing the Policy;

(5) A substantial breach of contractual duties or conditions;

(6) Loss of reinsurance applicable to the risk insured against, but only if the absence of reinsurance has resulted from termination of treaty or facultative reinsurance initiated or implemented by the reinsurer(s) issuing the Policy;

(7) A determination by the Director of Insurance that the continuation of the Policy would place the Company in violation of the insurance laws of the State of Arizona or would jeopardize our solvency; or

(8) Acts or omissions by the "insured" or his or her representative which materially increase the hazard insured against.

If the Company cancels subject Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

EXHIBIT " 2 "
PAGE NO. 86

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(8).

d. Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(8) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail written notice stating the reason for nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days prior to the expiration date.

If the Company provides the notice described in the paragraph above, and the Company subsequently extend the Policy for ninety (90) days at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

If the Company fails to provide timely written notice required by the paragraph above, the coverage provided to the "Named Certificate Holder" shall remain in effect with no change in its terms and conditions, for a period of sixty (60) days after the notice is given.. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiration date.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal when:

(1) The Company or any company within the same insurance group has offered to issue an insurance renewal; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

d. The transfer of a Policy between companies with the same insurance group or changes in premium, Deductible, Limits of Liability or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew the Policy and the renewal is subject to any of the following:

(1) Increase in premium;

(2) Change in Deductible;

(3) Reduction in the Limits of Liability; or

(4) Substantial reduction in coverage;

the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a. (4) above, and the Company fails to provide notice sixty (60) days prior to the anniversary or expiration date, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Sixty (60) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

c. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following the Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# California Amendatory Endorsement

ZURICH

| Policy No | Eff Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, may cancel this Policy by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due or committed fraud. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

c. If this Policy has been in effect for more than sixty (60) days, the Policy may be canceled by the Company only for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation by either of the following:

(a) The "Named Certificate Holder" or his or her representative in obtaining the insurance;

(b) The "Named Certificate Holder" or his or her representative in pursuing a "Claim" under the Policy;

(3) A judgment by a court or an administrative tribunal that the "Named Certificate Holder" has violated any law of the state of California or of the United States having as one of its necessary elements an act which materially increases any of the risk insured against;

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the "Named Certificate Holder" or his or her representative, which materially increase any of the risks insured against;

(5) Failure by the "Named Certificate Holder" or his or her representative to implement reasonable loss control requirements which were agreed by the "insured" as a condition of Policy issuance or which were conditions precedent to the use by the Company of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

(6) A determination by the commissioner that the loss of, or changes in, the Company's reinsurance covering all or part of the risk would threaten the Company's financial integrity or solvency. A certification made under penalty of perjury to the commissioner by one of the Company's officers of the loss of, or change in, reinsurance and that the loss or change will threaten the Company's financial integrity or solvency if the cancellation of the Policy is not permitted shall constitute such a determination unless disapproved by the commissioner within thirty (30) days of the filing. There shall be no extension to this thirty (30) day period;

(7) A determination by the commissioner that the continuation of the Policy would place the Company in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the Company's solvency; or

EXHIBIT " 2 "
PAGE NO. 89

(8) A change by the "Named Certificate Holder" or his or her representative in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the Policy.

If the Company cancels subjects to Subsections 1.c.(1) through 1.c. (8) above, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(iii) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(2) and

(iv) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(3) through 1.c.(8).

d. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail written notice stating the reason for nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days, but not more than one hundred and twenty (120) days, prior to the expiration of this Policy.

If the Company fails to provide timely written notice required by the paragraph above, the coverage provided to the "Named Certificate Holder" shall remain in effect with no change in its terms and conditions, for a period of sixty (60) days.

b. The Company is not required to send notice of nonrenewal in the following situations:

(1) If the transfer or renewal of a Policy, without any changes in terms, conditions or rates, is between the Company and a member of our insurance group.

(2) If the Policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with Subsection a. above.

(3) If the "Named Certificate Holder" has obtained replacement coverage, or have agreed, in writing, within sixty (60) days of the termination of the Policy, to obtain that coverage.

(4) If the Policy is for a period of no more than sixty (60) days and the "Named Certificate Holder" is notified at the time of issuance that it will not be renewed.

(5) If the "Named Certificate Holder" requests a change in the terms or conditions or risks covered by the Policy within sixty (60) days of the end of the "Certificate Period".

(6) If the Company has made a written offer to the "Named Certificate Holder", in accordance with the timeframes shown in Subsection 2.a. above, to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds twenty-five percent (25%).

c. The transfer of a Policy between companies with the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusal to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Reduction in Limits of Liability;

b. Increase in Deductible;

c. Elimination of coverages; or

d. Twenty-five percent (25%) or more rate increase.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days, but not more than one hundred and twenty (120) days, prior to the expiration of this Policy.

4. Mailing Time Requirements

Mailing time must be added to the notice periods as follows:

a. Add five (5) days if the place of address and place of mailing is in California;

b. Add ten (10) days if the place of address or place of mailing is outside of California; or

c. Add twenty (20) days if the place of address or place of mailing is outside the United States.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Russell 01/03/2008
Authorized Representative Date

EXHIBIT "2"
PAGE NO. 91

Endorsement

# Colorado Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. This Policy may be canceled by the Company by mailing written notice by certified mail or first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than forty-five (45) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

The Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) A false statement knowingly made on the application for insurance; or

(3) A substantial change in the exposure or risk from what was indicated on the application and underwritten as of the effective date of the Policy unless the "Named Certificate Holder" has notified the Company of the change and the Company accepts such change.

If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter but not more than forty-five (45) days after the effective date of cancellation by the Company or after the date of entitlement established by notification of cancellation or as otherwise established. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail or first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal, at least forty-five (45) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

The Company or another company within the same insurance group has offered to issue a renewal Policy; or

The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium; or

(2) Reduction in coverage;

the Company shall mail by certified mail or first class mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice forty-five (45) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

c. The present Policy will remain in effect until the earlier of the following:

(1) Forty-five (45) days after the date of mailing or delivery of the notice; or

(2) The effective date of replacement coverage obtained by the "Named Certificate Holder".

d. If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(1) The rates applicable to the terminated Policy; or

(2) The rates presently in effect.

e. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasoul
Authorized Representative

01/03/2008
Date

EXHIBIT "2"
PAGE NO. 93

Endorsement

# Connecticut Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ninety (90) days from the date the notice is mailed, unless this Policy is canceled for reasons set forth in Subsections 1.c.(1) through 1.c.(5) below. In that event, such cancellation shall take effect no fewer than ten (10) days after the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect sixty (60) days or more or is a renewal of a Policy the Company issued, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Conviction of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation by the "Insured" in obtaining the Policy, or in perfecting any "Claim" thereunder;

(4) Discovery of any willful or reckless act or omission by the "Insured" increasing the hazard insured against;

(5) A determination by the Commissioner that continuation of the Policy would violate or place us in violation of law;

(6) Physical changes in the property which increase the hazard insured against;

(7) A material increase in the hazard insured against; or

(8) A substantial loss of reinsurance affecting this particular line of insurance.

If the Company cancels subject to in Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days after the date of mailing for the reasons set forth in Subsections 1.c.(1) through 1.c.(5); and

(ii) Ninety (90) days from the date of mailing for the reasons set forth in Subsections 1.c.(6) through 1.c.(8).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(8) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If the Policy is canceled by us, the earned premium shall be computer pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least ninety (90) days prior to the expiration of this Policy.

If the Company fails to provide timely written notice required by the paragraph above, the Policy may not be extended to meet nonrenewal requirements. If the Company fails to provide the "Named Certificate Holder" with the required nonrenewal notice as described in the paragraph above, this will entitled the "Named Certificate Holder" to renew the Policy for a "Certificate Period" of not less than one (1) year.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or any other company within the same insurance group has offered to issue a renewal insurance; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

d. The transfer of a Policy between companies within the same insurance group or changes premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy, but under terms or conditions less favorable than previously provided, the Company must notify the "Named Certificate Holder" by sending a conditional renewal notice. The conditional renewal notice must clearly state or be accompanied by a clear statement that identified terms or conditions that may be less favorable to the "Named Certificate Holder". Any significant reduction of coverage requires a conditional renewal notice. Some examples where conditional renewal notices are appropriate are:

(1) A decrease in the Limits of Liability; or

(2) A new exclusion or deletion of coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days before the anniversary or expiration date of the Policy.

Our failure to provide the "Named Certificate Holder" with the required conditional renewal notice will entitle the "Named Certificate Holder" to renew the Policy for a "Certificate Period" of not less than one (1) year.

b. If the Company elects to renew this Policy and the renewal is subject to an increase in premium of ten percent (10%) or more, the Company must notify the "Named Certificate Holder" by sending a renewal premium billing notice. This renewal premium billing notice must state the actual renewal premium. Any premium billing notice with the statement that the premium will increase ten percent (10%) or more is improper and fails to provide adequate notice as required by law.

We shall mail by certified mail written notice of actual renewal premium change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days before the anniversary or expiration date of the Policy.

4. Notice Compliance Requirements

Compliance with the minimum notice standards is determined by counting the number of calendar days beginning with the first day after the date of mailing of transaction up to, but not including, the date the transaction is effective. The date of mailing is evidenced by:

(a) The postmark date on the envelope,

(b) A copy of the completed receipt that it was sent registered mail, certified mail, or

(c) A certificate of mailing from the U. S. Post Office.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Rasool ____ 01/03/2008 ____

Authorized Representative Date

EXHIBIT " 2 "
PAGE NO. 95

Endorsement

# Delaware Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation or nondisclosure to the Company of a material fact at the time of acceptance of risk;

(3) Increased hazard or material change in the risk assumed which could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(4) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

(5) Fraudulent acts against the Company by the "Insured" or its representatives that materially affect the nature of the risk insured;

(6) Lack of cooperation from the "Insured" on loss control matters affecting insurability of the risk;

(7) Bona fide loss of or substantial changes in applicable reinsurance. The Company shall give sixty (60) days notice to the Insurance Commissioner and the "Named Certificate Holder", and shall supply such information at that time as the Insurance Commissioner shall require;

(8) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract;

(9) Bona fide loss of or reduction in available insurance capacity. The Company shall give sixty (60) days notice to the Insurance Commissioner and the "Named Certificate Holder", and shall supply such information at that time as the Insurance Commissioner shall require; or

(10) Any other reasons approved by the Commissioner.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(10) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth Subsection 1.c.(1), written notice set forth in Subsection 1.c.(1) must state the amount of premium, when it is due and the consequences of nonpayment by due date; and

(ii) At least sixty (60) days but no more than one hundred and twenty (120) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(10).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(10) shall state in detail the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. This written notice of cancellation shall state the effective date of cancellation. The "Named Certificate Holder" agrees in writing to hold the Company harmless from liability for any communication giving notice of or specifying a reason for cancellation, or for any statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation.

d. All notices of cancellation, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the cancellation with the Delaware Insurance Department. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

g. If the Company fails to send written notice of cancellation as required, the Policy shall continue in force until sixty (60) days but no more than ninety (90) days after a notice of cancellation is received by the "Named Certificate Holder".

h. The Company shall not be required to provide notice of cancellation if the "Named Certificate Holder" has replaced coverage elsewhere or has otherwise specifically requested cancellation. The Company must maintain in its file properly documented proof that cancellation was made at the request of the "Named Certificate Holder".

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) but no more than one hundred and twenty (120) days prior to the expiration of this Policy.

b. The Company may nonrenew the Policy for the reasons set forth in Cancellation Subsections 1.c.(1) through 1.c.(10) above.

c. If the Company fails to provide written notice of nonrenewal as required in Subsection 2.a. above, the Policy shall continue in force until sixty (60) days but no more than ninety (90) days after a notice of nonrenewal is received by the "Named Certificate Holder". Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. All notices of nonrenewal, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the nonrenewal with the Delaware Insurance Department. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

f. The transfer of a Policy between companies within the same insurance group or changes in premium, Deductible, Limits of Liability or coverage are not refusals to renew.

g. The Company shall not be required to provide notice of nonrenewal if the "Named Certificate Holder" has replaced coverage elsewhere or has otherwise specifically requested cancellation. The Company must maintain in its file properly documented proof that cancellation was made at the request of the "Named Certificate Holder".

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

The Company cannot effect or attempt to effect a mid-term premium increase and/or a reduction in the amount and/or type of coverage provided under the Policy unless mutually agreed to by the Company and the "Named Certificate Holder" after good faith negotiations or unless prior written approval therefore has been obtained from the Commissioner.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool  01/03/2008
Authorized Representative  Date



EXHIBIT " 2 "
PAGE NO. 98

Endorsement

# Florida Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC -- 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect ninety (90) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed for reason of nonpayment of premium and twenty (20) days from the date the notice is mailed for other reasons. Such notice shall state the reason for cancellation and shall be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misstatement;

(3) Failure to comply with the underwriting requirements established by the Company within ninety (90) days of the effective date of coverage;

(4) Substantial change in risk; or

(5) The cancellation is for all "Insureds" under such policies for a given class of "Insureds".

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsection 1.c.(1); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(5).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If the Company cancels the Policy, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal stating the reason for nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If the Company fails to provide any written notice required by Subsection 2.a.. above, the coverage provided to the "Named Certificate Holder" shall remain in effect with no change in its terms and conditions, for a period of forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the "Named Certificate Holder", whichever occurs first. The premium for this coverage shall remain the same during any such extension period except that, in the event of failure to provide notice of nonrenewal, if the rate filing then in effect would have resulted in a premium reduction, the premium during such extension of coverage shall be calculated based upon the later rate filing.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Deductible, Limits of Liability or coverage are not refusal to renew.

3. Conditional Renewal (Advance Notice Of Renewal Premium)

a. If the Company elects to renew this Policy then the Company shall mail written notice of renewal premium, by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. This requirement applies only if the "Named Certificate Holder" has furnished all of the necessary information so as to enable the Company to develop the renewal premium prior to the expiration date of this Policy.

c. If the Company fail to provide any written notice required in Subsection 3.a.. above, the coverage provided to "Named Certificate Holder" shall remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the "Named Certificate Holder", whichever occurs first. The premium for this coverage shall remain the same during any such extension period except that, in the event of failure to provide notice of nonrenewal, if the rate filing then in effect would have resulted in a premium reduction, the premium during such extension of coverage shall be calculated based upon the later rate filing.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy R. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# Georgia Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by delivering or mailing by at least first class mail, written notice to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is delivered or mailed.

   c. If this Policy has been in effect sixty (60) days or more, the Company may cancel this Policy by delivering, in person or mailing by at least first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and delivering or mailing to the producer of record, if any, written notice of cancellation stating the reasons for cancellation, not less than ten (10) days prior to the effective date of cancellation if cancellation is for nonpayment of premium, or at least forty-five (45) days prior to the effective date of cancellation if cancellation is for any other reason.

   d. If notice is mailed, proof of mailing will be sufficient proof of notice.

   e. If the Company fails to provide the required notice, "Named Certificate Holder" shall be entitled to purchase, at pro rata the existing premium, a thirty (30) day extension of the existing Policy at the same terms and conditions as the existing Policy.

   f. If this Policy is cancelled, the Company shall send the "Named Certificate Holder" any premium refund due. If the Company cancels, the refund will be pro rata. If the "Named Certificate Holder" cancels, the refund will be ninety percent (90%) of pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company may do so by delivering, in person or mailing by at least first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and delivering or mailing to the producer of record, if any, written notice of nonrenewal, stating the reason for nonrenewal, at least forty-five (45) days prior to the expiration date of the Policy.

   b. If the Company fails to provide the required notice, the "Named Certificate Holder", shall be entitled to purchase, at pro rata the existing premium, a thirty (30) day extension of the existing Policy at the same terms and conditions as the existing Policy.

If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The transfer of a "Named Certificate Holder" between admitted companies within the same insurance group is not considered a refusal to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium by fifteen percent (15%) or more; or

(2) Change in any Policy provision which limits or restricts coverage;

the Company shall deliver, in person or mail by at least first-class mail, written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) or 3.a.(2) above, and the Company fails to provide notice forty-five (45) days prior to the expiration date of this Policy, then the "Named Certificate Holder", shall be entitled to purchase, at pro rata the existing premium, a thirty (30) day extension of the existing Policy at the same terms and conditions as the existing Policy.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasal (signature) 01/03/2008
Authorized Representative Date

Endorsement

# Hawaii Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. The Policy may be canceled by the Company only for the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation;

      (3) Risk hazard increases substantially and the Company could not have reasonably foreseen the change when entering into the Policy;

      (4) A substantial breach of contractual duties, conditions or warranties;

      (5) A violation of any local fire, health, or safety statute or ordinance;

      (6) A conviction of the "Named Certificate Holder" for a crime having as one of its necessary elements, an act increasing any hazard that is insured against;

      (7) The insurance commissioner determines that the continuation of the Policy places the Company in violation of Chapter 431, Hawaii Revised Statutes; or

      (8) For any good faith reason with the approval of the insurance commissioner.

      If the Company cancels subject to Subsections 1.b.(1) through 1.b.(8) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Written notice of cancellation shall take effect thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.b.(1) through 1.b.(8).

      Any written notice of cancellation subject to Subsections 1.b.(1) through 1.b.(8) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

   d. The Company shall refund the unearned premium computed at customary short rate if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal, at least forty-five (45) days prior to the expiration of this Policy.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool 01/03/2008

Authorized Representative Date

Endorsement

# Idaho Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC -- 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation made by or with the knowledge of the Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy;

      (3) Activities or omissions on the part of the "Named Certificate Holder" which increase any hazard insured against, including a failure to comply with loss control recommendations;

      (4) Change in the risk which materially increases the risk of loss after insurance coverage has been issued or renewed including, but not limited to, an increase in exposure to regulation, legislation or court decision;

      (5) Loss or decrease in the Company's reinsurance covering all or part of the risk or exposure by the Policy;

      (6) Determination by the Director that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of this state or any other state; or

      (7) Violation or breach by the "Insured" of any Policy terms or conditions other than nonpayment of premium.

      If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.



EXHIBIT " 2 "
PAGE NO. 105

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7)

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If the notice of nonrenewal is mailed less than forty-five (45) days before expiration, the coverage shall remain in effect until forty-five (45) days after the notice is mailed. Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsection 2.a. above and the Company subsequently extends the Policy for ninety (90) days or less at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible, or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium of greater than ten percent (10%);

(2) Reduction in Limits of Liability;

(3) Changes in Deductible; or

(4) Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days before the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice thirty (30) days before the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 01/03/2008

Authorized Representative Date

Endorsement

# Illinois Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC -- 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

I. Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less and is not a renewal, this Policy may be canceled by the Company for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company and mailing to the producer of record, if any. Such cancellation shall be effective not less than ten (10) days after the date the notice is mailed if cancelled for nonpayment of premium or not less than thirty (30) days if cancelled for any other reason.

c. If this Policy has been in effect for more than sixty (60) days or if this Policy is a renewal, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) The Policy was obtained through a material misrepresentation;

(3) Any "Insured" violated any of the terms and conditions of the Policy;

(4) The risk originally accepted has measurably increased;

(5) Certification to the Director of the loss of reinsurance by the Company which provided coverage to the "Insured" for all or a substantial part of the underlying risk insured; or

(6) A determination by the Director that the continuation of the Policy could place the Company in violation of the insurance laws of the State of Illinois.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(6) above, the Company shall mail by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company, and mail to the producer of record, if any, written notice of such cancellation. Such cancellation shall be effective not less than ten (10) days after the date the notice is mailed if cancelled for nonpayment of premium or not less than sixty (60) days if cancelled for any other reason. Notice shall state the reason for such cancellation.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company, and mail to the producer of record, if any, written notice of nonrenewal stating the specific reason for such nonrenewal, at least sixty (60) days prior to the expiration date of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. In the event notice of nonrenewal is provided at least thirty-one (31) days, but less than sixty (60) days prior to expiration of the Policy, the Policy shall be extended for a period of sixty (60) days or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be nonrenewed.

d. In the event notice of nonrenewal is provided less than thirty-one (31) days prior to the expiration of the Policy, the Policy shall be extended for a period of one (1) year or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be nonrenewed unless the Company has manifested our willingness to renew at a premium which represents an increase not exceeding thirty percent (30%). The premium for coverage shall be prorated in accordance with the amount of the expiring year's premium, and the Company shall be entitled to this premium for the extension of coverage and such extension may be contingent upon the payment of such premium.

e. The Company is not required to provide written notice of nonrenewal if the Company or a company within the same insurance group has offered to issue a renewal Policy; however, if the Company assigns or transfers this Policy to another company within the same insurance group, then the Company shall provide notice of such assignment or transfer by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company, to the producer of record, if any, at least sixty (60) days prior to the renewal or anniversary date of the Policy.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) An increase in premium by thirty percent (30%) or more;

(2) Changes in the Deductible; or

(3) Changes in coverage that materially alter the Policy.

The Company shall mail by certified mail written notice of the increase or change(s) to the "Named Certificate Holder" at the last mailing address known by the Company, and mail to the producer of record, if any, at least sixty (60) days prior to the renewal or anniversary date of the Policy.

b. In the event notice of conditional renewal is provided at least thirty-one (31) days, but less than sixty (60) days prior to expiration of the Policy, the Policy shall be extended for a period of sixty (60) days or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be renewed subject to any of the conditions in Subsections 3.a.(1) through 3.a.(3) above.

c. In the event notice of conditional renewal is provided less than thirty-one (31) days prior to the expiration of the Policy, the Policy shall be extended for a period of one (1) year or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be renewed subject to any of the conditions in Subsections 3.a.(1) through 3.a.(3) above unless the Company has manifested its willingness to renew at a premium which represents an increase not exceeding thirty percent (30%). The premium for coverage shall be prorated in accordance with the amount of the expiring year's premium, and the Company shall be entitled to this premium for the extension of coverage and such extension may be contingent upon the payment of such premium.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. Section VII – CONDITIONS, Subsection A. is deleted its entirety and replaced with the following:

A. OTHER INSURANCE

This insurance will share proportionately with other similar coverages the "Insured" may have.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Russell (signature) — Authorized Representative

01/03/2008 — Date

U-LAEO-122-A IL (04/06)
Page 2 of 2

Endorsement

# Indiana Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for ninety (90) days or less, the Company may cancel this Policy by mailing written notice stating the reason for such cancellation, by certified mail or first-class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any, not less than:

(1) Ten (10) days after mailing the cancellation shall be effective if canceled for nonpayment of premium;

(2) Twenty (20) days after the mailing the cancellation shall be effective if canceled due to the "Insured" perpetrating a fraud or material misrepresentation upon the Company; or

(3) Thirty (30) days after the mailing the cancellation shall be effective for any other reason.

c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

(4) The "Insured" under the Policy has failed to pay a premium;

(5) There is a substantial change in the scale of risk covered by the Policy;

(6) The "Insured" has perpetrated a fraud or material misrepresentation upon the Company;

(7) The "Insured" has failed to comply with reasonable safety or loss control recommendations; or

(8) Reinsurance of the risk associated with the Policy has been canceled.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail or first-class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1);

(ii) Twenty (20) days from the date of mailing for the reason set forth in Subsection 1.c.(3); or

(iii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(2), 1.c.(4) or 1.c.(5).

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or first-class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If the "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so, then the Company shall not be required to provide written notice of nonrenewal.

d. Changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to a transfer of the Policy between companies within the same insurance group, the Company shall mail by certified mail or first-class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of such transfer identifying the new company, at least twenty (20) days prior to the expiration date of the Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasool — 01/03/2008

Authorized Representative — Date

Endorsement

# Kansas Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect ninety (90) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Policy was issued because of material misrepresentation;

(3) Violation of material terms and conditions;

(4) Unfavorable underwriting factors not present at Policy inception;

(5) A determination by Commissioner that coverage would create hazardous financial condition to the Company, or be in violation of law; or

(6) A determination by Commissioner that there is inadequate reinsurance as determined by the Commissioner.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(6) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(6).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(6) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The Policy may not be extended to meet notice requirement in Subsection 2.a. above.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to a change in terms or conditions of the Policy, the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy. When there is no change other than a rate change, it is not considered a change in terms or conditions and therefore it is not necessary to send notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasaal ____________ 01/03/2008 ____________
Authorized Representative Date

Endorsement

# Kentucky Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall be no fewer than fourteen (14) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Discovery of fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy;

      (3) Discovery of willful or reckless acts or omissions on the part of the "Named Certificate Holder" which increase any hazard insured against;

      (4) A change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

      (5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

      (6) The Company is unable to reinsure the risk covered by the Policy; or

      (7) A determination by the Commissioner that the continuation of the Policy would place the Company in violation of the Kentucky insurance code or regulations of the Commissioner.

   If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Fourteen (14) days from the date of mailing for the reason set forth in Subsection 1.c.(1).; and

(ii) Seventy-five (75) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least seventy-five (75) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Policy may not be extended to meet notice requirement in Subsection 2.a. above. If proper notice is not given, coverage will be deemed to be renewed for the ensuing "Policy Period" upon payment of the premium under the same terms and conditions until the "Named Certificate Holder" has accepted replacement coverage with another company, or has agreed to nonrenew.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to an increase in premium of twenty five percent (25%) or more the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least seventy-five (75) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rassal
Authorized Representative

01/03/2008
Date

U-LAEO-144-A KY (06/06)


EXHIBIT "2"
PAGE NO. 115

Endorsement

# Louisiana Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for sixty (60) days or less, and the Policy is not a renewal, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than sixty (60) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due. For nonpayment of premium, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed. Notice of cancellation shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy ;

(3) Activities or omissions on the part of the "Named Certificate Holder" which change or increase any hazard insured against, including a failure to comply with loss control recommendations;

(4) Change in the risk which materially increases the risk of loss after insurance coverage has been issued or renewed, including an increase in exposure to regulation, legislation or court decision;

(5) Determination by the commissioner of insurance that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of the state of Louisiana or any other state;

(6) Violation or breach by the "Insured" of any Policy terms or conditions; or

(7) Such other reasons that are approved by the commissioner of insurance.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1).; and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. If the effective date of cancellation falls on a Saturday, Sunday or legal holiday, the cancellation date must be extended until the next business day.

The Company shall provide the "Named Certificate Holder" with written statement setting forth the reason for cancellation where the "Named Certificate Holder" requests such a statement in writing and the "Named Certificate Holder" agrees in writing to hold the Company harmless from liability for any communication giving notice of or specifying the reasons for a cancellation or for any statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation.

A cancellation notice is not required of the Company, nor a statement of reasons, when cancellation for nonpayment of premium is effected by a premium finance agency or other entity pursuant to a power of attorney or other agreement executed by or on behalf of the "Insured".

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. Such notice to the "Named Certificate Holder"shall include loss run information for the period the Policy has been in force within, but not to exceed, the last three (3) years of coverage. The time period between the mailing date of the nonrenewal notice and the effective date of nonrenewal commences on the date of mailing.

b. If the notice of nonrenewal is mailed less than sixty (60) days before expiration, the coverage shall remain in effect under the same terms and conditions until sixty (60) days after the notice is mailed. Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsections 2.a. and 2.b. above and the Company subsequently extends the Policy for ninety (90) days or less at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Rate increase;

(2) Changes in the Deductible;

(3) Reduction in Limits of Liability; or

(4) Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the expiration date of the Policy.

b. If renewal is subject to any condition described in Paragraphs 1.a. through 1.c. above, and the Company fails to provide notice thirty (30) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect at the same rate, terms and conditions until the earlier of the following:

(a) Thirty (30) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2). If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. The conditional renewal notice requirement shall not apply to the following:

(1) Changes in a rate or plan filed with the insurance rating commission and applicable to an entire class of business.

(2) Changes based upon the altered nature or extent of the risk insured.

(3) Changes in Policy forms filed and approved with the commissioner and applicable to an entire class of business.

(4) Changes requested by the "Insured".

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasaal ____________ 01/03/2008 ____________
Authorized Representative Date

EXHIBIT " 2 "
PAGE NO. 118

Endorsement

# Maryland Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the Company cancels this Policy, the Company shall mail by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of cancellation stating the reasons for cancellation. The Company shall mail this notice no fewer than ten (10) days from the date notice is mailed if cancellation is for nonpayment of premium or no fewer than forty-five (45) days from the date notice is mailed if cancellation is for any other reason. The certified mailing of notice, as aforementioned, shall be sufficient notice and the effective date of cancellation stated in the notice shall become the expiration date of the Policy.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

   If canceled by the Company, the refund of premium shall be computed pro-rata. The cancellation will be effective even if the Company has not made or offered a refund.

   However, if this Policy is financed by a premium finance company and the Company or the premium finance company, or the "Named Certificate Holder" cancels the Policy, the refund will be pro rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

   Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

   This forty-five (45) day notice shall not be required and this Policy will terminate:

   (1) On the expiration date if:

      (a) The "Named Certificate Holder" fails to perform any obligation in connection with the payment of premium for this Policy or the renewal of this Policy;



EXHIBIT " 2 "
PAGE NO. 119

(b) The Company has indicated a willingness to renew this Policy to the "Named Certificate Holder" or the representatives thereof; or

(c) The "Named Certificate Holder" has notified the Company or the Company's agent that the "Named Certificate Holder" does not want to renew this Policy;

(2) On the effective date of any other insurance Policy issued as a replacement for any insurance afforded by this Policy, with respect to insurance to which both policies apply.

b. The Policy may not be extended to meet nonrenewal notice requirements in Subsection 2.a. above.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Increase in premium by twenty percent (20%) or more;

b. Reduction in Limits of Liability;

c. Increase in Deductible; or

d. Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

EXHIBIT "2"
PAGE NO. 120

Endorsement

# Maine Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall take effect no fewer than ten (10) days after receipt of notice. Receipt is deemed to occur three (3) days after the certificate of mailing date. This requires a minimum notice period of thirteen (13) days from the date of mailing. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy or in presenting a "Claim" under the Policy;

      (3) A substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to rules, legislation or court decision;

      (4) Failure to comply with reasonable loss control recommendations;

      (5) A substantial breach of contractual duties, conditions or warranties; or

      (6) A determination by the Superintendent that the continuation of a class or block of business to which the Policy belongs will jeopardize the Company's solvency or will place the Company in violation of the insurance law of Maine or any other state.

      If the Company cancels subject to Subsections 1.c.(1) through 1.c.(6) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 2. of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Thirteen (13) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(6)

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(6) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty-three (33) days prior to the expiration of this Policy (thirty (30) days written notice required for nonrenewal plus three (3) days for mailing).

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsection 2.a. above, and the Company subsequently extends the Policy for ninety (90) days at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. The Company shall mail by certified mail written notice of any change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty-three (33) days prior to the anniversary or expiration date of the Policy.

b. If "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(1) The rates applicable to the terminated Policy; or

(2) The rates presently in effect.

c. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rassel
Authorized Representative

01/03/2008
Date

U-LAEO-140-A ME (06/06)
Page 2 of 2

EXHIBIT " 2 "
PAGE NO. 122

Endorsement

# Michigan Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata. The minimum earned premium on any Policy canceled shall not be less than the pro-rata premium or twenty-five dollars ($25.00), whichever is greater.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# Minnesota Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than ninety (90) days, and is not a renewal, this Policy may be canceled by the Company for any reason, including nonpayment of premium, by written notice mailed by certified mail or first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailed to the producer of record, if any. Such cancellation notice shall state the reason for cancellation and when, not less than ten (10) days thereafter, such cancellation shall be effective.

c. If this Policy has been in effect ninety (90) days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Misrepresentation or fraud made by or with the knowledge of the "Insured" in obtaining the Policy or in pursuing a "Claim" under the Policy;

(3) Actions by the "Insured" that have substantially increased or substantially changed the risk insured;

(4) Refusal of the "Insured" to eliminate known conditions that increase the potential for "Damages" after notification by the Company that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance by the Company which provided coverage to the Company for a significant amount of the underlying risk insured. A notice of cancellation under this clause shall advise the "Named Certificate Holder" that he she or it has ten (10) days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within thirty (30) business days after receipt of the appeal;

(7) A determination by the commissioner that the continuation of the Policy could place the Company in violation of the insurance laws of this state; or

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing the insurance. This provision for cancellation for failure to pay dues does not apply to persons who are retired at sixty-two (62) years of age or older or who are disabled according to social security standards.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail written notice of cancellation by certified mail or first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1).; and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(8).

d. If notice is mailed, United States Postal Service proof of mailing will be sufficient proof the proper notice has been given.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If the Company does not provide proper notice as required in Subsection 2.a. above, the Policy shall continue in force until sixty (60) days after a notice of nonrenewal is received by the "Named Certificate Holder".

c. If notice is mailed, United States Postal Service proof of mailing will be sufficient proof the proper notice has been given.

d. If the "Named Certificate Holder" has obtained replacement coverage or has requested or agreed to nonrenewal, then the Company shall not be required to provide written notice of nonrenewal.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to the following:

(1) Lower Limits of Liability;

(2) Higher Deductible; or

(3) Higher rates, and/or higher rating plan

the Company shall mail by certified mail or first class mail, or deliver, written notice of the increase to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the expiration date of the Policy.

b. If renewal is subject to any of the conditions described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice sixty (60) days before the expiration date of this Policy, the "Named Certificate Holder" may elect to cancel the renewal Policy within the sixty (60) day period after receipt of the notice. Earned premium for the period of coverage, if any, shall be calculated pro rata upon the expiring Policy's rate.

c. If notice is mailed, United States Postal Service proof of mailing will be sufficient proof the proper notice has been given.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# Missouri Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancels this Policy by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall be mailed no fewer than sixty (60) days prior to the effective date of the cancellation, except where the cancellation is based on one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation affecting the Policy or in the presentation of a "Claim" thereunder or a violation of any of the terms or conditions of a Policy;

(3) Changes in conditions after the effective date of the Policy which have materially increased the hazards originally insured;

(4) The Company's insolvency; or

(5) The Company involuntarily loses reinsurance for the Policy;

In the event the Company cancel subject to Subsections 1.b.(1) through 1.b.(5) above, such cancellation shall be mailed by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, no fewer than ten (10) days prior to the effective date.

c. If the Company cancels this Policy, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

d. Any notice of cancellation will state the specific reason for such cancellation.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. An assignment or transfer of this Policy among affiliated companies within an insurance holding company system is not considered a cancellation in the state of Missouri.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the effective date of the nonrenewal.

   b. Any notice of nonrenewal will state the specific reason for such nonrenewal.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

   d. An assignment or transfer of this Policy among affiliated companies within an insurance holding company system is not considered a nonrenewal in the state of Missouri.

3. Conditional Renewal

   a. If the Company elects to renew this Policy and the renewal is subject to an increase in premium by twenty-five percent (25%) or more, then the Company shall mail by certified mail, a "premium alteration requiring notification" to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the expiration date of the Policy.

   b. If the Company fails to meet this notice requirement, the "Named Certificate Holder" shall have the option of continuing the Policy for the remainder of the notice period plus an additional thirty (30) days at the premium rate of the existing Policy. This provision does not apply if the Company has offered to renew the Policy without such an increase in premium or if the "Named Certificate Holder" fails to pay a premium due or any advance premium required by the Company for nonrenewal.

   c. For purposes of this section, "premium alteration requiring notification" means an annual increase in premium of twenty-five percent (25%) or more, exclusive of premium increases due to a change in the operations of the "named insured" which increases either the hazard insured against or the individual loss characteristics, or due to a change in the magnitude of the exposure basis, including, without limitation, increases in payroll or sales.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Russell 01/03/2008
Authorized Representative Date

U-LAEO-141-A MO (06/06)
Page 2 of 2

Endorsement

# Mississippi Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. The Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed unless this Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

   d. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration of this Policy.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

   c. The Policy may not be extended to meet nonrenewal notice requirements in Subsection 2.a. above.

   d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

   If the Company elects to renew this Policy and the renewal is subject to a reduction of coverage, the Company shall mail by certified mail written notice of the change(s) to the at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

4. Mailing Time

When calculating the time period for sending a notice the first day is not included in the count and the last day is included unless the last day is a Saturday, Sunday or legal holiday, then the next business day is the last day. All notices must allow five (5) to ten (10) days mailing time.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasool — 01/03/2008

Authorized Representative — Date

Endorsement

# Montana Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy is in effect sixty (60) days or more, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) For reasons specifically allowed by statute; or

      (3) On grounds stated in the Policy which pertain to the following:

         (a) Material misrepresentation;

         (b) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk when the contract was written;

         (c) Substantial breaches of contractual duties, conditions or warranties;

         (d) Determination by the commissioner that continuation of the Policy would place the Company in violation of this code;

         (e) The Company's financial impairment; or

         (f) Any other reason approved by the commissioner.

      If the Company cancels subject to Subsections 1.c.(1) through 1.c.(3) above, shall mail by certified mail written notice of cancellation to the "Named Certificate Holder" at the address shown in Item 2. of the "Certificate of Insurance", and mail to the producer of record, if any. Written notice of cancellation shall take effect ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) through 1.c.(3).

      Any written notice of cancellation subject Subsections 1.c.(1) through 1.c.(3) shall state the reason for such cancellation and will be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If a Policy has been issued for a "Policy Period" longer than one (1) year and if either the premium is prepaid or an agreed term is guaranteed for additional premium consideration, the Company may not cancel the Policy except for the following reasons:

(1) Nonpayment of premium;

(2) For reasons specifically allowed by statute;

(3) On grounds stated in the Policy which pertain to those grounds listed in Subsection 1.c.(3) above.

If the Company cancels subject to Subsections 1.d.(1) through 1.d.(3) above, the Company shall mail by certified mail written notice of cancellation to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsection 1.d.(1); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.d.(2) through 1.d.(3).

Any written notice of cancellation subject to Subsections 1.d.(1) through 1.d.(3) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy. Any written notice of nonrenewal shall state the reason for such nonrenewal.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" has requested or agreed to nonrenewal;

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so; or

(3) The Policy is expressly designated as nonrenewable.

d. The Policy may not be extended to meet nonrenewal notice requirements Subsection 1.a. above.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to the following reasons:

(1) Increase in premium;

(2) Less favorable terms;

(3) A higher rate;

(4) Higher rating plan; or

(5) New terms.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the expiration date of the Policy.

b.. The state law of Montana prohibits midterm increases in premium. If the "Named Certificate Holder" prepays the premium for a specific period, the Company cannot increase the rate charged or decrease the coverage provided for the prepaid "Policy Period" unless:

(1) There is a change in risk during the period because of the addition or removal of persons or property that was included in the rate at last renewal;

(2) The risk was misrepresented by the "Insured"; or

(3) The "Named Certificate Holder" requests a change in the Policy that increases the risk as a result of such request.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasool  
Authorized Representative

01/03/2008  
Date

Endorsement

# North Carolina Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than fifteen (15) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed..

c. If this Policy is in effect sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium in accordance with the Policy terms;

(2) An act or omission by the "Named Certificate Holder" or his representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining the Policy, continuing the Policy, or presenting a "Claim" under the Policy;

(3) Increase hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(4) Substantial breach of contractual duties, conditions, or warranties that materially affects the insurability of the risk;

(5) A fraudulent act against the Company by the "Insured" or his or her representative that materially affects the insurability of the risk;

(6) Willful failure by the "Named Certificate Holder" or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by the Company;

(7) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S.58-41-30;

(8) Conviction of the "Insured" of a crime arising out of acts that materially affect the insurability of the risk; or

(9) A determination by the commissioner that the continuation of the Policy would place the Company in violation of the laws of the state of North Carolina.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(9) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect fifteen (15) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) through 1.c.(9) above.

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(9) above shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. The Company may refuse to renew a Policy that has been written for a "Policy Period" of one (1) year or less at the Policy's expiration date by mailing written notice of nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" at least forty-five (45) days prior to the expiration date of the Policy. The Company may refuse to renew a Policy that has been written for a "Policy Period" of more than one (1) year at the Policy anniversary date by mailing written notice of nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" at least forty-five (45) days prior to the anniversary date of the Policy.

b. The Company must file a plan with the commissioner at least fifteen (15) days before the issuance of a nonrenewal because of loss or reduction of reinsurance.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" has insurance elsewhere;

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so; or

(3) The "Named Certificate Holder" has requested or agreed to nonrenewal.

e. The Policy may not be extended to meet nonrenewal notice requirements in Subsections 2.a. above.

f. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to the following:

(1) Reduction in coverage;

(2) Increase in Deductible;

(3) Impose any kind of surcharge; or

(4) Increase premium rate.

b. If the Policy being conditionally renewed was written for a "Policy Period" of one (1) year or less, the renewal terms and statement of premium due must be mailed at least forty-five (45) days prior to the expiration date of the Policy. If the Policy being conditionally renewed was written for a "Policy Period" of more than one (1) year, the renewal terms and statement of premium due must be mailed at least forty-five (45) days prior to the anniversary date of the Policy. The Company shall mail by certified mail written notice of the changes to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailed to the producer of record, if any.

c. If the Company fails to furnish the conditional renewal terms and statement of premium due in the manner required in Subsection 3.b. above, the "Named Certificate Holder" may cancel the renewal Policy within the thirty (30) day period following receipt of the conditional renewal terms and statement of premium due. For refund purposes, earned premium for any period of coverage shall be calculated pro-rata upon the premium applicable to the Policy being renewed instead of the renewal Policy.

d. If the Company fails to comply with the forty-five (45) day written notice requirement in Subsection 3.b. above, the "Named Certificate Holder" is entitled to the option of coverage under the Policy being renewed and at the same cost of that Policy until forty-five (45) days have elapsed after the Company have provided the "Named Certificate Holder" with the notice.

e. If a Policy has been issued for a "Policy Period" longer than one (1) year, and for additional consideration a premium has been guaranteed for the entire "Policy Period", it is unlawful for the Company to increase that premium or require the Deductible, or other Policy or coverage provisions less favorable to the "Named Certificate Holder" during the term of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool 01/03/2008
Authorized Representative Date

Endorsement

# North Dakota Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than ninety (90) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect ninety (90) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Misrepresentation or fraud made by or with the knowledge of the "Insured" in obtaining the Policy in pursuing a "Claim" under the Policy;

(3) Actions by the "Insured" that have substantially increased or substantially changed the risk insured;

(4) Refusal of the "Insured" to eliminate known conditions that increase the potential for loss after notification by the Company that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance by the Company which provided coverage to the Company for a significant amount of the underlying risk insured. Any notice of cancellation pursuant this subsection must advise the "Named Certificate Holder" that the "Named Certificate Holder" has ten (10) days from the date of receipt of notice to appeal the cancellation to the insurance commissioner and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within five (5) days after receipt of the appeal;

(7) A determination by the insurance commissioner that the continuation of the Policy could place the Company in violation of the insurance laws of the state of North Dakota;

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance; except cancellation for failure to pay dues does not apply to persons who are retired at sixty-two (62) years of age or older or to any person who is disabled according to social security standards; or

(9) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard is insured against.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(9) above, the Company shall mail by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(9).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(9) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If this Policy has a "Policy Period" longer than one (1) year, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. The Company must provide such notice at least thirty (30) days prior to the anniversary date of the Policy. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. A concealment, either intentional or unintentional, is grounds for the injured party to rescind the Policy. An intentional and fraudulent omission to communicate information that proves or tends to prove the falsity of a warranty entitles the Company to rescind the Policy.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

g. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) If the "Named Certificate Holder" is transferred to a company within the same insurance group; or

(2) If the "Named Certificate Holder" has insurance elsewhere, has accepted replacement coverage, or has requested or agreed to nonrenewal.

d. The Policy may not be extended to meet nonrenewal notice requirements in Subsection 2.a. above. Failure to comply with notice requirements in Subsection 2.a. above results in an ineffective nonrenewal.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to the following:

a. Less favorable terms as to the dollar amount of coverage or Deductible; or

b. Renewal rates are in excess of fifteen percent (15%) of the expiring rate, unless the change in rate relates to guide "A" rates or excess rates, also known as "consent to rate".

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least ten (10) days prior to the expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasool 01/03/2008

Authorized Representative Date

Endorsement

# Nebraska Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) The Policy was obtained through a material misrepresentation;

(3) Any "Insured" has submitted a fraudulent "Claim";

(4) Any "Insured" has violated any of the terms and conditions of the Policy;

(5) The risk originally accepted has substantially increased;

(6) Certification to the Director of Insurance of loss of reinsurance by the Company which provided coverage to the Company for all or a substantial part of the underlying risk insured; or

(7) The determination by the Director of Insurance that the continuation of the Policy could place the Company in violation of the insurance laws of this state.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

f. The Company's substitution of insurance upon renewal which results in substantially equivalent coverage shall not be considered a cancellation of a Policy.

g. The transfer of a Policy between companies within the same insurance group shall be considered a cancellation of a Policy only if the transfer results in Policy coverage or rates substantially less favorable to the "Named Certificate Holder".

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 2 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. Any written notice of nonrenewal shall state the reason for such nonrenewal.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Policies may not be extended to meet notice requirements.

d. The Company's substitution of insurance upon renewal which results in substantially equivalent coverage shall not be considered a refusal to renew a Policy.

e. Changes in premium, Limits of Liability or coverage are considered refusals to renew.

f. The transfer of a Policy between companies within the same insurance group shall be considered a refusal to renew a Policy only if the transfer results in Policy coverage or rates substantially less favorable to the "Named Certificate Holder".

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to the following reasons:

a. Substantial changes in the terms and conditions of the Policy; or

b. Substantial increase in the renewal premium.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rasool (signature) — Authorized Representative    01/03/2008 — Date

Endorsement

# New Hampshire Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If the Policy has been in effect for sixty (60) days or more, the Policy may be canceled by the Company for the following reasons:

(1) Nonpayment of premium;

(2) Substantial increase in hazard; provided that cancellation for this reason shall be effective only after prior approval of the commissioner ; or

(3) Fraud or material misrepresentation affecting the Policy or in the presentation of a "Claim" thereunder, or violation of any of the terms or conditions of the Policy.

If the Company cancels subject to Subsections 1.c.(1) through 1.c. (3) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(2) and

(ii) Sixty (60) days from the date of mailing for the reason set forth in Subsction 1.c.(3).

d. Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c. (3) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. The Company shall not be held liable in any "claim" or suit for "damages" arising solely from the Company's compliance with the requirement that the reason for cancellation be specified.

e. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. The Policy may be nonrenew by the Company for the following reasons:

(1) An increase in premium greater than twenty-five percent (25%);

(2) Increases in Deductible;

(3) Decrease in coverage; or

(4) Reduction in the Limits of Liability.

If the Company elects not to renew this Policy subject to any of the above reasons, the Company shall mail written notice of nonrenewal by certified mail stating the reason for nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date.

If the Company fails to provide timely written notice required by the paragraph above, the Company may not increase the premium more than twenty-five percent (25%) for a one (1) year period following the anniversary or expiration date.

If the Company fails to provide timely written notice required by the paragraph above, this Policy cannot be extended to meet the notice requirement.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The transfer of a Policy between companies with the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew the Policy and the renewal is subject to any of the following:

(1) A renewal premium quote less than current year premium, the same as current year premium, or greater than current year premium by no more than twenty-five percent (25%);

(2) A renewal premium quote with an increase of greater than twenty-five percent (25%);

(3) Decrease in coverage; or

(4) Reduction in the Limits of Liability.

b. The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least:

(1) Thirty (30) days prior to the anniversary or expiration date of the Policy for reason set forth in Paragraph 1.a.; and

(2) Sixty (60) days prior to the anniversary or expiration date of the Policy for reasons set forth in Paragraphs 1.b. through 1.d.

If renewal is subject to reason in Subsection 3.a.(1) above, and the Company fails to provide the written notice thirty (30) days prior to the anniversary or expiration date, then renewal must be provided at expiring rates, on a pro-rata basis, until the "Named Certificate Holder" has had thirty (30) days notice. Also, for reason in Subsection 3.a.(1) above, if the Company has the necessary information to issue a renewal Policy, the Company shall confirm the renewal premium, by written notice mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

If renewal is subject to reason in Subsection 3.a.(2) above, and the Company fails to provide the written notice sixty (60) days prior to anniversary or expiration date of the Policy, the Company may not increase the premium more than twenty-five percent (25%) for a one (1) year period following the anniversary or expiration date.

If renewal is subject to reasons in Subsections 3.a.(3) through 3.a.(4) the Policy anniversary or expiration date cannot be extended or shortened in order to circumvent the advance notice requirements above unless mutually agreed to by the Company and the "Named Certificate Holder".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool ______ 01/03/2008 ______
Authorized Representative Date



EXHIBIT " 2 "
PAGE NO. 143

Endorsement

# New Jersey Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Moral hazard, as defined at N.J.A.C. 11:1-20.2(f) as follows:

(a) The risk, danger or probability that the "Insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an "Insured" that will increase the probability of such a destruction may be considered a moral hazard; and

(b) The substantial risk, danger or probability that the character, circumstances or personal habits of the "Insured" may increase the possibility of loss or liability for which the Company will be held responsible. Any change in the character or circumstances of an individual corporate, partnership or other "Insured" that will increase the probability of such a loss or liability may be considered a moral hazard;

(3) Material misrepresentation or nondisclosure to the Company of a material fact at the time of acceptance of the risk;

(4) Increase hazard or material change in the risk assumed which could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affecting insurability of the risk;

Lack of cooperation from the "Insured" on loss control matters materially affecting insurability of the risk;

(6) Fraudulent acts against the Company by the "Insured" or its representatives that materially affect the nature of the risk insured;

(7) Loss of or reduction in available insurance capacity. For the purposes of this subsection, loss of or reduction in available insurance capacity exists if:

(a) An insurance department or court of competent jurisdiction has declared the Company to be financially impaired or unsound, which shall include such actions as suspension, conservatorship, rehabilitation or liquidation; or

(b) Based upon information set forth in the Company's annual statements, the Company has experienced a significant deterioration in the Company's financial condition during the most recent annual statement period resulting in its designation by the National Association of Insurance Commissioners (NAIC) as being in need of "immediate attention", and the Company's:

(i) Ratio of net premium to surplus to "Named Certificate Holder" has gone above four (4) to one (1) and its surplus to Policyholders has fallen below twenty-five percent (25%) of net loss and loss expense reserves;

(ii) Ratio of net premium to surplus to "Named Certificate Holder" has increased to at least six (6) to one (1); or

(iii) Ratio of net losses and loss reserves to surplus to "Named Certificate Holder" has increased to at least six (6) to one (1).

(8) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal thereof;

(9) Loss of or substantial changes in applicable reinsurance. For the purposes of this subsection, loss of or substantial changes in applicable reinsurance shall be deemed to exist if any of the following have occurred:

(a) Termination by the reinsurer of treaty or facultative reinsurance affecting the individual risk or line, class or subclass of insurance, as applicable, proposed for cancellation and/or nonrenewal;

(b) Substantial reduction in the amount of available reinsurance or other changes to such contracts which effectively prohibit the Company from providing coverage at the same Limits of Liability and terms as the existing Policy; or

(c) Changes in the financial condition of the reinsurer which adversely affect its ability to honor its obligations. A change in the financial condition of the reinsurer shall be evidenced by an order issued by an insurance department or court of competent jurisdiction declaring the Company to be financially impaired or unsound, which shall include such actions as suspension, conservatorship, rehabilitation or liquidation;

(10) Failure by the "Insured" to comply with any federal, state or local fire, health, safety, building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within sixty (60) days of written notification of a violation of any such law, regulation or ordinance;

(11) Failure by the "Insured" to provide reasonable and necessary underwriting information to the Company upon written request therefor and a reasonable opportunity to respond; or

(12) Agency termination, provided:

(a) The Company documents that replacement coverage at comparable rates and terms has been provided to the "Named Certificate Holder", and the Company has informed the "Named Certificate Holder", in writing, of his or her right to continue coverage with the Company; or

(b) The Company has informed the "Named Certificate Holder", in writing, of his or her right to continue coverage with the Company and the "Named Certificate Holder" has agreed, in writing, to the cancellation or nonrenewal based upon the termination of his or her appointed agent.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(13) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1). written notice set forth in Subsection1.c.(1) must state the amount of premium, when it is due and the consequences of nonpayment by due date;

(ii) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(2); and

(iii) Not more than one hundred and twenty (120) days nor less than thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(3) through 1.c.(13)

Any written notice of cancellation subject to Subsections 1.c.(1)through 1.c.(13) shall state in detail the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. When calculating the time period for sending written notice of cancellation, the first day is not included in the count and the last day is included unless it is a Saturday, Sunday or legal holiday, then the next business day is the last day.

d. All notices of cancellation, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the cancellation with the New Jersey Department of Insurance, Division of Licensing and Enforcement, P.O. Box 325, Trenton, New Jersey 08625-0325. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata. Whenever this Policy is canceled, the Company on notice thereof shall return to the "Named Certificate Holder", within a reasonable time frame not to exceed sixty (60) days of cancellation or notice whichever occurs last, on a short rate basis the amount of gross unearned premium. In the event that the Company fails to return the gross unearned premiums to the "Named Certificate Holder" within a reasonable time frame not to exceed sixty (60) days, the Company shall, as a penalty, in addition to the gross unearned premium, return to the "Named Certificate Holder" an additional amount equal to five percent (5%) of the gross unearned premium computed on a monthly basis for each month or part thereof past the final date on which the refund was due.

g. The Company shall not be required to provide notice of cancellation if the "Named Certificate Holder" has replaced coverage elsewhere or has otherwise specifically requested cancellation. The Company must, however, maintain in its file properly documented proof that cancellation was made at the request of the "Named Certificate Holder". Where the cancellation request is submitted by the first "named insured's" authorized representative, the Company must contain documentation that the authorized representative has been specifically authorized by the "Named Certificate Holder" to convey the cancellation request to the Company.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, not more than one hundred and twenty (120) days nor less than thirty (30) days prior to the expiration of this Policy.

b. The Company may nonrenew the Policy for the reasons set forth in Cancellation section Subsections 1.c.(1) through 1.c.(13) above. The Policy may also be nonrenewed based upon adverse loss experience; if using adverse loss experience as a reason for nonrenewal, the type of loss experience must be specifically identified in the written notice of nonrenewal.

c. If the Company fail to provide written notice of nonrenewal as required in Subsection 2.(a). above, the coverage shall remain in effect at the same terms and premium until proper written notice of nonrenewal is mailed. Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. All notices of nonrenewal, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the nonrenewal with the New Jersey Department of Insurance, Division of Licensing and Enforcement, P.O. Box 325, Trenton, New Jersey 08625-0325. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

f. The Company may replace this Policy with a Policy issued by another company within the same insurance group under common management and control, provided the Company obtains from the "Named Certificate Holder" consent to do so and maintains records of such action.

g. The Company is not require to provide written notice of nonrenewal if the "Named Certificate Holder" has obtained replacement coverage elsewhere or agreed in writing to do so. The Company must maintain in the Company's file properly documented proof that termination was made at the request of the "Named Certificate Holder". Where the termination request is submitted by the 'Named Certificate Holder" authorized representative, the Company's file must contain documentation that the authorized representative has been specifically authorized by the "Named Certificate Holder" to convey such termination request to the Company.

h. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. The Company shall mail by certified mail written notice of any change(s) of renewal terms to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, not more than one hundred and twenty (120) days nor less than thirty (30) days prior to the expiration date of the Policy. When calculating the time period for sending written notice of cancellation, the first day is not included in the count and the last day is included unless it is a Saturday, Sunday or legal holiday, then the next business day is the last day.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rassol 01/03/2008
Authorized Representative Date

U-LAEO-149-A NJ (06/06)
Page 4 of 4

Endorsement

# New Mexico Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, this Policy may be canceled by the Company by mailing written notice to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than fifteen (15) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due. For nonpayment of premium, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

c. If this Policy is in effect for sixty (60) days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) There has been a substantial change in the risk assumed by the Company since the Policy was issued;

(3) The Policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company;

(4) Willful and negligent acts or omission by the "Insured" has substantially increased the hazards insured against; or

(5) The "Insured" has presented a "Claim" based on fraud or material misrepresentation.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice shall take effect:

(iii) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1);

(iv) Thirty (30) days from the date of mailing for the reason set forth in Subsection 1.c.(2)

(v) Fifteen (15) days from the date of mailing for the reason set forth in Subsections 1.c.(3) through 1.c.(5).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation.

d. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration date of this Policy.

3. Conditional Renewal

If the Company elects to renew this Policy, and the renewal is subject to the following:

a. Any change in Limits of Liability;

b. Restriction of coverage;

c. Change in Deductible; or

d. Any change in the required limits of the underlying coverage for an umbrella or excess liability Policy.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the effective date of the change(s).

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rassel
Authorized Representative

01/03/2008
Date

Endorsement

# Nevada Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect seventy (70) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than seventy (70) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Conviction of the "Insured" of a crime arising out of acts increasing the hazard insured against;

      (3) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a "Claim" hereunder;

      (4) Discovery of an act or omission; or a violation of any condition of the Policy which occurred after the first effective date of the current Policy and substantially and materially increases the hazard insured against;

      (5) A material change in the nature or extent of the risk, occurring after the first effective date of the current Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

      (6) A determination by the Commissioner that continuation of the Company's present volume of premiums would jeopardize the Company's solvency or be hazardous to the interests of "Insureds", its creditors or the public; or

      (7) A determination by the Commissioner that the continuation of the Policy would violate, or place the Company in violation of, any provision of the code.

   If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

   Written notice of cancellation shall take effect:

   (i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

   (ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

   Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If this Policy is longer than one (1) year, the Company may cancel this Policy for any reason by mailing written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than sixty (60) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" agreed to nonrenewal;

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so; or

(3) If the Policy is expressly designated as nonrenewable by terms and conditions approved or deemed to be approved by the Commissioner.

d. If the Company fails to provide a timely notice of nonrenewal described in Subsection 2.a. above, the Company shall provide the "Named Certificate Holder" with a Policy with identical terms and conditions as the expiring Policy. Policy may not be extended in order to comply with notice requirement. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Different rates; or

b. Different terms.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

# New York Regulation 121 and 107 Notice And Disclosure Statement

ZURICH

New York Regulation 121 (Claims Made Policy)

This Policy is written on a Claims Made basis. This Policy provides no coverage for "Claims" arising out of any negligent act, error or omission, or "Personal Injury" caused by an offense which took place prior to the "Retroactive Date". This Policy only covers "Claims" made against a "Named Certificate Holder" while the Policy remains in effect and within the Automatic Extended Reporting Period unless the "Named Certificate Holder" purchases an Optional Extended Reporting Period.

Claims Made rates are comparatively lower than occurrence rates and the "Named Certificate Holder" can expect substantial annual premium increases, independent of overall rate level increases, until the Claims Made relationship reaches maturity.

Please be advised that upon "Termination of Coverage", the "Named Certificate Holder" is entitled to an Automatic Extended Reporting Period and the "Named Certificate Holder" may purchase an Optional Extended Reporting Period.

Please seriously consider purchasing an Optional Extended Reporting Period. For a Claims Made policy, in the event of "Termination of Coverage" the "Named Certificate Holder" may purchase an Optional Extended Reporting Period during which any "Claim" first made shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" which occurred before the "Termination of Coverage" and on or after the "Retroactive Date". Consequently, the "Named Certificate Holder's" choice between accepting or declining the purchase of an Optional Extended Reporting Period is important.

The Company offers the following Optional Extended Reporting Periods (please refer to Section IX. of the New York Amendatory Endorsement for complete information):

Optional Extended Reporting Period - "Named Certificate Holder"

a. Three (3) years at two hundred (200%) of annual premium;

b. Five (5) years at three hundred (300%) of annual premium; or

c. Unlimited amount of time at four hundred (400%) of annual premium.

Options a. and b. above are available only to those "Named Certificate Holders" who, before the "Termination of Coverage": (i) retired from the business of providing "Professional Services" in accordance with the formal retirement procedure of the "Additional Insured"; (ii) became totally and permanently disabled in accordance with formal disability procedures of the "Additional Insured"; or (iii) died.

New York Regulation 107 (50% "Defense Costs" Offset)

The "Named Certificate Holder" hereby acknowledges that he or she is aware that the Limits of Liability shall be reduced by up to fifty percent (50%) by "Defense Costs" and, in such event, subject to the terms and conditions of the Policy, the Company issuing the Policy shall be liable for "Defense Costs" exceeding that fifty percent (50%).

Louis J. Yannello Jr.

President

Corporate Secretary

U-LAEO-114-A NY (04/06)

Endorsement

# New York Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

I. The Preamble of the Policy is deleted in its entirety and replaced with the following:

THIS POLICY PROVIDES CLAIMS MADE COVERAGE
PLEASE READ THE ENTIRE POLICY CAREFULLY

**THIS POLICY PROVIDES CLAIMS MADE COVERAGE. "CLAIMS" MUST FIRST BE MADE TO THE COMPANY DURING THE "CERTIFICATE PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD OF THIS POLICY. THE PAYMENT OF "DEFENSE COSTS" REDUCES THE LIMITS OF LIABILITY.**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine an "Insured's" rights, duties and what is and is not covered.

This Policy provides insurance to the "Named Certificate Holder" shown in Item 1 of the "Certificate of Insurance" subject to the "Master Policy" Declarations issued to the "Named Insured". Unless otherwise stated, the phrase **the Policy** shall refer only to the insurance provided by the "Certificate of Insurance" and shall not refer to the "Master Policy" Declarations. Similarly, the phrase **Limits of Liability** shall refer to the Limits of Liability identified in the "Certificate of Insurance". The word **Company** shall refer to the company providing this insurance.

Refer to Section II -- DEFINITIONS for the special meaning of words and phrases that appear in quotations.

In consideration of the payment of premium and in reliance upon the statements made by the "Additional Insured" in the application and its attachments and any material submitted therewith, all of which are made a part hereof, and subject to the "Certificate of Insurance" and the limitations, conditions, provisions and terms of this Policy (including any endorsements hereto), the Company and the "Named Certificate Holders" agree as follows:

II. Section I -- INSURING AGREEMENT, Subsections A. and B. are deleted in their entirety and replaced with the following:

I. INSURING AGREEMENTS

A. COVERAGE – PROFESSIONAL LIABILITY

The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4. of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6. of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1. The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period"; or

2. The "Claim" is for a "Personal Injury" caused by an offense arising out of rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession identified in Section I – INSURING AGREEMENTS, Subsection A.1. above while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such "Personal Injury" occurred on or after the "Retroactive Date" and before the end of the "Certificate Period".

B. COVERAGE – VICARIOUS LIABILITY

The Company shall pay on behalf of the "Additional Insured", subject to the shared Limits of Liability, all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Additional Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1. The "Claim" would otherwise be insured under Section I – INSURING AGREEMENTS, Subsection A. and is not due to any actual or alleged negligent act, error or omission or "Personal Injury" of the "Additional Insured";
2. The Limits of Liability available to the "Additional Insured" for such "Claim" shall be shared with the Limits of Liability that are applicable to the "Named Certificate Holder". Such Limits of Liability shall not be in addition to the "Named Certificate Holder's" Limits of Liability;
3. The "Additional Insured" shall be subject to all of the terms, conditions, limitations and exclusions of this Policy to the same extent as the "Insured" and shall not be entitled to any rights greater than those available to the "Insured"; and
4. Upon the request of the Company, the "Additional Insured" shall pay the Deductible on behalf of the applicable "Named Certificate Holder" for a "Claim" for which the "Additional Insured" is afforded coverage under the Policy.

III. The following is added to Section I - INSURING AGREEMENTS, Subsection C.:

When the Limits of Liability actually have been exhausted in payment of "Damages" or "Defense Costs", the Company will notify the "Named Certificate Holder" or the "Additional Insured", in writing, as soon as practicable that such Limits of Liability have been exhausted and the Company's duty to defend any "Claims" seeking "Damages" subject to those Limits of Liability has ended.

The Company will initiate and cooperate in the transfer of control to the "Named Certificate Holder" or the "Additional Insured" all "Claims" when the Limits of Liability are about to be exhausted. The "Named Certificate Holder" or the "Additional Insured" must cooperate in the transfer of control of said "Claims".

The Company agrees to take such steps as it deems appropriate to avoid a default in or to continue the defense of any such "Claim" until such transfer is completed, provided the "Named Certificate Holder" or the "Additional Insured" is cooperating in completing such transfer. The Company will take no action whatsoever with respect to any "Claim" seeking "Damages" that would have been subject to the Limits of Liability had they not been exhausted, if the "Claim" is reported to the Company after the Limits of Liability have been exhausted.

The "Named Certificate Holder" or the "Additional Insured" involved in a "Claim" seeking "Damages" subject to the Limit of Liability, must arrange for the defense of such "Claim" within such time period as agreed to between the "Named Certificate Holder" or the "Additional Insured" and the Company. Absent any such agreement, arrangements for the defense of such "Claim" must be made as soon as practicable.

IV. Section II – DEFINITIONS, Subsection H.4. is deleted in its entirety. The following is added to Section I – INSURING AGREEMENTS:

SUPPLEMENTARY PAYMENT

Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the amount available for the judgment under this Policy. However, "Defense Costs" does not include remunerations of an "Insured's" or the Company's regular employees or officials or independent adjusters. This payment will not reduce the Limits of Liability.

V. Section II DEFINITIONS, Subsection J.3. is deleted in its entirety and replaced with the following:

3. Any person acting on behalf of the "Named Certificate Holder" who was or is an employee of the "Named Certificate Holder" or the "Named Certificate Holder's" business entity, but only with respect to "Professional Services" provided by the "Named Certificate Holder"; or

VI. Section II – DEFINITIONS, Subsection T. is deleted in its entirety and replaced with the following:

T. "Termination of Coverage" means the earlier of the following:

1. The nonrenewal of this Policy;
2. The cancellation of this Policy; or

3. A decrease in Limits of Liability, a reduction of coverage, an increase in Deductible, a new exclusion or any other change in coverage less favorable to the "Named Certificate Holder".

VII. Section III – LIMITS OF LIABILITY, DEDUCTIBLE AND MULTIPLE "CLAIMS" AND CLAIMANTS, Subsections A. and B. are deleted in their entirety and replaced with the following:

A. The Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" is the most the Company will pay for all "Damages" and "Defense Costs" arising out of "Claims" against the "Named Certificate Holder", except for those "Defense Costs" which may be in addition to the Limit of Liability as set forth in the Limit of Liability Each "Claim"/Each "Named Certificate Holder" in the paragraph below.

B. Subject to Subsection A. above, the Limits of Liability – Each "Claim"/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" shall apply in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" and is the most the Company will pay for "Damages" and up to fifty percent (50%) of the Each "Claim"/Each "Named Certificate Holder" Limit of Liability for "Defense Costs". Any "Defense Costs" exceeding fifty percent (50%) of the Each "Claim"/Each "Named Certificate Holder" Limit of Liability for "Defense Costs" are in addition to the Limit of Liability.

If the Aggregate/Each "Named Certificate Holder" Limit of Liability is exhausted by any settlement or judgment of any "Claim", the Company's obligation under this Policy shall be terminated and the Company shall have the right to withdraw from the further investigation or defense of any pending "Claim" by tendering control of such investigation or defense to the "Named Certificate Holder" or the "Additional Insured", and the "Named Certificate Holder" or the "Additional Insured" agrees, as a condition to the issuance of this Policy, to accept such tender.

VIII. Section IV - EXTENDED REPORTING PERIODS, Subsection A. is deleted and replaced with the following:

A. Automatic Extended Reporting Period Cancellation Or Nonrenewal Of The "Master Policy"

In the event of cancellation or nonrenewal of the "Master Policy", the "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of sixty (60) days after the date of such cancellation or nonrenewal to report in writing to the Company any "Claim" which is first made prior to the such cancellation or nonrenewal and arises out of a negligent act, error or omission or "Personal Injury" which occurred before the date of such cancellation or nonrenewal of the "Master Policy" and on or after the "Retroactive Date". The Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period, if purchased.

If a "Claim" is covered under this provision and any other valid and collectible insurance, this Policy shall be excess over any such other valid and collectible insurance whether it is primary, excess, contingent or otherwise.

IX. Section IV – EXTENDED REPORTING PERIODS, Subsections B., C., D., E., and F. are deleted in their entirety and replaced with the following:

B. Extended Reporting Periods – "Named Certificate Holder"

1. Automatic Extended Reporting Period of One (1) Year - "Named Certificate Holder"

In the event of "Termination of Coverage" the "Named Certificate Holder" shall have an Automatic Extended Reporting Period of one (1) year commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". This Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period, if purchased.

The Automatic Extended Reporting Period does not extend the "Certificate Period", change the scope of coverage, or reinstate or increase the Limits of Liability available under the "Certificate of Insurance". The Limits of Liability applicable to this Automatic Extended Reporting Period shall be the Limits of Liability remaining under the "Certificate of Insurance" at the time of "Termination of Coverage".

2. Optional Extended Reporting Period – "Named Certificate Holder"

a. Optional Extended Reporting Period of Three (3) Years

In the event of "Termination of Coverage" the "Named Certificate Holder" may purchase an Optional Extended Reporting Period of three (3) years commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". To purchase this Optional Extended Reporting Period of three (3) years, the

"Named Certificate Holder" shall pay an additional premium equal to two hundred percent (200%) of the "Named Certificate Holder's" last annual premium within of sixty (60) days of "Termination of Coverage".

b. Optional Extended Reporting Period of Five (5) Years

If before "Termination of Coverage" the "Named Certificate Holder": retires from the business of providing "Professional Services" in accordance with formal retirement procedures of the "Additional Insured"; becomes totally and permanently disabled in accordance with formal disability procedures of the "Additional Insured"; or dies, then the "Named Certificate Holder", or the legal representative of the deceased "Named Certificate Holder", may purchase an Optional Extended Reporting Period of five (5) years commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". To purchase this Optional Extended Reporting Period of five (5) years, the "Named Certificate Holder" or the legal representative of the deceased "Named Certificate Holder, shall pay an additional premium equal to three hundred percent (300%) of the "Named Certificate Holder's" last annual premium within of sixty (60) days of "Termination of Coverage".

c. Unlimited Optional Extended Reporting Period

If before "Termination of Coverage" the "Named Certificate Holder": retires from the business of providing "Professional Services" in accordance with formal retirement procedure of the "Additional Insured"; becomes totally and permanently disabled in accordance with formal disability procedures of the "Additional Insured"; or dies, then the "Named Certificate Holder", or the legal representative of the deceased "Named Certificate Holder", may purchase an Unlimited Optional Extended Reporting Period commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". To purchase this Unlimited Optional Extended Reporting Period, the "Named Certificate Holder" or the legal representative of the deceased "Named Certificate Holder, shall pay an additional premium equal to four hundred percent (400%) of the "Named Certificate Holder's" last annual premium within of sixty (60) days of "Termination of Coverage".

C. "Claims" for any negligent act, error or omission or "Personal Injury" which are first made during an Extended Reporting Period, if applicable will be deemed to have been made on the last day of the "Certificate Period".

D. If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously for one (1) year or more and "Termination of Coverage" is based upon nonpayment of premium or fraud, the Optional Extended Reporting Period shall be made available but only upon request of such "Named Certificate Holder".

If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously for less than one (1) year and "Termination of Coverage" is based upon nonpayment of premium or fraud, the Optional Extended Reporting shall not be available to such "Named Certificate Holder".

E. Within thirty (30) days after "Termination of Coverage", the Company shall notify the "Named Certificate Holder" in writing of the Automatic Extended Reporting Period and the availability of, the premium for, and the importance of purchasing the Optional Extended Reporting Period.

F. The "Named Certificate Holder" shall have the greater of the following in which to submit in writing to the Company acceptance of the Optional Extended Reporting Period and submit payment of the additional premium:

1. Sixty (60) days from the "Termination of Coverage"; or

2. Thirty (30) days from the date of mailing or delivery of the notice required under Subsection F. above.

G. If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously for at least three (3) years, the annual aggregate Limit of Liability for any Optional Extended Reporting Period shall be one hundred percent (100%) of the Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance".

If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously less than three (3) years, the annual Aggregate/Each "Named Certificate Holder" Limit of Liability for any Optional Extended Reporting Period shall be the greater of:

1. The amount of coverage remaining in the Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance"; or

2. Fifty percent (50%) of the Limits of Liability - Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance".

X. Section V – NOTICE PROVISION, Subsection B. is deleted in its entirety and replaced with the following:

B. NOTICE OF CIRCUMSTANCE

If during the "Certificate Period" the "Insured" or "Additional Insured" becomes aware of an act, error or omission or "Personal Injury" which may be expected to give rise to a "Claim" under the Policy, the "Insured" or "Additional Insured" may provide written notice to the Company during the "Certificate Period" containing particulars sufficient to identify an "Insured" or "Additional Insured" and reasonably obtainable information with respect to:

1. A detailed description of the specific act, error or omission or "Personal Injury";
2. The "Damage" or "Personal Injury" which has or may result from such negligent act, error or omission or "Personal Injury"; and
3. The circumstances by which the "Insured" or "Additional Insured" first become aware of such negligent act, error or omission or "Personal Injury";

and then any "Claim" made against the "Insured" or "Additional Insured", for which coverage is provided by this Policy, that arises out of such act, error or omission or "Personal Injury" shall be deemed to have been made on the date on which the notice was received by the Company.

XI. The following is added to Section V - NOTICE PROVISION, Subsection C.:

Written notice given by or on behalf of any "Insured" or "Additional Insured" to any licensed agent of the Company in the state of New York with particulars sufficient to identify the "Insured" or "Additional Insured" shall be deemed notice. Failure to give immediate written notice shall not invalidate any "Claim" if it shall be shown not to have been reasonably possible to give immediate written notice and that written notice was given as soon as was reasonably possible.

XII. Section VI – EXCLUSIONS, Subsection A. is deleted in its entirety and replaced with the following:

Arising out of any act, error or omission of the "Insured" committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication.

XIII. Section VII – CONDITIONS, Subsection A. is deleted in its entirety and replaced with the following:

If a "Claim" is covered by this Policy and any other valid and collectible insurance, this Policy shall be excess over such other valid and collectible insurance whether it is primary, excess, contingent or otherwise.

XIV. Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or any of its authorized representatives, or by mailing written notice to the Company or any of its authorized representatives stating when such cancellation shall take effect. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for sixty (60) days or less, the Company may cancel the entire Policy for any reason not included in Subsection 1.c. below, by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than twenty (20) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel the entire Policy for the following reasons:

(1) Nonpayment of premium provided, however, that a notice of cancellation on this ground shall inform the "Named Certificate Holder" of the amount due

(2) Conviction of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a "Claim" thereunder;

(4) After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "Certificate Period";

(5) Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

(6) A determination by the Superintendent that continuation of the present premium volume of the Company would jeopardize the Company's solvency or be hazardous to the interest of the Company's policyholders, creditors or public;

(7) A determination by the Superintendent that continuation of the Policy would violate, or would place the Company in violation of, any provision of the Insurance Code; or

(8) Revocation or suspension of the "Named Certificate Holder's" license to practice his or her profession.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Written notice of cancellation shall take effect fifteen (15) days from the date of mailing for reasons set forth in Subsection 1.c.(1) through 1.c.(8).

d. Notice of cancellation shall state the effective date of cancellation. The "Certificate Period" will end on that date.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. If the "Named Certificate Holder" cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the Company will be entitled to retain a minimum earned premium of ten percent (10%) of the total Policy premium or sixty dollars ($60), whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

g. If one of the reasons for cancellation in Subsection 1.c. above exists, the Company may cancel this entire Policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this Policy.

h. Failure to remit premiums when due to the Company shall not be considered nonpayment of premium by the "Named Certificate Holder" if:

(1) the "Named Insured" received the "Named Certificate Holder's" premium in a timely manner if the Company has authorized the "Named Insured" to collect premium from "Named Certificate Holders"; or

(2) the "Additional Insured" received the "Named Certificate Holder's" premium in a timely manner if the Company has authorized the "Additional Insured" to collect premium from the "Named Certificate Holders".

2. Nonrenewal

If the Company elects not to renew this Policy, the Company shall send notice as provided in Notices of Nonrenewal and Conditional Renewal below.

3. Conditional Renewal

If the Company conditions renewal of this Policy upon:

a. Change in the Limits of Liability;

b. Change in the type of coverage;

c. Reduction in the coverage;

d. Increased Deductible;

e. Addition exclusion; or

f. Increased premium in excess of ten percent (10%), exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating, or audit;

then the Company shall send notice as provided in Notices of Nonrenewal and Conditional Renewal below.

4. Notices of Nonrenewal and Conditional Renewal

a. If the Company decides not to renew this Policy or to conditionally renew this Policy as provided under the Nonrenewal and Conditional Renewal above, the Company shall mail or deliver written notice by certified mail to the "Named Certificate Holder", and to the producer of record, if any, at least sixty (60) but not more than one hundred twenty (120) days prior to:

(1) The expiration date or

(2) The anniversary date if this is a continuous Policy.

b. In the event the Company extends the "Certificate Period" to comply with Subsection 4.a. above, the Limits of Liability -- Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" of the expiring Policy shall be increased in proportion to the Policy extension.

c. Notice shall be mailed or delivered to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The Company shall not send the "Named Certificate Holder" shown in Item 1 of the "Certificate of Insurance" notice of nonrenewal or conditional renewal if such "Named Certificate Holder", the producer of record, if any, or another insurer of the "Named Certificate Holder" mails or delivers notice that the Policy has been replaced or is no longer desired.

e. The notice of nonrenewal shall state the reason for the nonrenewal. The notice of conditional renewal shall state the reason for the conditional renewal and the specific change(s) to the Policy condition(s) and or premium.

XV. Section VII – CONDITIONS, Subsections I. and K. are deleted in their entirety and replaced with the following:

I. SOLE AGENT

By acceptance of this Policy, the "Additional Insured" shall act on behalf of the "Insureds" and "Additional Insureds" for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, reimbursement to the Company of any Deductible advanced and the exercise of the rights provided in Section IV EXTENDED REPORTING PERIODS or VII - CONDITIONS, Subsection C.

K. REPRESENTATION

In granting coverage under this Policy, the Company has relied upon the "Certificates of Insurance", agreements, and representations in the written application for this Policy. All such "Certificates of Insurance", agreements and representations are the basis of coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rassool
Authorized Representative

01/03/2008
Date



EXHIBIT "2"
PAGE NO. 159

Endorsement

# Ohio Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect ninety (90) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the first "named insured" at the address shown in Item 1 of the "Certificate of Insurance" and mail to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed, unless the Policy is canceled for reason set forth in Subsection 1.c. below. In that event such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any "Claims" submitted thereunder;

(3) Discovery of a moral hazard or willful or reckless acts or omissions on the part of the "Named Certificate Holder" that increase any hazard insured against;

(4) The occurrence of a change in the individual risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed, except to the extent the Company reasonably should have foreseen the change or contemplated the risk in writing the contract;

(5) Failure of an "Insured" to correct material violations of safety codes or to comply with reasonable written loss control recommendations;

(6) Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage; or

(7) A determination by the superintendent of insurance that the continuation of the Policy would create a condition that would be hazardous to an "Insured" or the public.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the date of the notice, the reason for such cancellation, the Policy number, and the effective date of cancellation.

d. The Company may issue a notice of cancellation at the first anniversary date of any Policy that is issued for a period greater than one (1) year. Not withstanding Subsection 1.c. above, such cancellation may be based on any reason.

e. The mailing of such notice as aforesaid shall be sufficient proof of notice. This Policy shall terminate and the "Certificate Period" shall end at the date and hour specified in such notice.

f. If the Policy is cancelled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration of this Policy.

If the Company fails to provide timely written notice required by the paragraph above, the Policy shall remain in effect until thirty (30) days after the date of mailing the notice, unless the "Named Certificate Holder" notifies the Company in writing that it accepts the nonrenewal as stated. The Company shall notify the "Named Certificate Holder" of the amount of premium for the time after the expiration date that the coverage may remain in effect, and the "Named Certificate Holder" shall pay such premium unless it accepts the stated nonrenewal. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or any other company within the same insurance group has offered to issue a renewal insurance; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

d. Any written notice of nonrenewal shall state the date of the notice, the reason for such cancellation, the Policy number, and the effective date of nonrenewal.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to a substantial increase in premium, the Company shall mail by certified mail or other first class mail, written notice of the increase to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and the producer of record, if any, at least thirty (30) days prior to the expiration date of the Policy.

b. If renewal is subject to the condition described in Subsection 3.a. above, and the Company fails to provide notice thirty (30) days prior to the expiration date of this Policy, the following procedures will apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after mailing the notice or delivery of the renewal Policy; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy shall be calculated pro rata at the rates applicable to the expiring Policy.

c. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, is effective the day following the Policy's expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Russell  01/03/2008
Authorized Representative  Date



EXHIBIT "2"
PAGE NO. 162

Endorsement

# Oklahoma Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC -- 9678553-01 | 11/01/2007 | 03375000 | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

c. If this Policy has been in effect less than forty-five (45) business days, this Policy may be canceled by the Company for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed.

d. If this Policy is in effect for forty-five (45) business days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any "Claims" submitted thereunder;

(3) Discovery of willful or reckless acts or omissions on the part of the "Named Certificate Holder" which increases any hazard insured against;

(4) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A determination by the Commissioner that the continuation of the Policy would place the Company in violation of the insurance laws of this state;

(6) Conviction of the "Insured" of a crime having as one of its necessary elements an act increasing any hazard insured against;

(7) Loss of or substantial changes in applicable reinsurance.



EXHIBIT "2"
PAGE NO. 163

If the Company cancels subject to Subsections 1.d.(1) through 1.d.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, no fewer than ten (10) days from the date the notice is mailed.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy. If the notice is mailed less than forty-five (45) days prior to the expiration, coverage shall remain in effect until forty-five (45) days after notice is mailed.

b. If the Company provides the notice as required and agreed thereafter to provide a ninety (90) day or less extension, an additional notice of nonrenewal is not required with respect to such extension. Earned premium for any period of coverage that extends beyond the Policy expiration date shall be computed pro rata based on the expiring premium.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) An "Insured" has obtained replacement coverage or agreed in writing to do so.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium;

(2) Change in Deductible;

(3) Reduction in Limits of Liability; or

(4) Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(4) above, and the Company fails to provide notice forty-five (45) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Forty-five (45) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. The above subsections shall not apply to:

(1) Changes in rate or plan filed with or approved by the State Board for Property and Casualty Rates or filed pursuant to the Commercial Property and Casualty Competitive Loss Cost Rating Act and applicable to an entire class of business;

(2) Changes based upon the altered nature of extent of the risk insured; or

(3) Changes in Policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# Oregon Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Policy may be canceled by the Company by mailing written notice by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall state the reason for cancellation and when, not less than ten (10) business days thereafter, such cancellation shall be effective. Such notice shall also inform the "Named Certificate Holder" that within thirty (30) days after receiving a notice of cancellation, under Oregon Statute 742.704, the "Named Certificate Holder" may request a hearing before the Director of the Department of Consumer and Business Services for the State of Oregon (Director).

The Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy or in presenting a "Claim" under the Policy.

(3) Substantial increase in the risk of "Damages" after insurance coverage has been issued or renewed, including but not limited to, an increase in exposure due to rules, legislation or court decision;

(4) Failure to comply with reasonable loss control recommendations;

(5) Substantial breach of contractual duties, conditions or warranties;

(6) Determination by the Director that the continuation of a line of insurance or class of business to which the Policy belongs will jeopardize the Company's solvency or will place the Company in violation of the insurance laws of Oregon or any other state;

(7) Loss or decrease in reinsurance covering the risk; or

(8) Any other reason approved by the Director by rule.

The mailing of such notice as aforesaid shall be sufficient proof of notice. This Policy shall terminate and the "Policy period" shall end at the date and hour specified in such notice.

If this Policy is cancelled by the "Named Certificate Holder" the Company shall retain the customary short rate portion of the premium. If the Policy is cancelled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by us shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

As per Oregon Statute 742.690, the Company may not cancel this Policy solely because any "Insured" holds a public office.

c. If notice of cancellation is mailed, a post office certificate of mailing will be conclusive proof that the "Named Certificate Holder" received the notice on the third calendar day after the date of the certificate of mailing.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, written notice of nonrenewal prior to:

(1) The expiration date of the Policy; or

(2) The anniversary date of the Policy if the Policy is written for a term of more than one (1) year or without a fixed expiration date.

However, if this Policy is issued for a term of more than one (1) year and for additional consideration the premium is guaranteed, the Company may not refuse to renew the Policy at its anniversary date.

b. Nonrenewal will not be effective until at least thirty (30) days after "Named Certificate Holder" receives the Company's notice.

c. If notice of nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the "Named Certificate Holder received the notice on the third calendar day after the date of the certificate of mailing.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Higher rates; or

(2) Less favorable terms;

the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to the conditions described in Subsections 3.a.(1) or 3.a.(2). above, and the Company fails to provide notice thirty (30) days prior to the anniversary or expiration date of this Policy, the following procedures will apply:

(1). The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after receipt of the notice or delivery of the renewal Policy; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. If notice of conditional renewal is mailed, a post office certificate of mailing will be conclusive proof that the "Named Certificate Holder" received the notice on the third calendar day after the date of the certificate of mailing.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# Pennsylvania Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made which affects the insurability of the risk ;

(3) The Policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company;

(4) A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the "Certificate Period";

(5) Material failure to comply with Policy terms, conditions or contractual duties;

(6) Other reasons that the Insurance Commissioner may approve; or

(7) Loss of or a substantial decrease in reinsurance certified by the Commissioner as affecting in force Policy.

If the Company cancels subject to Subsections 1.b.(1) through 1.b.(7) above, the Company shall mail written notice of cancellation by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Fifteen (15) days from the date of mailing for the reasons set forth in Subsections 1.b.(1) and 1.b.(2); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.b.(3). through 1.b.(7).

Any written notice of cancellation subject to Subsections 1.b.(1) through 1.b.(7) above shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. Nothing in this paragraph shall restrict our right to rescind a Policy ab initio (from the beginning) upon discovery that the Policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company.

If canceled by the Company, the refund of premium shall be computed pro-rata.

c. If notice is mailed, proof of mailing will be sufficient proof of notice. Such notice shall be clearly labeled **Notice of Cancellation.**

d. A midterm cancellation shall state that, at the "Named Certificate Holder's" request, the Company shall provide loss information to the "Named Certificate Holder" for at least three (3) years or the period of time during which the Company

has provided coverage to the "Named Certificate Holder", whichever is less. The "Named Certificate Holder's" written request for loss information must be made within ten (10) days of the "Named Certificate Holder's" receipt of the midterm cancellation notice. The Company shall have thirty (30) days from the date of receipt of the "Named Certificate Holder's" request to provide the requested loss information.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. Notice of nonrenewal must state the reason(s) for nonrenewal. The reason(s) must be clear and complete. Notice must identify the condition, factor or loss experience which caused the nonrenewal and must provide sufficient information or data so that the "Named Certificate Holder" may correct the deficiency.

b. Policy cannot be nonrenewed unless notice requirement in Subsection 2.a. above has been met. The Policy cannot be extended to meet nonrenewal requirements. The Company must remain on the Policy for another year if the notice requirement is not met.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

e. If notice is mailed, proof of mailing will be sufficient proof of notice. Such notice shall be clearly labeled **Notice of Nonrenewal.**

f. A nonrenewal notice shall state that, at "Named Certificate Holder's" request, the Company shall provide loss information to the "Named Certificate Holder" for at least three (3) years or the period of time during which the Company has provided coverage to the "Named Certificate Holder", whichever is less. The "Named Certificate Holder's" written request for loss information must be made within ten (10) days of the "Named Certificate Holder's" receipt of the nonrenewal notice. The Company shall have thirty (30) days from the date of receipt of the "Named Certificate Holder's" request to provide the requested loss information.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to increase in premium, the Company shall mail by certified mail or other first class mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the renewal date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Rasool
Authorized Representative

01/03/2008
Date

Endorsement

# Rhode Island Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. When canceling for nonpayment of premium, notice must be provided no fewer than ten (10) days from the date the notice is mailed. When canceling for any other valid underwriting reason, notice must be provided no fewer than thirty (30) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy;

(3) Acts or omissions on the part of the "Named Certificate Holder" which increase any hazard insured against, including a failure to comply with loss control recommendations;

(4) Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

(5) Loss or decrease in the Company's reinsurance covering all or part of the risk or exposure covered by the Policy;

(6) A determination by the Commissioner of Insurance that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Rhode Island;

(7) Owner or occupant incendarism;

(8) Violation or breach by the "Named Certificate Holder" of any Policy terms or conditions;

(9) Constructive or actual total loss of the insured property; or

(10) Such other reason as may be approved by the Commissioner of Insurance.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(10) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(10).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(10) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or a company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsections 2.a. above, and the Company subsequently extends the Policy for ninety (90) days at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

d. If the notice of nonrenewal is mailed less than sixty (60) days before expiration, the coverage shall remain in effect until sixty (60) days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium;

(2) Change in Deductible; or

(3) Reduction in Limits of Liability.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a. above, and the Company fails to provide notice sixty (60) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Sixty (60) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Rasaal 01/03/2008
Authorized Representative Date

Endorsement

# South Carolina Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect ninety (90) days or less and is not a renewal of a previously existing policy, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation notice shall be mailed no fewer than ten (10) days prior to the proposed effective date of cancellation, if such cancellation is based on nonpayment of premium and thirty (30) days for any other reason. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Material misrepresentation of fact which, if known to the Company, would have caused the Company not to issue the Policy;

      (3) A substantial change in the risk, except to the extent the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy;

      (4) A substantial breach of contractual duties, conditions or warranties; or

      (5) Loss of the Company's reinsurance covering all or a significant portion of the particular Policy insured, or where continuation of the Policy would imperil the Company's solvency or place the Company in violation of the insurance laws of the state of South Carolina.

   If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

   Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsections 1.c.(1); and

(ii) Thirty (30) days from the date of the mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(5).

Prior to cancellation for reason permitted in Subsections 1.c.(5) above, the Company shall mail by certified mail to the Director or his or her designee, written notice of cancellation not less than sixty (60) days after mailing the cancellation, and the Director or his or her designee shall, within thirty (30) days of such notification, approve or disapprove such cancellation.

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration of this Policy for a Policy with a "Policy Period" of one (1) year or less. For a Policy with a "Policy Period" of more than one (1) year, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the anniversary date of the Policy.

b. Policies issued for a term longer than one (1) year with a guarantee renewal or premium for which additional consideration has been paid may not be nonrenewed for any reason, regardless of notice.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. Any notice of nonrenewal shall state the precise reason for nonrenewal. This Policy may not be extended to comply with nonrenewal notice requirements.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Change in Policy term;

b. Change in Limits of Liability; or

c. Increase in premium,

the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Russell
Authorized Representative

01/03/2008
Date

U-LAEO-153-A SC (06/06)
Page 2 of 2

Endorsement

# Tennessee Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days and is not a renewal, this Policy may be canceled by the Company for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect for sixty (60) days or more or if this Policy is a renewal, the Company may cancel for the following reasons:

(1) Nonpayment of premium, including nonpayment of any additional premiums, calculated in accordance with the Company's current rating manual;

(2) Conviction of an "Insured" of a crime having as one of its necessary elements an act increasing any hazard insured against;

(3) Discovery of fraud or material misrepresentation on the part of either of the following:

(a) An "Insured" or an "Insured's" representative in obtaining the insurance; or

(b) The "Named Certificate Holder" in pursuing a "Claim" under the Policy.

(4) Failure to comply with written loss control recommendations;

(5) Material change in the risk which increases the risk of loss after insurance coverage has been issued or renewed;

(6) Determination by the Commissioner that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Tennessee or any other state;

(7) Violation or breach by an "Insured" of any Policy terms or conditions; or

(8) Such other reasons that are approved by the Commissioner.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall be effective not less than ten (10) days after the date the notice is mailed.

d. The mailing of such notice as aforesaid shall be sufficient proof of notice. This Policy shall terminate and the "Policy Period" shall end at the date and hour specified in such notice.

e. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.



EXHIBIT " 2 "
PAGE NO. 175

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. If the notice is mailed less than sixty (60) days before expiration, the Company shall extend the existing Policy for sixty (60) days from the date such notice is provided. The premium for the extension provided in such circumstances shall be no more than a pro rata basis of the existing Policy.

b. If the Company provides the notice as required and thereafter agrees to provide a ninety (90) day or less extension, an additional notice of nonrenewal is not required with respect to such extension. Earned premium for any period of coverage that extends beyond the Policy expiration date shall be computed pro rata based on the expiring premium.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase of premium rates and/or factors by more than twenty-five (25%) percent;

(2) Reduction in Limits of Liability; or

(3) Elimination of coverages;

the Company shall mail by certified mail written notice of the change(s) or amount of the increase to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice sixty (60) days before the expiration date of this Policy, the following procedures apply:

(1) The existing Policy will remain in effect until the earlier of the following:

(a) Sixty (60) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the expiring Policy will be calculated pro rata at the rates applicable to the expiring Policy.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following the Policy's expiration date.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy R. Russell (signature)
Authorized Representative

01/03/2008
Date



EXHIBIT " 2 "
PAGE NO. 176

Endorsement

# Texas Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Company cancels this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of cancellation stating the reasons for cancellation. The Company shall mail this notice not less than ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium or at least sixty (60) days before the effective date of cancellation if cancellation is for any other reason.

c. The Company may cancel this Policy for the following reasons:

(1) Failure to pay premium when due;

(2) Fraud in obtaining coverage;

(3) On an increase in hazard within the control of the "Named Certificate Holder" which would produce an increase in rate;

(4) Loss of our reinsurance covering all or part of the risk covered by the Policy; or

(5) The Company is placed in supervision, conservatorship or receivership if the cancellation is approved or directed by the supervisor, conservator, or receiver.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. If this Policy is cancelled by the "Named Certificate Holder", the Company shall retain the customary short rate portion of the premium. If the Policy is cancelled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

2. Nonrenewal

a. If the Company elects not to renew this Policy, shall mail written notice of nonrenewal stating the reason for nonrenewal, by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration date. If notice is mailed less than sixty (60) days before the expiration date, this Policy shall remain in effect until the sixty-first (61st) day after the date on which the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the expiring premium.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The transfer of a "Insured" between admitted companies within the same insurance group is not considered a refusal to renew.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Russell
Authorized Representative

01/03/2008
Date

Endorsement

# Utah Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, this Policy may be canceled by the Company for any underwriting reason, including nonpayment of premium, by mailing written notice by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and mailing to the producer of record, if any. Such cancellation shall state the reason for cancellation, and when, not less than ten (10) days after mailing or delivering of said notice, such cancellation shall be effective.

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation;

(3) Substantial change in the risk assumed, unless the Company reasonably should have foreseen the change or contemplated the risk when entering into the contract; or

(4) Substantial breaches of contractual duties, conditions, or warranties;

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(4) above, the Company shall mail written notice of cancellation by certified mail or other first class mail written notice of cancellation to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(iii) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(iv) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(4).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(4) shall state the reason for such cancellation, the effective date of cancellation, and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. The mailing of such notice as aforesaid shall be sufficient proof that the "Named Certificate Holder" received the notice on the third calendar day after the date of the mailing. This Policy shall terminate and the "Policy Period" shall end at the date and hour specified in such notice.

e. If this Policy is cancelled by the "Named Certificate Holder", the Company shall retain the customary short rate portion of the premium. If the Policy is cancelled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.



EXHIBIT "2"
PAGE NO. 179

2. Nonrenewal

If the Company elects not to renew this Policy, the Company shall deliver or mail written notice of nonrenewal by certified mail or other first class mail, to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of this Policy. Any written notice of nonrenewal shall state the reason for such nonrenewal and the effective date of nonrenewal. If notice is mailed, proof of mailing will be sufficient proof of notice.

If any of the following occur, the right to renew the Policy is extinguished:

(1) If not more than forty-five (45) days nor less than fourteen (14) days prior to the due date of a renewal premium, the Company shall mail by certified mail or other first class mail, a notice to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance":

(a) The renewal premium;

(b) How it may be paid; and

(c) That failure to pay the renewal premium by the due date extinguishes the "Named Certificate Holder" right to renewal.

(2) A notice of nonrenewal has been mailed by certified mail or other first class mail in accordance with Paragraph 1. above;

(3) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so;

(4) The "Named Certificate Holder" has requested or agreed to nonrenewal; or

(5) The Policy is expressly designated as nonrenewable.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to:

(1) Less favorable terms; or

(2) Higher rates;

the Company shall mail by certified mail or other first class mail, written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the expiration date of the Policy.

If renewal is subject to Subsection 3.a.(1) or 3.a.(2) above, and the Company fails to provide notice thirty (30) days prior to the expiration date of this Policy, the following procedures will apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after receipt of the notice or delivery of the renewal Policy; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the rates applicable to the expiring Policy.

c. If the "Named Certificate Holder" accepts the renewal, the renewal terms and higher rates are effective thirty (30) days after the receipt or delivery of the notice.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Russel
Authorized Representative

01/03/2008
Date

Endorsement

# Virginia Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the Company cancels this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of cancellation stating the reasons for cancellation. The Company shall mail this notice not less than fifteen (15) days before the effective date of cancellation if cancellation is for nonpayment of premium or at least forty-five (45) days before the effective date of cancellation if cancellation is for any other reason. The certified mailing of notice, as aforementioned, shall be sufficient notice and the effective date of cancellation stated in the notice shall become the expiration date of the Policy. Such notice shall state the reason for cancellation and shall be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If the notice was sent using certified mail, the Company must obtain a written receipt from the United States Postal Service showing the name and address of the "Named Certificate Holder". The Company must keep the certified postal receipt and a copy of all required notices and statements for at least one (1) year from the date of cancellation.

   d. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal not less than fifteen (15) days prior to the expiration of this Policy if nonrenew is for nonpayment of premium or at least forty-five (45) days prior to the expiration of this Policy if cancellation is for any other reason.

   b. If the nonrenewal notice was sent using certified mail, the Company must obtain a written receipt from the United States Postal Service showing the name and address of the "Named Certificate Holder". The Company must keep the certified postal receipt and a copy of all required notices and statements for at least one (1) year from the date of nonrenewal.

   c. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

   a. If the Company elects to renew this Policy and the renewal is subject to increase in filed rate of twenty-five percent (25%) or more the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days before the expiration date of the Policy.

   b. If the conditional renewal notice was sent using certified mail, the Company must obtain a written receipt from the United States Postal Service showing the name and address of the "Named Certificate Holder".. The Company must keep the certified postal receipt and a copy of all required notices and statements for at least one (1) year from the date of conditional renewal.

c. If the required notice is not sent, coverage will remain in effect until forty-five (45) days after notice is mailed or delivered to the "Named Certificate Holder" or until such "Named Certificate Holder" secures replacement coverage. If the "Named Certificate Holder" rejects the renewal offer, the extended period of coverage will be under the expiring Policy terms. If the "Named Certificate

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Rascal
Authorized Representative

01/03/2008
Date



EXHIBIT " 2 "
PAGE NO. 182

Endorsement

# Vermont Amendatory Endorsement

ZURICH

| Policy No | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation affecting the Policy or in the presentation of a "Claim" thereunder,

(3) Violation of any of the terms or conditions of the Policy; or

(4) Substantial increase in hazard provided that cancellation for this reason shall be effective only after prior approval of the commissioner;

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(4) above, shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Five (5) days of mailing time must be added to the cancellation notice periods below:

Written notice of cancellation shall take effect:

(i) Fifteen (15) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(4).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(4) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. The Company shall not be held liable in any claim or suit for damages arising solely from our compliance with the requirement that the reason for cancellation be specified.

If canceled by the Company, the refund of premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

d. The commissioner of insurance has the authority to waive the notice period and reason requirement upon our written request.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

(a) If the Company elects not to renew this Policy, shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration of this Policy. Five (5) days of mailing time must be added to the nonrenewal notice period.

(b) If the Company fails to provide timely written notice required by Subsection 2.(a) above, this Policy cannot be extended to meet the notice requirement.

(c) If notice is mailed, proof of mailing will be sufficient proof of notice.

(d) The Company is not required to provide written notice of nonrenewal if any one of the following occurs:

(1) The Company has manifested its willingness to renew;

(2) Nonpayment of premium; or

(3) The "Named Certificate Holder" fails to pay any advanced premium required by the Company for renewal.

(e) The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Rasool  01/03/2008
Authorized Representative  Date



EXHIBIT " 2 "
PAGE NO. 184

Endorsement

# Washington D.C. Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC – 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material and willful misstatement or omission of fact;

(3) Property or other interest of the "Insured" has been transferred; or

(4) The property, interest or use thereof must have materially changed with respect to its insurability;

If the Company cancels subject to Subsections 1.b.(1) through 1.b.(4) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, and mail to the producer of record, if any, five (5) days prior to mailing the written notice of cancellation to the "Named Certificate Holder".

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.b.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.b.(2) through 1.b.(4).

Any written notice of cancellation subject to Subsections 1.b.(1) through 1.b.(4) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

If canceled by the Company, the refund of premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

c. If notice is mailed, proof of mailing will be sufficient proof of notice. The envelope containing the notice must be labeled **Important Insurance Notice** in at least 18 point or larger type.

d. A copy of the notice of cancellation must be sent to the Superintendent of Insurance thirty (30) days before the proposed effective date of cancellation. No notice needs to be sent, however, in the case of cancellation for nonpayment of premium. Send notice to:

District of Columbia
Department of Insurance and Securities Regulation
810 First Street NE, Room 701
Washington, DC 20002



EXHIBIT " 2 "
PAGE NO. 185

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, at least thirty (30) days prior to the expiration of this Policy and mail to the producer of record, if any, five (5) days prior to mailing to the "Named Certificate Holder".

If the Company fails to provide timely written notice required by the Subsection 2.a. above, this Policy cannot be extended to meet the notice requirement.

b. If notice is mailed, proof of mailing will be sufficient proof of notice. The envelope containing the notice must be labeled **Important Insurance Notice** in at least 18 point or larger type.

c. A copy of the notice of nonrenewal must be sent to the Superintendent of Insurance thirty (30) days before the proposed effective date of nonrenewal. No notice needs to be sent, however, in the case of nonpayment of premium. Send notice to:

District of Columbia
Department of Insurance and Securities Regulation
810 First Street NE, Room 701
Washington, DC 20002

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Rassel (signature) ______________ 01/03/2008 ______________
Authorized Representative Date

U-LAEO-158-A DC (06/06)


EXHIBIT " 2 "

Endorsement

# Washington Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy by mailing written notice of cancellation by certified mail or delivered to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations no fewer than ten (10) days prior to the effective date of cancellation, and mailing within five (5) working days to the producer of record, if any, if cancellation is for nonpayment of premium. The Company may cancel this Policy by mailing written notice of cancellation by certified mail or delivered to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations at least forty-five (45) days prior to the effective date of cancellation and mailing within five (5) working days to the producer of record, if any, if cancellation is for any other reason. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. The written notice of cancellation to the producer of record, if any, may be provided electronically.

The Company shall also mail or deliver like notice to any mortgage holder, pledgee, or other person shown in this Policy to have an interest in any "Claim" which may occur under this Policy. This notice shall be the same as that mailed or delivered to the "Named Certificate Holder". For purpose of this amendatory, deliver includes electronic transmittal, facsimile, or personal delivery.

c. The commissioner of insurance has the authority to cancel the Policy:

(1) Under a statutory delinquency proceeding commenced under the provisions of chapter 48.31 RCW; or

(2) On a showing that the continuation of such coverage can reasonably be expected to create a condition in the Company hazardous to its "Insureds", or to its creditors, or to its member subscribers, or stockholders, or to the public.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, and mail to the producer of record, if any, at least forty-five days prior to the expiration of this Policy.

b. If the Company fails to provide timely written notice required by the Subsection 2.a. above, this Policy cannot be extended to meet the notice requirement.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy, the Company shall mail written notice of conditional renewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, and mail to the producer of record, if any, at least twenty (20) days prior to the expiration of this Policy. The Company must provide the "Named Certificate Holder" renewal terms including the premium due. If the "Named Certificate Holder" subsequently fails to pay the premium when due, the coverage is nonrenewed. The written notice of conditional offer to renew must also include an explanation of the premium changes or Policy provision changes along with any premium due and the premium due date.

b. If the Company fails to meet the above, a renewal Policy must be issued with the same terms and conditions, and rates as the expiring Policy. The Company is then permitted to change the terms and conditions, and rates of the renewal Policy one time after giving twenty (20) days prior notice to the "Named Certificate Holder".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Russel
Authorized Representative

01/03/2008
Date

Endorsement

# Wisconsin Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation;

(3) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the contract;

(4) Substantial breaches of contractual duties, conditions or warranties; or

(5) Attainment of age specified as the terminal age for coverage.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(5); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(4).

Any written notice of cancellation subject Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. With respect to nonpayment of a renewal premium, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, not more than seventy-five (75) days nor less than ten (10) days prior to the due date of the premium, and such written notice of nonrenewal states clearly the effect of nonpayment of premium by the due date. Any other reason, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of the Policy.

b. Failure to provide written notice of nonrenewal in Subsection 2.(a) above, entitles the "Named Certificate Holder" to a renewal at the same terms as the expiring Policy for a period not to exceed one (1) year. The Company may not extend the Policy to meet nonrenewal notice requirements in Subsection 2.(a) above.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" has obtained replacement coverage;

(2) The "Named Certificate Holder" has requested or agreed to nonrenewal; or

(3) The Policy is expressly designated as nonrenewable.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Less favorable terms; or

(2) Higher premium.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

b. If the Company notifies the "Named Certificate Holder" within sixty (60) days prior to the anniversary or expiration date of the Policy, the new terms or premium do not take effect until sixty (60) days after the notice is mailed or delivered by certified mail, in which case the "Named Certificate Holder" may elect to cancel the renewal Policy at any time during that sixty (60) day period. The written notice of change(s) shall include a statement of the first "named insured's" right to terminate the Policy. If the "Named Certificate Holder" elects not to renew the Policy, return premium or additional premium shall be calculated proportionately on the basis of the expiring premium. If the Company fails to notify the "Named Certificate Holder" of the new terms or premium as required in Subsection 3.(a) above, shall continue the Policy for an additional period of time equivalent to the expiring "Certificate Period", at the same expiring terms and premium.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy A. Russel (signature) — Authorized Representative    01/03/2008 — Date



EXHIBIT " 2 "
PAGE NO. 190

Endorsement

# Wyoming Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC - 9678553-01 | 11/01/2007 | 03375000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days and is not a renewal of a previously existing Policy for a term longer than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation of fact which if known to the Company would have caused the Company not to issue the Policy;

(3) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy; or

(4) Substantial breaches of contractual duties, conditions or warranties;

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(4) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(2); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(3) and 1.c.(4).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(4) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. If the Company cancels this Policy for any reason other than nonpayment of premium, at the time the notice of cancellation is given, a brief statement must be included advising the "Named Certificate Holder" of his, her, or its right to request loss information.

d. If notice is mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing will be sufficient proof of notice.



EXHIBIT " 2 "
PAGE NO. 191

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

f. Cancellation notice shall not be required if a Policy is transferred from the Company to an affiliated company under common management and control:

(1) As a result of a merger, acquisition or restructuring; or

(2) If the transfer results in the same or broader coverage.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration or anniversary of this Policy.

b. Policy may not be extended in order to comply with nonrenewal notice requirement.

c. If notice is mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing will be sufficient proof of notice.

d. Nonrenewal notice shall not be required if a Policy is transferred from the Company to an affiliated company under common management and control:

(1) As a result of a merger, acquisition or restructuring; or

(2) If the transfer results in the same or broader coverage.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

f. If the Company nonrenews this Policy for any reason other than nonpayment of premium, at the time the notice of nonrenewal is given, a brief statement must be included advising the "Named Certificate Holder" of his, her, or its right to request loss information.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Less favorable terms; or

(2) Higher rates.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the expiration or anniversary date of this Policy.

b. If the Company fails to provide the renewal terms and statement of premium due in the manner required in Subsection 3.a. above, the "Named Certificate Holder" may elect to cancel the renewal Policy within forty-five (45) day period following the receipt of the renewal terms and statement of premium due. Earned premium for any period of coverage shall be calculated pro rata based upon the premium applicable to the original Policy and not the premium applicable to the renewal Policy.

c. If notice is mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy B. Russell (signature) 01/03/2008
Authorized Representative — Date



EXHIBIT " 2 "
PAGE NO. 192

EXHIBIT 3

# MASTER POLICY DECLARATIONS –

## Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy

ZURICH

This insurance is provided by: **Steadfast Insurance Company**

**Policy Number:** EOC 9213881-02
**Replaces:** EOC 9213881-01

THIS IS A CLAIMS MADE AND REPORTED POLICY. "CLAIMS" MUST FIRST BE MADE AND REPORTED IN WRITING TO THE COMPANY DURING THE "CERTIFICATE PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD OF THIS POLICY. THE PAYMENT OF "DEFENSE COSTS" REDUCES THE LIMITS OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.

Item 1. Named Insured and Address: The Agents of West Coast Life Insurance Company,

Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

Item 2. Limits of Liability:

Option 1: $1,000,000 each Claim
$1,000,000 aggregate each Named Certificate Holder

Option 2: $2,000,000 each Claim
$2,000,000 aggregate each Named Certificate Holder

Item 3. "Policy Period": From 12:01 A.M. on December 31, 2007 to December 31, 2008 A.M. Local time at the address shown in Item 1 of the "Certificate of Insurance"

Item 4. Deductible: $500 each "Claim" for West Coast Life and Protective Life company sponsored products
$2,500 each Claim for all other products

Item 5. Premium: $100,000 (Estimate)

Item 6. Endorsements Effective at Inception:

1. Wrongful Termination Coverage for "General Agents" Endorsement
2. "Financial Planning" Endorsement
3. Amended Definition of "Additional Insured" Endorsement
4. Amended Definition of "Insured" Endorsement
5. Amended Definition of "Personal Injury" Endorsement
6. Amended Definition of "Professional Services" Endorsement
7. Amended Definition of "Retroactive Date" Endorsement
8. Amended Definitions Endorsement
9. Amended Exclusions Endorsement
10. Class Action Exclusion Endorsement
11. "Claim" Reporting in Subsequent Policy Period Endorsement
12. Automatic One Year Extended Reporting Period For "Named Certificate Holder" Endorsement
13. Conditional Automatic Unlimited ERP For Retired, Disabled or Deceased "Named Certificate Holder" Endorsement
14. Other Insurance Provision Endorsement
15. "Master Policy" Cancellation and Nonrenewal Endorsement
16. Coverage Options Endorsement
17. All State Amendatory Endorsements

President

Corporate Secretary

EXHIBIT " 3 "
PAGE NO. 193

# Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy

ZURICH

THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE
PLEASE READ THE ENTIRE POLICY CAREFULLY

**THIS POLICY PROVIDES CLAIMS MADE AND REPORTED COVERAGE. "CLAIMS" MUST FIRST BE MADE AND REPORTED IN WRITING TO THE COMPANY DURING THE "CERTIFICATE PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD OF THIS POLICY. THE PAYMENT OF "DEFENSE COSTS" REDUCES THE LIMITS OF LIABILITY.**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine an "Insured's" rights, duties and what is and is not covered.

This Policy provides insurance to the "Named Certificate Holder" shown in Item 1 of the "Certificate of Insurance" subject to the "Master Policy" Declarations issued to the "Named Insured". Unless otherwise stated, the phrase **the Policy** shall refer only to the insurance provided by the "Certificate of Insurance" and shall not refer to the "Master Policy" Declarations. Similarly, the phrase **Limits of Liability** shall refer to the Limits of Liability identified in the "Certificate of Insurance". The word **Company** shall refer to the company providing this insurance.

Refer to Section II – DEFINITIONS for the special meaning of words and phrases that appear in quotations.

In consideration of the payment of premium and in reliance upon the statements made by the "Additional Insured" in the application and its attachments and any material submitted therewith, all of which are made a part hereof, and subject to the "Certificate of Insurance" and the limitations, conditions, provisions and terms of this Policy (including any endorsements hereto), the Company and the "Named Certificate Holders" agree as follows:

## I. INSURING AGREEMENTS

### A. COVERAGE – PROFESSIONAL LIABILITY

The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4 of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Insured" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1. The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period"; or
2. The "Claim" is for a "Personal Injury" caused by an offense arising out of rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession identified in Section I – INSURING AGREEMENTS, Subsection A.1. above while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such "Personal Injury" occurred on or after the "Retroactive Date" and before the end of the "Certificate Period".

### B. COVERAGE – VICARIOUS LIABILITY

The Company shall pay on behalf of the "Additional Insured", subject to the shared Limits of Liability, all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Additional Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "Additional Insured" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

EXHIBIT " 3 "
PAGE NO. 194

1. The "Claim" would otherwise be insured under Section I – INSURING AGREEMENTS, Subsection A. and is not due to any actual or alleged negligent act, error or omission or "Personal Injury" of the "Additional Insured";
2. The Limits of Liability available to the "Additional Insured" for such "Claim" shall be shared with the Limits of Liability that are applicable to the "Named Certificate Holder". Such Limits of Liability shall not be in addition to the "Named Certificate Holder's" Limits of Liability;
3. The "Additional Insured" shall be subject to all of the terms, conditions, limitations and exclusions of the Policy to the same extent as the "Insured" and shall not be entitled to any rights greater than those available to the "Insured"; and
4. Upon the request of the Company, the "Additional Insured" shall pay the Deductible on behalf of the applicable "Named Certificate Holder" for a "Claim" for which the "Additional Insured" is afforded coverage under the Policy.

C. DEFENSE AND SETTLEMENT

The Company has the right and duty to defend any "Claim" against the "Insured" and "Additional Insured" seeking "Damages" to which this insurance applies even if any of the allegations of the "Claim" are groundless, false or fraudulent. The Company has choice of counsel in defending any "Claim" against the "Insured" and "Additional Insured". The Company has the right to investigate and settle any "Claim". The Company shall investigate and settle any "Claim" as it deems expedient, but the Company shall not be obligated to pay any "Claim", settlement or judgment, or to defend or continue to defend any "Claim" after the Company's applicable Limits of Liability shown in Item 4 of the "Certificate of Insurance" have been exhausted by payment of "Damages" or "Defense Costs".

## II. DEFINITIONS

A. "Additional Insured" means the company(ies) shown in Item 2 of the "Certificate of Insurance".

B. "Agents" means the individuals as shown in Item 1 of the "Certificate of Insurance", provided that they are party to a contract with "Additional Insured" on the effective date of this Policy and that they are licensed by the appropriate authority to solicit and sell life, accident and health insurance products or services. Such individuals shall be specifically designated by name and their names shall be on file with the "Additional Insured". Any new "Agent" of the "Additional Insured" after the effective date of the "Master Policy" shall become a "Named Certificate Holder" upon the effective date of such contract.

C. "Broker/Dealer" means any firm in the business of buying and selling "Securities" for itself and others that is registered with the Securities and Exchange Commission and any applicable state regulatory organization and is a member of the National Association of Securities Dealers.

D. "Certificate of Insurance" means the certificate issued in accordance with the "Master Policy" to the "Named Certificate Holder".

E. "Certificate Period" means the period of time from the effective date as shown on the "Certificate of Insurance" to the date of the "Termination of Coverage".

F. "Claim" means a written demand received by the "Insured" or "Additional Insured" seeking "Damages".

G. "Damages" mean the monetary amounts for which an "Insured" is legally liable, including sums paid as judgments, awards or settlements, and any taxes, fines or penalties incurred by a third party and included in such third party's "Claim" against the "Insured." However, "Damages" do not include:

1. Fines or penalties imposed by law, or taxes levied on or against an "Insured" or "Additional Insured";
2. Punitive, exemplary or treble damages;
3. The return, restitution, offset or withdrawal of fees, premiums, commissions or brokerage charges, including but not limited to, surrender charges and contingent deferred sales charges;
4. Non-pecuniary or injunctive relief; or
5. Judgments or awards from acts deemed uninsurable by law.

H. "Defense Costs" mean:

1. All reasonable and necessary fees charged by any lawyer designatedby the Company for the defense of a "Claim";
2. All other reasonable fees, costs and expenses resulting from the investigation, adjustment or defense of a"Claim";

3. The premiums for appeal, attachment or similar bonds, if incurred by the Company or by the "Insured" or "Additional Insured" with the Company's written consent. However, the Company shall have no obligation to apply for or to furnish any such bond; and

4. Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the amount available for the judgment under this Policy. However, "Defense Costs" does not include remunerations of an "Insured's" or the Company's regular employees or officials or independent adjusters.

I. "General Agent" means an "Agent" designated by and on file with the "Additional Insured" as a "General Agent".

J. "Insured" means:

1. The "Named Certificate Holder";

2. Any corporation, partnership or other business entity which engages in "Professional Services" and which is owned by the "Named Certificate Holder", and then only with respect to those operations of the business entity related to the "Professional Services" provided by the "Named Certificate Holder";

3. Any person acting on behalf of the "Named Certificate Holder", who was or is a partner, officer, director, stockholder or an employee of the "Named Certificate Holder" or the "Named Certificate Holder's" business entity, provided such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"; or

4. The heirs, executors, administrators or legal representatives of the "Named Certificate Holder" in the event of death, incapacity or bankruptcy.

K. "Master Policy" means the "Master Policy" Declarations issued to the "Named Insured". The "Master Policy" provides the "Named Certificate Holders" no insurance separate and apart from the coverage provided by the "Certificate of Insurance".

L. "Named Certificate Holder" means:

1. The "Agent";

2. The "General Agent"; or

3. The "Registered Representative"

shown in Item 1 of the "Certificate of Insurance".

M. "Named Insured" means the entity shown in Item 1 of the "Master Policy" Declarations.

N. "Personal Injury" means one or more of the following offenses

1. False arrest, detention or imprisonment;

2. Malicious prosecution; or

3. Oral or written publication, in any manner, of material that slanders or libels a person or organization, or that violates a person's right of privacy.

O. "Policy Period" means the period of time shown in Item 3 of the "Master Policy" Declarations.

P. "Professional Services" mean:

1. The sale or servicing of :

a. Life insurance, accident and health insurance, disability income insurance and annuities;

b. Variable insurance products, including but not limited to variable annuities, flexible and scheduled premium annuities and variable life insurance;

c. Employee benefit plans funded with those products listed in Section II – DEFINITIONS, Subsections P.1.a., b., and d..

d. Mutual funds and "Securities" registered with the Securities and Exchange Commission and sold by a "Registered Representative" through a "Broker/Dealer" that is a subsidiary of the "Additional Insured"; or

Mutual funds and "Securities" registered with the Securities and Exchange Commission and sold by a "Registered Representative" through a "Broker/Dealer" prior to the "Certificate Period" so long as at the time of sale the "Registered Representative" had a contract with such "Broker/Dealer" and was authorized to sell such "Securities".

2. The supervision and training by a "General Agent" over the conduct of any "Insured".

Q. "Registered Representative" means an individual who is registered with the National Association of Securities Dealers, Inc. and is contracted with a "Broker/Dealer" that is a subsidiary of the "Additional Insured" to, for compensation, render "Professional Services" on behalf of the "Additional Insured". Such individual shall be specifically designated by name and his or her name shall be on file with the "Additional Insured". Any new "Registered Representative" of such "Broker/Dealer" after the effective date of the "Master Policy" shall become a "Named Certificate Holder" upon the effective date of such contract.

R. "Retroactive Date" means the inception date of the ""Named Certificate Holder's" first claims made agent's professional liability policy from which date coverage has been maintained in force without interruption and for which written proof is provided to the Company.

S. "Securities" mean the term used by the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act of 1940, as applicable, or any state securities laws, so long as such "Securities" are offered for sale on a United States securities exchange.

T. "Termination of Coverage" means the earlier of the following:

1. The nonrenewal of this Policy;
2. The cancellation of this Policy;
3. The termination of a contract between an "Agent" and the "Additional Insured"; or
4. The termination of a contract between a "Registered Representative" and a "Broker/Dealer" that is a subsidiary of the "Additional Insured".

## III. LIMITS OF LIABILITY, DEDUCTIBLE AND MULTIPLE "CLAIMS" AND CLAIMANTS

A. The Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" is the most the Company will pay for all "Damages" and "Defense Costs" arising out of "Claims" against the "Named Certificate Holder".

B. Subject to Subsection A. above, the Limits of Liability – Each "Claim"/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" shall apply in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" and is the most the Company will pay for "Damages" and "Defense Costs" arising out of any one "Claim" against the "Named Certificate Holder".

C. Subject to Subsections A. and B. above, the Limits of Liability available to the "Additional Insured" or the "Insured" identified in Section II – DEFINITIONS, Subsections J.2., J.3., and J.4. shall be shared with and not in addition to the Limits of Liability which is applicable to the "Named Certificate Holder".

D. The Deductible shown in Item 6 of the "Certificate of Insurance" applies only to the payment of "Damages". The Company shall pay only that portion of the "Damages" which is in excess of the Deductible for each "Claim", subject to the Limits of Liability under this Policy. If a "Claim" is made against more than one "Named Certificate Holder", the Deductible shall apply separately to each "Named Certificate Holder". If a "Claim" is made against an "Additional Insured" or "Insured" other than the "Named Certificate Holder", only one Deductible shall apply regardless of the number of "Additional Insureds" and "Insureds". In such an instance, the Deductible shall be the amount that is applicable to the "Named Certificate Holder" for whom the "Additional Insured" is vicariously liable, or on whose behalf the "Insured" was acting.

E. The bringing of "Claims" by more than one person or organization, or the making of two or more "Claims" against an "Insured" or "Additional Insured", arising out of a single negligent act, error or omission, or "Personal Injury", or a series of related negligent acts, errors or omissions, or "Personal Injury" shall be treated as a single "Claim". All such "Claims", whenever made, shall be considered first made during the "Certificate Period" in which the earliest "Claim" arising out of such negligent acts, errors or omissions, or "Personal Injury" was first made and all such "Claims" shall be subject to a single Each "Claim"/ Each "Named Certificate Holder" Limit of Liability and shall not operate to increase the Company's Limits of Liability.

## IV. EXTENDED REPORTING PERIODS

A. Automatic Extended Reporting Period - Cancellation Or Nonrenewal Of The "Master Policy"

In the event of cancellation or nonrenewal of the "Master Policy", the "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of sixty (60) days after the date of such cancellation or nonrenewal to report in writing to the Company any "Claim" which is first made prior to the such cancellation or nonrenewal and arises out of a negligent act, error or omission or "Personal Injury" which occurred before the date of such cancellation or nonrenewal of the "Master Policy" and on or after the "Retroactive Date". However, there shall be no coverage hereunder in the event the "Named Certificate Holder" has any other applicable insurance, including a policy issued subsequent to this Policy. The Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period if such is purchased.

B. Optional Extended Reporting Period – Cancellation Or Nonrenewal Of The "Master Policy"

In the event of cancellation or nonrenewal of the "Master Policy", the "Additional Insured", acting on behalf of the "Named Certificate Holder", upon payment of an additional premium equal to two hundred percent (200%) of the deposited premium, shall have the right for an Optional Extended Reporting Period of three (3) years following the effective date of such cancellation or nonrenewal in which to report in writing to the Company any "Claim" which is first made during such three (3) year Optional Extended Reporting Period and arises out of a negligent act, error or omission or "Personal Injury" which occurred before the date of such cancellation or nonrenewal of the "Master Policy" and on or after the "Retroactive Date". The rights contained in this section shall terminate unless written notice of such election together with the additional premium due is received by the Company within sixty (60) days after the effective date of the cancellation or nonrenewal of the "Master Policy".

If the Company cancels or nonrenews the "Master Policy" because the "Additional Insured" has failed to pay a premium when due, or has not complied with the terms and conditions of the Policy, the "Additional Insured", acting on behalf of the "Named Certificate Holder", shall not have the right to the Automatic Extended Reporting Period or to purchase such Optional Extended Reporting Period at a later date.

The quotation of a different premium, Deductible, Limits of Liability or Policy terms and conditions for renewal shall not constitute a cancellation or refusal to renew for purposes of Section IV – EXTENDED REPORTING PERIODS, Subsections A. and B. above.

C. Extended Reporting Periods – "Named Certificate Holder"

1. Automatic Extended Reporting Period Of Ninety (90) Days – "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., the insurance under this Policy shall cease on such date. The "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of ninety (90) days after such date to report in writing to the Company any "Claim" which is first made during said Automatic Extended Reporting Period of ninety (90) days and arises out of a negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". This Automatic Extended Reporting Period of ninety (90) days, however, shall be limited to "Claims" solely involving products provided by the "Additional Insured". Notwithstanding Section VII – CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance. This Automatic Extended Reporting Period shall be included within the Automatic Two (2) Year Extended Reporting Period below or the Optional Extended Reporting Period, if such is purchased.

2. Automatic Extended Reporting Period Of Two (2) Years – "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., by reason of the "Named Certificate Holder's" retirement from the business of providing "Professional Services" in accordance with the formal retirement procedure of the "Additional Insured", totally and permanently disability pursuant to and in accordance with formal disability procedures of the "Additional Insured", or death, the insurance under this Policy shall cease on such date. The "Named Certificate Holder" shall be entitled to a free Automatic Extended Reporting Period of two (2) years after such date to report in writing to the Company any "Claim" which is first made during said Automatic Extended Reporting Period of two (2) years and arises out of any negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". Notwithstanding Section VII – CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance. This Automatic Extended Reporting Period of two (2) years shall be included within the Optional Extended Reporting Period, if such is purchased.

3. Optional Extended Reporting Period – "Named Certificate Holder"

The Automatic Extended Reporting Period of two (2) years provided in Subsection C.2. above may be extended so that the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", or the legal representative of a deceased "Named Certificate Holder", may elect to purchase an Optional Extended Reporting Period for "Claims" which are first made and reported in writing within:

a. Three (3) years of the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4. if the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", or the legal representative of the deceased "Named Certificate Holder" pays an additional premium equal to two hundred percent (200%) of the "Named Certificate Holder's" last annual premium within sixty (60) days of such date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4.;

b. Five (5) years of the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., if the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", the legal representatives of the deceased "Named Certificate Holder" pays an additional premium equal to three hundred percent (300%) of the "Named Certificate Holder's" last annual premium within sixty (60) days of such date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4.; or

c. An unlimited amount of time of the date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4., if the retired "Named Certificate Holder", or totally and permanently disabled "Named Certificate Holder", or the legal representatives of the deceased "Named Certificate Holder" pays an additional premium equal to four hundred percent (400%) of the "Named Certificate Holder's" last annual premium within sixty (60) days of such date of "Termination of Coverage" as defined in Section II – DEFINITIONS, Subsections T.3. and T.4..

D. The Extended Reporting Periods do not reinstate or increase the Limits of Liability beyond the Limits of Liability available on the "Certificate of Insurance", nor extend the "Certificate Period."

E. The Extended Reporting Periods do not apply to any "Claim" that is covered under any subsequent insurance issued to the "Named Certificate Holder", or that would be covered but for the exhaustion of the Limits of Liability applicable to such insurance.

F. "Claims" for any negligent act, error or omission or "Personal Injury" which are first made and reported during an Extended Reporting Period, if applicable, will be deemed to have been made on the last day of the "Certificate Period".

## V. NOTICE PROVISION

A. NOTICE OF "CLAIM"

As a condition precedent to the insurance afforded by this Policy, the "Insured" or "Additional Insured" which seeks coverage shall:

1. As soon as practicable, but no later than sixty (60) days after the "Termination of Coverage", give to the Company at the address below, written notice of any "Claim" made against the "Insured" or "Additional Insured" during the "Certificate Period" or any applicable Extended Reporting Period.

2. Immediately forward to the Company at the address below, every "Claim", notice, summons or other process received directly by the "Insured", Additional Insured, or by any of his, her or its representatives in the event suit is brought against the "Insured" or "Additional Insured".

3. Give to the Company, at the address below. written proof of "Named Certificate Holder's" first claims made agent's professional liability policy from which date coverage has been maintained in force without interruption, in the event that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before the "Certificate Period".

4. Assist and cooperate with the Company by:

a. Meeting with representatives of the Company, submitting to their examination and interrogation, under oath if requested, and giving written statements to such representatives;

b. Attending hearings, depositions and trials;

c. Assisting in investigation, settlement, securing and giving evidence, and obtaining the attendance of witnesses in the conduct of suit;

d. Doing whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the "Insured" may have; and

e. Not demand or agree to arbitration of any "Claim" made against the "Insured" or "Additional Insured" without written consent of the Company, which shall not be unreasonably withheld. The "Insured" or "Additional Insured" shall not make any payment, admit any liability, settle any "Claim", assume any obligation or incur any expenses without the written consent of the Company.

B. NOTICE OF CIRCUMSTANCE

If during the "Certificate Period", the "Insured" or "Additional Insured" becomes aware of an act, error or omission or "Personal Injury" which may be expected to give rise to a "Claim" under the Policy, the "Insured" or "Additional Insured" shall provide written notice to the Company during the "Certificate Period" containing particulars sufficient to identify an "Insured" or "Additional Insured" and reasonably obtainable information with respect to:

1. A detailed description of the specific act, error or omission or "Personal Injury";
2. The "Damage", or "Personal Injury" which has or may result from such negligent act, error or omission or "Personal Injury";
3. The circumstances by which the "Insured" first become aware of such negligent act, error or omission or "Personal Injury"; and,

then any "Claim", for which coverage is provided by this Policy, that may be made against the "Insured" or "Additional Insured" arising out of such act, error or omission or "Personal Injury" shall be deemed for the purposes of this insurance to have been made and reported on the date on which the notice was received by the Company. No coverage shall be provided in the event the "Insured" has any other applicable insurance.

C. All notices of "Claim" or circumstances are to be submitted to the following address:

**Zurich North America**
**Diversified Financial Institutions Claims**
**P.O. Box 307010**
**Jamaica, NY 11430-7010**

## VI. EXCLUSIONS

This Policy does not apply to any "Claim":

A. Arising out of any act, error or omission of the "Insured" committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication. In such event, the "Insured" shall reimburse the Company for all "Defense Costs" incurred by the Company;

B. Alleging bodily injury, sickness or death of any person, or to injury or destruction of any tangible property, including loss of use thereof;

C. Alleging the liability of others assumed by the "Insured" under any contract or agreement unless such liability would have attached to the "Insured" even in the absence of such agreement;

D. By an enterprise which one or more "Insureds" own, operate, control or manage; or any "Claim" by an enterprise which owns, operates, controls or manages an "Insured";

E. Based upon or arising out of any Pension, Profit Sharing, Health and Welfare or other Employee Benefit Plan or Trust sponsored by the "Insured" as an employer;

F. Arising out of the "Insured" making representations, promises or guarantees as to the future value of any investment including but not limited to, representations, promises or guarantees as to interest rates, fluctuation in interest rates, future premium payments or market value(s);

G. Arising out of services performed by the "Insured" as an actuary, accountant, attorney, real estate agent or real estate broker, named fiduciary or third party claims administrator;

H. Arising out of, or contributed to by, any commingling of, or use of client funds;

I. Arising out of, directly or indirectly, the insolvency, receivership, bankruptcy, or inability to pay of any organization in which the "Insured"

   1. Has placed or obtained a client's coverage;

   2. Has placed a client's funds; or

   3. Has recommend a client invest.

   However, this exclusion shall not apply if the "Claim" is based upon the insolvency, receivership, liquidation or inability to pay of any insurance company that was rated as A- or better by A.M. Best Company at the time the business was placed, obtained or recommended;

J. Arising out of the "Insured's" activities in computer programming or processing if the resulting programs or software are sold or distributed or if a fee is charged for use of such program or software;

K. Made against any "Insured" or the "Additional Insured" by:

   1. Any "Insured";

   2. Any "Additional Insured";

   3. Any "Broker/Dealer";

   4. Any other insurance company;

   5. Any other insurance agency; or

   6. Any person or entities who in the past were, but are not currently, parties to an agent contract with the "Additional Insured";

L. Arising out of the use of confidential information by an "Insured", including but not limited to such use for the purpose of replacement of coverage;

M. Arising out of the "Insured's" inability or refusal to pay or collect premium, claim or tax monies, including surcharges or assessments of any kind;

N. Arising out of or involving investment products partially or totally owned by the "Insured";

O. Arising from or contributed to by the placement of client's coverage or funds directly or indirectly with any organization which is not licensed to do business in the state or jurisdiction with authority to regulate such business. However, this exclusion does not apply to any "Claim" arising from or contributed to by the placement of client's coverage or funds directly or indirectly with any organization which is an eligible surplus lines insurance company in the state or jurisdiction with authority to regulate such business;

P. Arising out of the brokering of structured settlements; however, this exclusion does not apply to any "Claim" arising from or contributed to the sale of annuity products used to fund the structured settlements;

Q. Arising out of the ownership, formation, operation, administration, advice, referral, recommendation or placement of coverage with any health maintenance organization, preferred provider organization, risk retention group, self insurance program or purchasing group;

R. Arising out of or based upon:

   1. The Federal Telephone Consumer Protection Act (47 U.S.C. sec 227), Drivers Privacy Protection Act (18 U.S.C. sec. 2721-2725) or Controlling the Assault of Non-Solicited Pornography and Marketing Act (15 U.S.C. sec. 7701, et seq.); or

   2. Any other federal, state or local statute, regulation or ordinance that imposes liability for the:

      a. Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or

      b. Unlawful use, collection, dissemination, disclosure or redisclosure of personal information in any manner by an "Insured" or on behalf of any "Insured";

S. Arising out of the purchase, sale or the giving of advice regarding:

1. Commodities, commodity future contracts, or option contracts other than covered call option contracts;
2. Any security priced under five dollars ($5.00) at the time of purchase;
3. Promissory notes or other non-securitized evidence of debt; or
4. Viatical settlements, life settlements or any security backed by either viatical or life settlements;

T. Brought by, or on behalf of, the Securities Investor Protection Corporation, or any governmental, quasi-governmental, regulatory, or self-regulatory entity, whether directly or indirectly; however, this exclusion shall not apply to any "Claim" by such entity to enforce its rights as a direct customer of the "Insured" or "Additional Insured";

U. Brought by, or on behalf of, any clearing agency or arising out of any function of any "Insured" or "Additional Insured" as a clearing agency;

V. Arising out of the "Insured's" activities in exercising discretionary authority, management or control over a customer's account;

W. Arising out of or based upon infringement of patent, copyright, trademark, service mark, trade dress or trade name, unfair competition or piracy, theft or wrongful taking of concepts including using another's advertising ideas or other intellectual property;

X. For "Personal Injury":

1. Sustained by any "Insured" or "Additional Insured";
2. Caused by or at the direction of the "Insured" with the knowledge that the offense would violate the rights of another and would inflict "Personal Injury";
3. Arising out of oral or written publication of material, if done or at the direction of the "Insured" with knowledge of its falsity;
4. Arising out of an electronic chatroom or bulletin board the "Insured" hosts, owns or over which the "Insured" exercises control; or
5. Arising out of the unauthorized used of another's name or product in the "Insured's" email address, domain name or metatag, or any other similar tactics to mislead another's potential customer;

Y. Arising out of alleged discrimination of any kind;

Z. Prior to the first effective date of coverage issued to the "Named Certificate Holder", no "Insured" had any basis:

1. To believe that any "Insured" had knowledge of any negligent act, error or omission or "Personal Injury";
2. To forsee that any such negligent act, error or omission or "Personal Injury" or any related negligent act, error or omission or "Personal Injury" might reasonably be expected to be the basis of a "Claim";

## VII. CONDITIONS

### A. OTHER INSURANCE

1. If the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred during the "Certificate Period" and the "Insured" is covered by any other valid and collectible insurance, then this Policy shall be excess over any such other valid and collectible insurance and shall then apply only in the amount by which the applicable Limit of Liability of this Policy exceeds the sum of the applicable Limit of Liability of all such other insurance with the Company, or one of its affiliates. In this event, the "Insured" must elect the applicable policy under which the "Claim" will be made.
2. If the "Claim" arises out of a negligent act, error or omission, or "Personal Injury" that occurred before the "Certificate Period" and the "Insured" is covered by any other valid and collectible insurance, then there shall be no coverage under this Policy for such "Claim".

### B. SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all the "Insured's" rights of recovery, and the "Insured" shall execute and deliver instruments and all papers required and shall do

everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company to bring suit in the name of the "Insured".

C. CHANGES

Notices to any agent or representative, or knowledge possessed by any agent, representative or any other person shall not effect a waiver or a change in any part of this Policy or prevent the Company from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsements issued to form a part of this Policy.

D. ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, all "Insureds" have fully complied with all the terms of this Policy and not until the amount of all "Insured's" obligations to pay have been fully and finally determined either by judgment against all "Insureds" or by written agreement of the " Insured", the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the "Insured" to determine the "Insured's" liability, nor shall the Company be impleaded by the "Insured" or the "Insured's" legal representative.

E. ASSIGNMENT

The interest of the "Insured" under this Policy shall not be assignable to any other person. In the event of death or incompetency of the "Named Certificate Holder", this Policy shall cover the "Named Certificate Holder's" legal representative as an "Insured" as respects any liability previously incurred and covered by this Policy.

F. TERRITORY

This Policy applies to negligent acts, errors or omissions or "Personal Injury" which occur anywhere in the world provided that the "Claim" is made against the "Insured" or the "Additional Insured" in the United States of America, its territories or possessions.

G. CANCELLATION AND NONRENEWAL

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender thereof to the Company or any of its authorized representatives, or by mailing to the Company written notice stating when, thereafter, cancellation shall be effective.

   b. If this Policy has been in effect less than sixty (60) days and is not a renewal of a Policy issued by the Company, the Company may cancel this Policy for any reason.

   c. If this Policy has been in effect for sixty (60) days or more or is a renewal of a Policy issued by the Company, this Policy may not be canceled except for one (1) or more of the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation affecting the Policy;

      (3) Violation of any of the terms or conditions of the Policy; or

      (4) Substantial increase in hazard.

   d. Written notice of cancellation shall be mailed or delivered by the Company to the "Named Certificate Holder" at least:

      (1) Fifteen (15) days prior to the effective date of cancellation, if this Policy is canceled for nonpayment of premium; or

      (2) Sixty (60) days prior to the effective date of cancellation, if this Policy is canceled for any other reason.

   e. Written notice of cancellation, including the reasons for cancellation, shall be mailed or delivered to the "Named Certificate Holder".

f. Notice of cancellation shall be sent by certified mail. Delivery shall be considered to be equivalent to mailing. Proof of mailing shall be considered proof of notice.

g. If this Policy is canceled by the Company, the earned premium shall be computed pro rata. If this Policy is canceled by the "Named Certificate Holder", the Company shall retain the customary short rate proportion of the premium.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company will send notice at least sixty (60) days prior to expiration unless:

(1) The reason for the nonrenewal is due to nonpayment of premium or failure to meet Deductible obligations; or

(2) The "Additional Insured", acting on behalf of the "Named Certificate Holder", has obtained replacement coverage with another insurance company.

b. Written notice of nonrenewal shall be mailed by certified mail or delivered to the "Named Certificate Holder's " address shown in Item 1 of the "Certificate of Insurance". Proof of mailing shall be considered to be proof of notice.

H. CONFORMANCE TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.

I. SOLE AGENT

By acceptance of this Policy, the "Additional Insured" shall act on behalf of the "Insureds" and "Additional Insureds" for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of termination or nonrenewal, reimbursement to the Company of any Deductible advanced and the exercise of the rights provided in Section IV – EXTENDED REPORTING PERIODS or VII – CONDITIONS, Subsection C..

J. BANKRUPTCY

Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate shall not relieve the Company of any of its obligations hereunder.

K. REPRESENTATION

In granting coverage under this Policy, the Company has relied upon the "Certificate of Insurance", agreements, representations and warranties in the written application for this Policy. All such "Certificate of Insurance", agreements, representations and warranties are the basis of coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

Louis J. Mannello Jr.

President

Corporate Secretary

EXHIBIT " 3 "
PAGE NO. 204

Endorsement No 1

# Wrongful Termination Coverage for "General Agents" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 86690-000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

I. Section I. INSURING AGREEMENTS is amended to include the following:

WRONGFUL TERMINATION COVERAGE FOR "GENERAL AGENTS"

The Company shall pay on behalf of the "General Agent", subject to the Limits of Liability shown in Item 4 of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "General Agent" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made against the "General Agent" and reported to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy for the actual or alleged wrongful termination of contract to engage in "Professional Services" between the "Insured" as identified in Section II. DEFINITONS, Subsections L.1. or L.3. and the "General Agent", provided that such wrongful termination of contract occurred on or after the "Retroactive Date" and before the end of the "Certificate Period". Such coverage as is provided hereunder shall not apply to any "Claim" alleging discrimination of any kind.

II. For purposes of the coverage provided under this endorsement only, Section VI. EXCLUSIONS, Subsection K.1. and K.6. are deleted in their entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 205

Endorsement No. 2

# "Financial Planning" Endorsement

ZURICH

| Policy No | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 13669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

I. Subsection II.P. "Professional Services" is amended to include the following:

"Financial Planning".

II. Section II. DEFINITIONS is amended to include the following:

"Financial Planning" means recommending or preparing a financial program for a client based on and in consideration of the client's present and anticipated assets and liabilities including recommendations regarding savings, insurance, investments, estate planning, and anticipated retirement or employee benefits, provided that if the purchase or sale of any specific insurance or investment product is recommended, such product must be listed in Subsection II.P.1.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Rosa [signature]
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 206

Endorsement No. 3

# Amended Definition of "Additional Insured" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 78609 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

**I.** Subsection II.A. "Additional Insured" is deleted in its entirety and replaced with the following:

A. "Additional Insured" means West Coast Life Insurance Company.

**II.** Subsection I.B. COVERAGE-VICARIOUS LIABILITY is amended to include the following:

6. If a "Claim" made against the "Additional Insured" includes covered and uncovered allegations or "Damages" or both, the "Additional Insured" and the Company agree to use their best efforts to allocate such amounts based upon the relative exposure of the parties to covered and uncovered "Damages" or "Defense Costs" or both.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 207

Endorsement No. 4

# Amended Definition of "Insured" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 38669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection 3. of Subsection II.J. "Insured" is deleted in its entirety and replaced with the following:

3. Any person acting on behalf of the "Named Certificate Holder" who was or is an employee of the "Named Certificate Holder" or "Named Certificate Holder's" business entity or a partner, officer, director or stockholder of the "Named Certificate Holder's" business entity, provided that such person is not a party to a contract with any other insurance company, and then only with respect to "Professional Services" provided by the "Named Certificate Holder"; and

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 208

**Endorsement No. 5**

# Amended Definition of "Personal Injury" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| FOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 38669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection II.N. "Personal Injury" is amended to include the following:

4. wrongful entry or eviction or other invasion of the right of private occupancy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy T. Rand (signature) 01/17/2008
Authorized Representative Date

EXHIBIT " 3 "
PAGE NO. 209

Endorsement No. 6

# Amended Definition of "Professional Services" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 38669-000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection d. of Subsection II.P. "Professional Services" is deleted in its entirety and replaced with the following:

d. Mutual Funds registered with the Securities and Exchange Commission.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy L. Pascal
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 210

Endorsement No. 7

# Amended Definition of "Retroactive Date" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 18669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection II.R. "Retroactive Date" is deleted in its entirety and replaced with the following:

R. "Retroactive Date" means the earlier of the inception date of the "Named Certificate Holder's" first claims made agent's professional liability policy from which date coverage has been maintained in force without interruption and for which written proof is provided to the Company or the "Named Certificate Holder's first date of continuous, uninterrupted contract with the "Additional Insured".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Russell
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 211

Endorsement No. 8

# Amended Definitions Endorsement

ZURICH

| Policy No. | Eff Date of Pol. | Exp. Date of Pol. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| FOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 38669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

Section II. DEFINITIONS, Subsection S. is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Russell
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 212

**Endorsement No. 9**

# Amended Exclusions Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 3669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

I. Section VI. EXCLUSIONS, Subsections R. through Z. are deleted in their entirety and replaced with the following:

R. Arising out of the purchase, sale or the giving of advice regarding:

1. Promissory notes or other non-securitized evidence of debt; or
2. Viatical settlements, life settlements or any security backed by either viatical or life settlements;

S. Arising out of alleged discrimination of any kind;

T. For "Personal Injury" sustained by any "Insured" or "Additional Insured";

U. If prior to the first effective date of coverage issued to the "Named Certificate Holder", the "Insured" had any basis:

1. To believe that any "Insured" had knowledge of any negligent act, error or omission or "Personal Injury";
2. To foresee that any such negligent act, error or omission or "Personal Injury" or any related negligent act, error or omission or "Personal Injury" might reasonably be expected to be the basis of a "Claim".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 213

Endorsement No. 10

# Class Action Exclusion Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 8609 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

Section VI. EXCLUSIONS is amended to include the following:

Asserting a class action, whether threatened, purported, certified or decertified, against the "Insured" or "Additional Insured".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Lazzal
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 214

Endorsement No. 11

# "Claim" Reporting in Subsequent Policy Period Endorsement

ZURICH

| Policy No | Eff. Date of Pol. | Exp. Date of Pol. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 18669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Notwithstanding the requirement that a "Claim" must be first made and reported to the Company during the "Policy Period", if continuous coverage is in effect pursuant to consecutive policies issued by the Company, a "Claim" may be first made against the "Insured" during the "Policy Period" and may be reported to the Company in writing during the consecutive, immediately following policy period without constituting a violation of this requirement. In such circumstance, however, the "Insured" must report the "Claim" in writing to the Company as soon as practicable in compliance with Section V.A. Notice of "Claim".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Kassal
Authorized Representative

Date 01/17/2008

EXHIBIT " 3 "
PAGE NO. 215

Endorsement No. 12

# Automatic One-Year Extended Reporting Period For "Named Certificate Holder" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 13669.000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Section IV. EXTENDED REPORTING PERIODS, Subsection C.1. is deleted and replaced with the following:

C. Extended Reporting Periods – "Named Certificate Holder"

1. Automatic Extended Reporting Period Of One (1) Year – "Named Certificate Holder"

On the date of "Termination of Coverage" as defined in Section II. DEFINITIONS, Subsections T.3. and T.4., the insurance under this Policy shall cease on such date. The "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of one (1) year after such date to report in writing to the Company any "Claim" which is first made during said Automatic Extended Reporting Period of one (1) year and arises out of a negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". Such reporting period, however, shall be limited to "Claims" solely involving products issued by the insurance company named in item 2 of the Certificate of Insurance or sold through its "Broker/Dealer" subsidiary. Notwithstanding, Section VII. CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance. This Automatic Extended Reporting Period shall be included within the Automatic Two (2) Year and Conditional Automatic Unlimited Extended Reporting Periods below or the Optional Extended Reporting Period, if such is purchased.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

01/17/2008
Date

EXHIBIT "3"
PAGE NO. 216

**Endorsement No. 13**

# Conditional Automatic Unlimited Extended Reporting Period – Retired, Disabled or Deceased "Named Certificate Holder" Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 12/31/2008 | 12.31.2007 | 38669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**This Endorsement Changes The Policy. Please Read It Carefully.**

This endorsement modifies insurance provided by the following:

**Life Insurance Company Sponsored Life Agents Errors and Omissions Liability Policy**

It is agreed that:

Section IV. EXTENDED REPORTING PERIODS is amended to include the following:

4. Conditional Automatic Unlimited Extended Reporting Period – Retired, Disabled or Deceased "Named Certificate Holder"

   On the date of "Termination of Coverage" as defined in Section II. DEFINITIONS, Subsections T.3. and T.4., the insurance under this Policy shall cease on such date. However, notwithstanding the Extended Reporting Period provided in Subsection 2. above, so long as the "Master Policy" is maintained with the Company, the "Named Certificate Holder" identified in Subsection 2. above, or the legal representative of the deceased "Named Certificate Holder" shall have a free Conditional Automatic Unlimited Extended Reporting Period after such date of "Termination of Coverage" to report in writing to the Company any "Claim" which is first made during said Conditional Automatic Unlimited Extended Reporting Period and arises out of a negligent act, error or omission or "Personal Injury" which occurred before such date and on or after the "Retroactive Date". Notwithstanding Section VII – CONDITIONS, Subsection A., no coverage shall be provided in the event the "Named Certificate Holder" has any other applicable insurance.

   Any other applicable Automatic Extended Reporting Period and any Optional Extended Reporting Period, if purchased, shall be included within this Conditional Automatic Unlimited Extended Reporting Period.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Rasad
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 217

**Endorsement No. 14**

# Other Insurance Provision Amendment Endorsement

ZURICH

| Policy No. | Eff Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 12/31/2008 | 12/31/2007 | 36669 000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

Subsection VII.A.1. is deleted and replaced with the following:

1. If the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred during the "Certificate Period" and the "Insured" is covered by any other valid and collectible insurance, then this Policy shall be excess over any such other valid and collectible insurance and shall then apply only in the amount by which the applicable Limit of Liability of this Policy exceeds the sum of the applicable Limits of Liability of all such other insurance. This provision will not apply if the "Insured" has other insurance with the Company or one or more of its affiliates. In this event, the "Insured" must elect the applicable policy under which the "Claim" will be made.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy T. Ravizol
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 218

Endorsement No. 15

# "Master Policy" Cancellation and Nonrenewal Endorsement

ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 12/31.2008 | 12/31/2007 | 38669-000 | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

It is agreed that:

The following is added to Section VII. CONDITIONS, Subsection G:

3. Cancellation of the "Master Policy"

   a. The "Master Policy" may be canceled by the "Additional Insured" acting on behalf of the "Named Certificate Holders" by surrender of the "Master Policy" to the Company or any of its authorized representatives, or by mailing written notice to the Company or any of its authorized representatives stating when such cancellation shall take effect. If canceled by the "Additional Insured", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the "Master Policy" has been in effect less than sixty (60) days and is not a renewal of a Policy issued by the Company, the Company may cancel the "Master Policy" for any reason.

   c. If the "Master Policy" has been in effect for sixty (60) days or more or is a renewal of a Policy issued by the Company, the Company may cancel this "Master Policy" for the following reasons:

      (1) Nonpayment of the premium shown in Item 5 of the "Master Policy" Declarations;

      (2) Fraud or material misrepresentation affecting the "Master Policy"; or

      (3) Substantial increase in hazard.

   d. If the Company cancels subject to Subsections 3.c.(1) through 3.c.(3) above, the Company shall mail written notice of cancellation by certified mail or deliver to the "Named Insured" at the address shown in Item 1 of the "Master Policy" Declarations, and mail to the producer of record, if any. Proof of mailing shall be considered to be proof of notice.

   e. Written notice of cancellation shall take effect:

      (1) Fifteen (15) days from the date of mailing for the reasons set forth in Subsections 3.c.(1) above; or

      (2) Sixty (60) days from the day of mailing for the reasons set forth in Subsections 3.c.(2) and 3.c.(3) above.

   f. If the "Master Policy" is canceled by the Company, the earned premium shall be computed pro rata. If the "Master Policy" is canceled by the "Additional Insured" acting on behalf of all the "Named Certificate Holders", the Company shall retain the customary short rate proportion of the premium.

4. Nonrenewal of the "Master Policy"

   a. If the Company elects not to renew the "Master Policy", the Company shall mail written notice of nonrenewal by certified mail or deliver to the "Named Insured" at the address shown in Item 1 of the "Master Policy" Declarations, and mail to the producer of record, if any, at least sixty (60) days prior to the expiration , unless

(1) The reason for the nonrenewal is due to nonpayment of the premium shown in Item 5 of the "Master Policy" Declarations; or

(2) The "Additional Insured", acting on behalf of the "Named Certificate Holders" has obtained replacement coverage with another insurance company.

b. Proof of mailing shall be considered to be proof of notice.

5. In no event shall the "Master Policy" cancellation or nonrenewal become effective prior to the effective date of the cancellation or nonrenewal of all the "Certificates of Insurance".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Rasnick
Authorized Representative

01/17/2008
Date

Endorsement No. 16

# Coverage Options Endorsement

ZURICH

| Policy No | Eff Date of Pol. | Exp. Date of Pol. | Eff. Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| LOC 92 138 81-02 | 12.31.2007 | 12.31.2008 | 12.31.2007 | [illegible] | | |

**Named Insured and Mailing Address:**

The Agents of West Coast Life Insurance Company, Members of the Financial Sales Professionals Risk Purchasing Group
343 Sansome Street
San Francisco, CA 94104

**Producer:**

Brown & Brown of California, Inc.
681 S. Parker Street
Orange, CA 92868

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

For purposes of the coverage afforded to "Named Certificate Holders" only, it is agreed that:

I. The Limit of liability for Option 1 is $1,000,000 each "Claim" and $1,000,000 aggregate each "Named Certificate Holder";

II. The premiums for limit of liability Option 1 coverages are:

Level 1.: $750 per "Named Certificate Holder" (West Coast Life and Protective Life products only);

Level 2.: $975 per "Named Certificate Holder" (includes Level 1 and fixed insurance products of other companies);

Level 3.: $1,267 per "Named Certificate Holder" (includes Level 2, variable life, variable annuities, mutual funds and financial planning).

III. The Limit of liability for Option 2 is $2,000,000 each "Claim" and $2,000,000 aggregate each "Named Certificate Holder";

IV. The premium for limit of liability Option 2 coverages are:

Level 1.: $1,282 per "Named Certificate Holder" (West Coast Life and Protective Life products only);

Level 2.: $1,365 per "Named Certificate Holder" (includes Level 1 and fixed insurance products of other companies);

Level 3.: $1,520 per "Named Certificate Holder" (includes Level 2, variable life, variable annuities, mutual funds and financial planning).

V. The deductible for all "Claims" is the following:

1. $500 each "Claim" West Coast Life and Protective Life company sponsored products;
2. $2,500 each "Claim" for all other products.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy T. Pascal
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 221

Endorsement

# Alaska Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 36069 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium, not to exceed seven point five percent (7.5%) of the unearned premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company. The Company shall return or credit the unearned premium within forty-five (45) days of the requested or the effective date of cancellation, whichever is later.

b. The Company may cancel this Policy for the following reasons:

(1) Conviction of the "Insured" of a crime having as one of its necessary elements an act increasing a hazard insured against; or

(2) Discovery of fraud or material misrepresentation made by the "Insured" or a representative of the "Insured" in obtaining the insurance or by the "Insured" in pursuing a "Claim" under the Policy;

(3) Nonpayment of premium;

(4) Failure or refusal of the "Insured" to provide the information necessary to confirm exposure or necessary to determine the Policy premium; or

(5) Any other reason, except those listed in Subsections 1.b.(1) through 1.b.(4) above.

If the Company cancels subjects Subsections 1.b.(1) through 1.b.(5) above, the Company shall mail written notice of cancellation by certified mail or first class mail with a certificate of mailing from the U.S. Postal Service to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.b.(1) and 1.b.(2);

(ii) Twenty (20) days from the date of mailing for the reasons set forth in Subsections 1.b.(3) and Subsections 1.b.(4).; and

(iii) Sixty (60) days from the date of mailing for the reason set forth in Subsection 1.b.(5).

c. The unearned premium must be returned or credited to the producer of record, if any, or directly to the "Named Certificate Holder", or premium finance company prior to the effective date of cancellation; however if cancellation is for the following reasons, then return premium must be paid or credited within forty-five (45) days after notice of cancellation is given:

(1) Nonpayment of premium;

(2) Conviction of the "Insured" of a crime having as one of its necessary elements an act increasing a hazard insured against;

(3) Discovery of fraud or material misrepresentation made by the "Insured" or a representative of the "Insured" in obtaining the insurance or by the "Insured" in pursuing a "Claim" under the Policy; or

(4) Failure or refusal of the "Insured" to provide the information necessary to confirm exposure or necessary to determine the Policy premium.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rate, not to exceed seven point five percent (7.5%) of the unearned premium if the Policy is terminated by the "Named Certificate Holder" Under any other circumstances the refund shall be computed pro-rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or first class mail with a certificate of mailing from the US Postal Service to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If the Company fails to provide any written notice required by Subsection 2.a. above, the existing Policy shall remain in effect with no change in its terms and conditions until the Company provide the forty-five (45) days notice to the "Named Certificate Holder". The Policy may be extended in order to comply with the nonrenewal notice requirements.

c. The notice requirements set forth in Subsections 2.a. and 2.b. above do not apply when:

(1) The Company have in good faith manifested its willingness to renew; or

(2) The "Named Certificate Holder" has failed to pay the expiring Policy premium or the renewal Policy premium.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. Conditional Renewal

If the Company elect to renew this Policy and the renewal is subject to any of the following:

a. Increase in premium by more than ten percent (10%) for a reason other than an increase in coverage or exposure base; or

b. The renewal Policy contains a material restriction or reduction in coverage not specifically requested by the "Named Certificate Holder";

the Company shall mail by first class mail with a certificate of mailing from the US Postal Service written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] ____________ [handwritten date] ____________
Authorized Representative Date

EXHIBIT " 3 "
PAGE NO. 223

Endorsement

# Arizona Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | [illegible] | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Policy has been in effect sixty (60) days or less, we may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If the Policy has been in effect for more than sixty (60) days, the Policy may be canceled by the Company for the following reasons:

(1) Nonpayment of premium;

(2) Conviction of the "Insured" of a crime arising out of acts increasing the hazard insured against;

(3) Acts or omissions by the "Insured" or his or her representative constituting fraud or material misrepresentation in obtaining the Policy, in continuing the Policy or in presenting a "Claim" under the Policy;

(4) A substantial change in the risk, except to the extent we should reasonably have foreseen the change or contemplated the risk in writing the Policy;

(5) A substantial breach of contractual duties or conditions;

(6) Loss of reinsurance applicable to the risk insured against, but only if the absence of reinsurance has resulted from termination of treaty or facultative reinsurance initiated or implemented by the reinsurer(s) issuing the Policy;

(7) A determination by the Director of Insurance that the continuation of the Policy would place the Company in violation of the insurance laws of the State of Arizona or would jeopardize our solvency; or

(8) Acts or omissions by the "insured" or his or her representative which materially increase the hazard insured against.

If the Company cancels subject Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(8).

d. Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(8) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail written notice stating the reason for nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days prior to the expiration date.

If the Company provides the notice described in the paragraph above, and the Company subsequently extend the Policy for ninety (90) days at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

If the Company fails to provide timely written notice required by the paragraph above, the coverage provided to the "Named Certificate Holder" shall remain in effect with no change in its terms and conditions, for a period of sixty (60) days after the notice is given. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiration date.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal when:

(1) The Company or any company within the same insurance group has offered to issue an insurance renewal; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

d. The transfer of a Policy between companies with the same insurance group or changes in premium, Deductible, Limits of Liability or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew the Policy and the renewal is subject to any of the following:

(1) Increase in premium;

(2) Change in Deductible;

(3) Reduction in the Limits of Liability; or

(4) Substantial reduction in coverage;

the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a. (4) above, and the Company fails to provide notice sixty (60) days prior to the anniversary or expiration date, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Sixty (60) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

c. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following the Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: ______________________ Authorized Representative

2/17/2005 Date

EXHIBIT " 3 "
PAGE NO. 226

Endorsement

# California Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18009 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, may cancel this Policy by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due or committed fraud. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

c. If this Policy has been in effect for more than sixty (60) days, the Policy may be canceled by the Company only for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation by either of the following:

(a) The "Named Certificate Holder" or his or her representative in obtaining the insurance;

(b) The "Named Certificate Holder" or his or her representative in pursuing a "Claim" under the Policy;

(3) A judgment by a court or an administrative tribunal that the "Named Certificate Holder" has violated any law of the state of California or of the United States having as one of its necessary elements an act which materially increases any of the risk insured against;

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the "Named Certificate Holder" or his or her representative, which materially increase any of the risks insured against;

(5) Failure by the "Named Certificate Holder" or his or her representative to implement reasonable loss control requirements which were agreed by the "insured" as a condition of Policy issuance or which were conditions precedent to the use by the Company of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

(6) A determination by the commissioner that the loss of, or changes in, the Company's reinsurance covering all or part of the risk would threaten the Company's financial integrity or solvency. A certification made under penalty of perjury to the commissioner by one of the Company's officers of the loss of, or change in, reinsurance and that the loss or change will threaten the Company's financial integrity or solvency if the cancellation of the Policy is not permitted shall constitute such a determination unless disapproved by the commissioner within thirty (30) days of the filing. There shall be no extension to this thirty (30) day period;

(7) A determination by the commissioner that the continuation of the Policy would place the Company in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the Company's solvency; or

(8) A change by the "Named Certificate Holder" or his or her representative in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the Policy.

If the Company cancels subjects to Subsections 1.c.(1) through 1.c. (8) above, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(iii) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(2) and

(iv) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(3) through 1.c.(8).

d. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail written notice stating the reason for nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days, but not more than one hundred and twenty (120) days, prior to the expiration of this Policy.

If the Company fails to provide timely written notice required by the paragraph above, the coverage provided to the "Named Certificate Holder" shall remain in effect with no change in its terms and conditions, for a period of sixty (60) days.

b. The Company is not required to send notice of nonrenewal in the following situations:

(1) If the transfer or renewal of a Policy, without any changes in terms, conditions or rates, is between the Company and a member of our insurance group.

(2) If the Policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with Subsection a. above.

(3) If the "Named Certificate Holder" has obtained replacement coverage, or have agreed, in writing, within sixty (60) days of the termination of the Policy, to obtain that coverage.

(4) If the Policy is for a period of no more than sixty (60) days and the "Named Certificate Holder" is notified at the time of issuance that it will not be renewed.

(5) If the "Named Certificate Holder" requests a change in the terms or conditions or risks covered by the Policy within sixty (60) days of the end of the "Certificate Period".

(6) If the Company has made a written offer to the "Named Certificate Holder", in accordance with the timeframes shown in Subsection 2.a. above, to renew the Policy under changed terms or conditions or at an increased premium rate, when the increase exceeds twenty-five percent (25%).

c. The transfer of a Policy between companies with the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusal to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Reduction in Limits of Liability;

b. Increase in Deductible;

c. Elimination of coverages; or

d. Twenty-five percent (25%) or more rate increase.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days, but not more than one hundred and twenty (120) days, prior to the expiration of this Policy.

4. Mailing Time Requirements

Mailing time must be added to the notice periods as follows:

a. Add five (5) days if the place of address and place of mailing is in California;

b. Add ten (10) days if the place of address or place of mailing is outside of California; or

c. Add twenty (20) days if the place of address or place of mailing is outside the United States.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy L. Rascal
Authorized Representative

01/17/2008
Date

Endorsement

# Colorado Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | [illegible] | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. This Policy may be canceled by the Company by mailing written notice by certified mail or first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the 'Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than forty-five (45) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

      The Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) A false statement knowingly made on the application for insurance; or

      (3) A substantial change in the exposure or risk from what was indicated on the application and underwritten as of the effective date of the Policy unless the "Named Certificate Holder" has notified the Company of the change and the Company accepts such change.

      If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter but not more than forty-five (45) days after the effective date of cancellation by the Company or after the date of entitlement established by notification of cancellation or as otherwise established. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail by certified mail or first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance". and mail to the producer of record, if any, written notice of nonrenewal, at least forty-five (45) days prior to the expiration of this Policy.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

   c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

      The Company or another company within the same insurance group has offered to issue a renewal Policy; or

      The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

3. Conditional Renewal

   a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

      (1) Increase in premium; or

EXHIBIT " 3 "
PAGE NO. 230

(2) Reduction in coverage;

the Company shall mail by certified mail or first class mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice forty-five (45) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

c. The present Policy will remain in effect until the earlier of the following:

(1) Forty-five (45) days after the date of mailing or delivery of the notice; or

(2) The effective date of replacement coverage obtained by the "Named Certificate Holder".

d. If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(1) The rates applicable to the terminated Policy; or

(2) The rates presently in effect.

e. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

[handwritten date]
Date

Endorsement

# Connecticut Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add. Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | [illegible] | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ninety (90) days from the date the notice is mailed, unless this Policy is canceled for reasons set forth in Subsections 1.c.(1) through 1.c.(5) below. In that event, such cancellation shall take effect no fewer than ten (10) days after the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect sixty (60) days or more or is a renewal of a Policy the Company issued, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Conviction of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation by the "Insured" in obtaining the Policy, or in perfecting any "Claim" thereunder;

(4) Discovery of any willful or reckless act or omission by the "Insured" increasing the hazard insured against;

(5) A determination by the Commissioner that continuation of the Policy would violate or place us in violation of law;

(6) Physical changes in the property which increase the hazard insured against;

(7) A material increase in the hazard insured against; or

(8) A substantial loss of reinsurance affecting this particular line of insurance.

If the Company cancels subject to in Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance". and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days after the date of mailing for the reasons set forth in Subsections 1.c.(1) through 1.c.(5); and

(ii) Ninety (90) days from the date of mailing for the reasons set forth in Subsections 1.c.(6) through 1.c.(8).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(8) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If the Policy is canceled by us, the earned premium shall be computer pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least ninety (90) days prior to the expiration of this Policy.

If the Company fails to provide timely written notice required by the paragraph above, the Policy may not be extended to meet nonrenewal requirements. If the Company fails to provide the "Named Certificate Holder" with the required nonrenewal notice as described in the paragraph above, this will entitled the "Named Certificate Holder" to renew the Policy for a "Certificate Period" of not less than one (1) year.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or any other company within the same insurance group has offered to issue a renewal insurance; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

d. The transfer of a Policy between companies within the same insurance group or changes premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy, but under terms or conditions less favorable than previously provided, the Company must notify the "Named Certificate Holder" by sending a conditional renewal notice. The conditional renewal notice must clearly state or be accompanied by a clear statement that identified terms or conditions that may be less favorable to the "Named Certificate Holder". Any significant reduction of coverage requires a conditional renewal notice. Some examples where conditional renewal notices are appropriate are:

(1) A decrease in the Limits of Liability; or

(2) A new exclusion or deletion of coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days before the anniversary or expiration date of the Policy.

Our failure to provide the "Named Certificate Holder" with the required conditional renewal notice will entitle the "Named Certificate Holder" to renew the Policy for a "Certificate Period" of not less than one (1) year.

b. If the Company elects to renew this Policy and the renewal is subject to an increase in premium of ten percent (10%) or more, the Company must notify the "Named Certificate Holder" by sending a renewal premium billing notice. This renewal premium billing notice must state the actual renewal premium. Any premium billing notice with the statement that the premium will increase ten percent (10%) or more is improper and fails to provide adequate notice as required by law.

We shall mail by certified mail written notice of actual renewal premium change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days before the anniversary or expiration date of the Policy.

4. Notice Compliance Requirements

Compliance with the minimum notice standards is determined by counting the number of calendar days beginning with the first day after the date of mailing of transaction up to, but not including, the date the transaction is effective. The date of mailing is evidenced by:

(a) The postmark date on the envelope,

(b) A copy of the completed receipt that it was sent registered mail, certified mail, or

(c) A certificate of mailing from the U. S. Post Office.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 2/17/2005

Authorized Representative Date

EXHIBIT " 3 "
PAGE NO. 233

Endorsement

# Delaware Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 38069-000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation or nondisclosure to the Company of a material fact at the time of acceptance of risk;

(3) Increased hazard or material change in the risk assumed which could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(4) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

(5) Fraudulent acts against the Company by the "Insured" or its representatives that materially affect the nature of the risk insured;

(6) Lack of cooperation from the "Insured" on loss control matters affecting insurability of the risk;

(7) Bona fide loss of or substantial changes in applicable reinsurance. The Company shall give sixty (60) days notice to the Insurance Commissioner and the "Named Certificate Holder", and shall supply such information at that time as the Insurance Commissioner shall require;

(8) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract;

(9) Bona fide loss of or reduction in available insurance capacity. The Company shall give sixty (60) days notice to the Insurance Commissioner and the "Named Certificate Holder", and shall supply such information at that time as the Insurance Commissioner shall require; or

(10) Any other reasons approved by the Commissioner.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(10) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth Subsection 1.c.(1), written notice set forth in Subsection 1.c.(1) must state the amount of premium, when it is due and the consequences of nonpayment by due date; and

(ii) At least sixty (60) days but no more than one hundred and twenty (120) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(10).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(10) shall state in detail the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. This written notice of cancellation shall state the effective date of cancellation. The "Named Certificate Holder" agrees in writing to hold the Company harmless from liability for any communication giving notice of or specifying a reason for cancellation, or for any statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation.

d. All notices of cancellation, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the cancellation with the Delaware Insurance Department. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

g. If the Company fails to send written notice of cancellation as required, the Policy shall continue in force until sixty (60) days but no more than ninety (90) days after a notice of cancellation is received by the "Named Certificate Holder".

h. The Company shall not be required to provide notice of cancellation if the "Named Certificate Holder" has replaced coverage elsewhere or has otherwise specifically requested cancellation. The Company must maintain in its file properly documented proof that cancellation was made at the request of the "Named Certificate Holder".

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) but no more than one hundred and twenty (120) days prior to the expiration of this Policy.

b. The Company may nonrenew the Policy for the reasons set forth in Cancellation Subsections 1.c.(1) through 1.c.(10) above.

c. If the Company fails to provide written notice of nonrenewal as required in Subsection 2.a. above, the Policy shall continue in force until sixty (60) days but no more than ninety (90) days after a notice of nonrenewal is received by the "Named Certificate Holder". Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. All notices of nonrenewal, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the nonrenewal with the Delaware Insurance Department. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

f. The transfer of a Policy between companies within the same insurance group or changes in premium, Deductible, Limits of Liability or coverage are not refusals to renew.

g. The Company shall not be required to provide notice of nonrenewal if the "Named Certificate Holder" has replaced coverage elsewhere or has otherwise specifically requested cancellation. The Company must maintain in its file properly documented proof that cancellation was made at the request of the "Named Certificate Holder".

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

The Company cannot effect or attempt to effect a mid-term premium increase and/or a reduction in the amount and/or type of coverage provided under the Policy unless mutually agreed to by the Company and the "Named Certificate Holder" after good faith negotiations or unless prior written approval therefore has been obtained from the Commissioner.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: ______________________
Authorized Representative

______________________
Date

Endorsement

# Florida Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| LOC 92 138 81-02 | 12/31/2007 | 36691000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect ninety (90) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed for reason of nonpayment of premium and twenty (20) days from the date the notice is mailed for other reasons. Such notice shall state the reason for cancellation and shall be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misstatement;

(3) Failure to comply with the underwriting requirements established by the Company within ninety (90) days of the effective date of coverage;

(4) Substantial change in risk; or

(5) The cancellation is for all "Insureds" under such policies for a given class of "Insureds".

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsection 1.c.(1); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(5).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If the Company cancels the Policy, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal stating the reason for nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If the Company fails to provide any written notice required by Subsection 2.a., above, the coverage provided to the "Named Certificate Holder" shall remain in effect with no change in its terms and conditions, for a period of forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the "Named Certificate Holder", whichever occurs first. The premium for this coverage shall remain the same during any such extension period except that, in the event of failure to provide notice of nonrenewal, if the rate filing then in effect would have resulted in a premium reduction, the premium during such extension of coverage shall be calculated based upon the later rate filing.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Deductible, Limits of Liability or coverage are not refusal to renew.

3. Conditional Renewal (Advance Notice Of Renewal Premium)

a. If the Company elects to renew this Policy then the Company shall mail written notice of renewal premium, by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. This requirement applies only if the "Named Certificate Holder" has furnished all of the necessary information so as to enable the Company to develop the renewal premium prior to the expiration date of this Policy.

c. If the Company fail to provide any written notice required in Subsection 3.a., above, the coverage provided to "Named Certificate Holder" shall remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the "Named Certificate Holder", whichever occurs first. The premium for this coverage shall remain the same during any such extension period except that, in the event of failure to provide notice of nonrenewal, if the rate filing then in effect would have resulted in a premium reduction, the premium during such extension of coverage shall be calculated based upon the later rate filing.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy R. Carroll
Authorized Representative

01/17/2008
Date

Endorsement

# Georgia Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End | Producer | Add'l Prem | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 15669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by delivering or mailing by at least first class mail, written notice to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is delivered or mailed.

   c. If this Policy has been in effect sixty (60) days or more, the Company may cancel this Policy by delivering, in person or mailing by at least first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and delivering or mailing to the producer of record, if any, written notice of cancellation stating the reasons for cancellation, not less than ten (10) days prior to the effective date of cancellation if cancellation is for nonpayment of premium, or at least forty-five (45) days prior to the effective date of cancellation if cancellation is for any other reason.

   d. If notice is mailed, proof of mailing will be sufficient proof of notice.

   e. If the Company fails to provide the required notice, "Named Certificate Holder" shall be entitled to purchase, at pro rata the existing premium, a thirty (30) day extension of the existing Policy at the same terms and conditions as the existing Policy.

   f. If this Policy is cancelled, the Company shall send the "Named Certificate Holder" any premium refund due. If the Company cancels, the refund will be pro rata. If the "Named Certificate Holder" cancels, the refund will be ninety percent (90%) of pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company may do so by delivering, in person or mailing by at least first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and delivering or mailing to the producer of record, if any, written notice of nonrenewal, stating the reason for nonrenewal, at least forty-five (45) days prior to the expiration date of the Policy.

   b. If the Company fails to provide the required notice, the "Named Certificate Holder", shall be entitled to purchase, at pro rata the existing premium, a thirty (30) day extension of the existing Policy at the same terms and conditions as the existing Policy.

If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The transfer of a "Named Certificate Holder" between admitted companies within the same insurance group is not considered a refusal to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium by fifteen percent (15%) or more; or

(2) Change in any Policy provision which limits or restricts coverage;

the Company shall deliver, in person or mail by at least first-class mail, written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) or 3.a.(2) above, and the Company fails to provide notice forty-five (45) days prior to the expiration date of this Policy, then the "Named Certificate Holder", shall be entitled to purchase, at pro rata the existing premium, a thirty (30) day extension of the existing Policy at the same terms and conditions as the existing Policy.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. [signature] 01/17/2008
Authorized Representative Date

EXHIBIT " 3 "
PAGE NO. 240

Endorsement

# Hawaii Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 238 81-02 | 12.31.2007 | 36969 00.0 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. The Policy may be canceled by the Company only for the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation;

      (3) Risk hazard increases substantially and the Company could not have reasonably foreseen the change when entering into the Policy;

      (4) A substantial breach of contractual duties, conditions or warranties;

      (5) A violation of any local fire, health, or safety statute or ordinance;

      (6) A conviction of the "Named Certificate Holder" for a crime having as one of its necessary elements, an act increasing any hazard that is insured against;

      (7) The insurance commissioner determines that the continuation of the Policy places the Company in violation of Chapter 431, Hawaii Revised Statutes; or

      (8) For any good faith reason with the approval of the insurance commissioner.

      If the Company cancels subject to Subsections 1.b.(1) through 1.b.(8) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Written notice of cancellation shall take effect thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.b.(1) through 1.b.(8).

      Any written notice of cancellation subject to Subsections 1.b.(1) through 1.b.(8) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

   d. The Company shall refund the unearned premium computed at customary short rate if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal, at least forty-five (45) days prior to the expiration of this Policy.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

EXHIBIT " 3 "
PAGE NO. 241

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: ______________________________ ______________________________

Authorized Representative Date

Endorsement

# Idaho Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | [illegible] | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation made by or with the knowledge of the Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy;

      (3) Activities or omissions on the part of the "Named Certificate Holder" which increase any hazard insured against, including a failure to comply with loss control recommendations;

      (4) Change in the risk which materially increases the risk of loss after insurance coverage has been issued or renewed including, but not limited to, an increase in exposure to regulation, legislation or court decision;

      (5) Loss or decrease in the Company's reinsurance covering all or part of the risk or exposure by the Policy;

      (6) Determination by the Director that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of this state or any other state; or

      (7) Violation or breach by the "Insured" of any Policy terms or conditions other than nonpayment of premium.

   If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

EXHIBIT " 3 "
PAGE NO. 243

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7)

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If the notice of nonrenewal is mailed less than forty-five (45) days before expiration, the coverage shall remain in effect until forty-five (45) days after the notice is mailed. Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsection 2.a. above and the Company subsequently extends the Policy for ninety (90) days or less at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible, or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium of greater than ten percent (10%);

(2) Reduction in Limits of Liability;

(3) Changes in Deductible; or

(4) Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days before the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice thirty (30) days before the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: ______________________
Authorized Representative

01/17/2008
Date

**Endorsement**

# Illinois Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| LOC 92 138 81-02 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

I. Section VII -- CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect sixty (60) days or less and is not a renewal, this Policy may be canceled by the Company for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company and mailing to the producer of record, if any. Such cancellation shall be effective not less than ten (10) days after the date the notice is mailed if cancelled for nonpayment of premium or not less than thirty (30) days if cancelled for any other reason.

   c. If this Policy has been in effect for more than sixty (60) days or if this Policy is a renewal, the Company may cancel for the following reasons:

      (1) Nonpayment of premium;

      (2) The Policy was obtained through a material misrepresentation;

      (3) Any "Insured" violated any of the terms and conditions of the Policy;

      (4) The risk originally accepted has measurably increased;

      (5) Certification to the Director of the loss of reinsurance by the Company which provided coverage to the "Insured" for all or a substantial part of the underlying risk insured; or

      (6) A determination by the Director that the continuation of the Policy could place the Company in violation of the insurance laws of the State of Illinois.

      If the Company cancels subject to Subsections 1.c.(1) through 1.c.(6) above, the Company shall mail by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company, and mail to the producer of record, if any, written notice of such cancellation. Such cancellation shall be effective not less than ten (10) days after the date the notice is mailed if cancelled for nonpayment of premium or not less than sixty (60) days if cancelled for any other reason. Notice shall state the reason for such cancellation.

   d. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company, and mail to the producer of record, if any, written notice of nonrenewal stating the specific reason for such nonrenewal, at least sixty (60) days prior to the expiration date of this Policy.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. In the event notice of nonrenewal is provided at least thirty-one (31) days, but less than sixty (60) days prior to expiration of the Policy, the Policy shall be extended for a period of sixty (60) days or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be nonrenewed.

d. In the event notice of nonrenewal is provided less than thirty-one (31) days prior to the expiration of the Policy, the Policy shall be extended for a period of one (1) year or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be nonrenewed unless the Company has manifested our willingness to renew at a premium which represents an increase not exceeding thirty percent (30%). The premium for coverage shall be prorated in accordance with the amount of the expiring year's premium, and the Company shall be entitled to this premium for the extension of coverage and such extension may be contingent upon the payment of such premium.

e. The Company is not required to provide written notice of nonrenewal if the Company or a company within the same insurance group has offered to issue a renewal Policy; however, if the Company assigns or transfers this Policy to another company within the same insurance group, then the Company shall provide notice of such assignment or transfer by certified mail to the "Named Certificate Holder" at the last mailing address known by the Company, to the producer of record, if any, at least sixty (60) days prior to the renewal or anniversary date of the Policy.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) An increase in premium by thirty percent (30%) or more;

(2) Changes in the Deductible; or

(3) Changes in coverage that materially alter the Policy.

The Company shall mail by certified mail written notice of the increase or change(s) to the "Named Certificate Holder" at the last mailing address known by the Company, and mail to the producer of record, if any, at least sixty (60) days prior to the renewal or anniversary date of the Policy.

b. In the event notice of conditional renewal is provided at least thirty-one (31) days, but less than sixty (60) days prior to expiration of the Policy, the Policy shall be extended for a period of sixty (60) days or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be renewed subject to any of the conditions in Subsections 3.a.(1) through 3.a.(3) above.

c. In the event notice of conditional renewal is provided less than thirty-one (31) days prior to the expiration of the Policy, the Policy shall be extended for a period of one (1) year or until the effective date of any similar insurance procured by the "Named Certificate Holder", whichever is less, on the same terms and conditions as the Policy sought to be renewed subject to any of the conditions in Subsections 3.a.(1) through 3.a.(3) above unless the Company has manifested its willingness to renew at a premium which represents an increase not exceeding thirty percent (30%). The premium for coverage shall be prorated in accordance with the amount of the expiring year's premium, and the Company shall be entitled to this premium for the extension of coverage and such extension may be contingent upon the payment of such premium.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. Section VII – CONDITIONS, Subsection A. is deleted its entirety and replaced with the following:

A. OTHER INSURANCE

This insurance will share proportionately with other similar coverages the "Insured" may have.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 
Authorized Representative

[date, handwritten]
Date

EXHIBIT " 3 "
PAGE NO. 247

Endorsement

# Indiana Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for ninety (90) days or less, the Company may cancel this Policy by mailing written notice stating the reason for such cancellation, by certified mail or first-class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any, not less than:

(1) Ten (10) days after mailing the cancellation shall be effective if canceled for nonpayment of premium;

(2) Twenty (20) days after the mailing the cancellation shall be effective if canceled due to the "Insured" perpetrating a fraud or material misrepresentation upon the Company; or

(3) Thirty (30) days after the mailing the cancellation shall be effective for any other reason.

c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

(4) The "Insured" under the Policy has failed to pay a premium;

(5) There is a substantial change in the scale of risk covered by the Policy;

(6) The "Insured" has perpetrated a fraud or material misrepresentation upon the Company;

(7) The "Insured" has failed to comply with reasonable safety or loss control recommendations; or

(8) Reinsurance of the risk associated with the Policy has been canceled.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail or first-class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1);

(ii) Twenty (20) days from the date of mailing for the reason set forth in Subsection 1.c.(3); or

(iii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(2), 1.c.(4) or 1.c.(5).

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or first-class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If the "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so, then the Company shall not be required to provide written notice of nonrenewal.

d. Changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to a transfer of the Policy between companies within the same insurance group, the Company shall mail by certified mail or first-class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of such transfer identifying the new company, at least twenty (20) days prior to the expiration date of the Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

[handwritten date] 
Date

Endorsement

# Kansas Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect ninety (90) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Policy was issued because of material misrepresentation;

      (3) Violation of material terms and conditions;

      (4) Unfavorable underwriting factors not present at Policy inception;

      (5) A determination by Commissioner that coverage would create hazardous financial condition to the Company, or be in violation of law; or

      (6) A determination by Commissioner that there is inadequate reinsurance as determined by the Commissioner.

      If the Company cancels subject to Subsections 1.c.(1) through 1.c.(6) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

      Written notice of cancellation shall take effect:

      (i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

      (ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(6).

      Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(6) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   d. If notice is mailed, proof of mailing will be sufficient proof of notice.

   e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The Policy may not be extended to meet notice requirement in Subsection 2.a. above.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to a change in terms or conditions of the Policy, the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy. When there is no change other than a rate change, it is not considered a change in terms or conditions and therefore it is not necessary to send notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 01/17/2003

Authorized Representative | Date

**Endorsement**

# Kentucky Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall be no fewer than fourteen (14) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy;

(3) Discovery of willful or reckless acts or omissions on the part of the "Named Certificate Holder" which increase any hazard insured against;

(4) A change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

(6) The Company is unable to reinsure the risk covered by the Policy; or

(7) A determination by the Commissioner that the continuation of the Policy would place the Company in violation of the Kentucky insurance code or regulations of the Commissioner.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Fourteen (14) days from the date of mailing for the reason set forth in Subsection 1.c.(1).; and

(ii) Seventy-five (75) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least seventy-five (75) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Policy may not be extended to meet notice requirement in Subsection 2.a. above. If proper notice is not given, coverage will be deemed to be renewed for the ensuing "Policy Period" upon payment of the premium under the same terms and conditions until the "Named Certificate Holder" has accepted replacement coverage with another company, or has agreed to nonrenew.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to an increase in premium of twenty five percent (25%) or more the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least seventy-five (75) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] Authorized Representative

01/17/2008 Date

Endorsement

# Louisiana Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for sixty (60) days or less, and the Policy is not a renewal, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than sixty (60) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due. For nonpayment of premium, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed. Notice of cancellation shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy ;

(3) Activities or omissions on the part of the "Named Certificate Holder" which change or increase any hazard insured against, including a failure to comply with loss control recommendations;

(4) Change in the risk which materially increases the risk of loss after insurance coverage has been issued or renewed, including an increase in exposure to regulation, legislation or court decision;

(5) Determination by the commissioner of insurance that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of the state of Louisiana or any other state;

(6) Violation or breach by the "Insured" of any Policy terms or conditions; or

(7) Such other reasons that are approved by the commissioner of insurance.

EXHIBIT " 3 "
PAGE NO. 254

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1).; and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. If the effective date of cancellation falls on a Saturday, Sunday or legal holiday, the cancellation date must be extended until the next business day.

The Company shall provide the "Named Certificate Holder" with written statement setting forth the reason for cancellation where the "Named Certificate Holder" requests such a statement in writing and the "Named Certificate Holder" agrees in writing to hold the Company harmless from liability for any communication giving notice of or specifying the reasons for a cancellation or for any statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation.

A cancellation notice is not required of the Company, nor a statement of reasons, when cancellation for nonpayment of premium is effected by a premium finance agency or other entity pursuant to a power of attorney or other agreement executed by or on behalf of the "Insured".

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. Such notice to the "Named Certificate Holder"shall include loss run information for the period the Policy has been in force within, but not to exceed, the last three (3) years of coverage. The time period between the mailing date of the nonrenewal notice and the effective date of nonrenewal commences on the date of mailing.

b. If the notice of nonrenewal is mailed less than sixty (60) days before expiration, the coverage shall remain in effect under the same terms and conditions until sixty (60) days after the notice is mailed. Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsections 2.a. and 2.b. above and the Company subsequently extends the Policy for ninety (90) days or less at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Rate increase:

(2) Changes in the Deductible;

(3) Reduction in Limits of Liability; or

(4) Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the expiration date of the Policy.

b. If renewal is subject to any condition described in Paragraphs 1.a. through 1.c. above, and the Company fails to provide notice thirty (30) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect at the same rate, terms and conditions until the earlier of the following:

(a) Thirty (30) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2). If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. The conditional renewal notice requirement shall not apply to the following:

(1) Changes in a rate or plan filed with the insurance rating commission and applicable to an entire class of business.

(2) Changes based upon the altered nature or extent of the risk insured.

(3) Changes in Policy forms filed and approved with the commissioner and applicable to an entire class of business.

(4) Changes requested by the "Insured".

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy [signature] ____________ 2/17/2008 ____________

Authorized Representative — Date

EXHIBIT " 3 "
PAGE NO. 256

Endorsement

# Maryland Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 38669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the Company cancels this Policy, the Company shall mail by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of cancellation stating the reasons for cancellation. The Company shall mail this notice no fewer than ten (10) days from the date notice is mailed if cancellation is for nonpayment of premium or no fewer than forty-five (45) days from the date notice is mailed if cancellation is for any other reason. The certified mailing of notice, as aforementioned, shall be sufficient notice and the effective date of cancellation stated in the notice shall become the expiration date of the Policy.

      If notice is mailed, proof of mailing will be sufficient proof of notice.

      If canceled by the Company, the refund of premium shall be computed pro-rata. The cancellation will be effective even if the Company has not made or offered a refund.

      However, if this Policy is financed by a premium finance company and the Company or the premium finance company, or the "Named Certificate Holder" cancels the Policy, the refund will be pro rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

      Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration of this Policy.

      This forty-five (45) day notice shall not be required and this Policy will terminate:

      (1) On the expiration date if:

         (a) The "Named Certificate Holder" fails to perform any obligation in connection with the payment of premium for this Policy or the renewal of this Policy:



EXHIBIT " 3 "
PAGE NO. 257

(b) The Company has indicated a willingness to renew this Policy to the "Named Certificate Holder" or the representatives thereof; or

(c) The "Named Certificate Holder" has notified the Company or the Company's agent that the "Named Certificate Holder" does not want to renew this Policy;

(2) On the effective date of any other insurance Policy issued as a replacement for any insurance afforded by this Policy, with respect to insurance to which both policies apply.

b. The Policy may not be extended to meet nonrenewal notice requirements in Subsection 2.a. above.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Increase in premium by twenty percent (20%) or more;

b. Reduction in Limits of Liability;

c. Increase in Deductible; or

d. Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy R. Russell [signature] ____________________ 2/17/2003 ____________________
Authorized Representative — Date

Endorsement

# Maine Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall take effect no fewer than ten (10) days after receipt of notice. Receipt is deemed to occur three (3) days after the certificate of mailing date. This requires a minimum notice period of thirteen (13) days from the date of mailing. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy or in presenting a "Claim" under the Policy;

(3) A substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to rules, legislation or court decision;

(4) Failure to comply with reasonable loss control recommendations;

(5) A substantial breach of contractual duties, conditions or warranties; or

(6) A determination by the Superintendent that the continuation of a class or block of business to which the Policy belongs will jeopardize the Company's solvency or will place the Company in violation of the insurance law of Maine or any other state.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(6) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 2. of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Thirteen (13) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(6)

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(6) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty-three (33) days prior to the expiration of this Policy (thirty (30) days written notice required for nonrenewal plus three (3) days for mailing).

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsection 2.a. above, and the Company subsequently extends the Policy for ninety (90) days at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. The Company shall mail by certified mail written notice of any change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty-three (33) days prior to the anniversary or expiration date of the Policy.

b. If "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(1) The rates applicable to the terminated Policy; or

(2) The rates presently in effect.

c. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 01/17/2008

Authorized Representative Date

Endorsement

# Michigan Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| FOC 92 138 81-02 | 12-31-2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata. The minimum earned premium on any Policy canceled shall not be less than the pro-rata premium or twenty-five dollars ($25.00), whichever is greater.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: ______________________________
Authorized Representative

______________________________
Date

Endorsement

# Minnesota Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than ninety (90) days, and is not a renewal, this Policy may be canceled by the Company for any reason, including nonpayment of premium, by written notice mailed by certified mail or first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailed to the producer of record, if any. Such cancellation notice shall state the reason for cancellation and when, not less than ten (10) days thereafter, such cancellation shall be effective.

c. If this Policy has been in effect ninety (90) days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Misrepresentation or fraud made by or with the knowledge of the "Insured" in obtaining the Policy or in pursuing a "Claim" under the Policy;

(3) Actions by the "Insured" that have substantially increased or substantially changed the risk insured;

(4) Refusal of the "Insured" to eliminate known conditions that increase the potential for "Damages" after notification by the Company that the condition must be removed;

(5) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the contract;

(6) Loss of reinsurance by the Company which provided coverage to the Company for a significant amount of the underlying risk insured. A notice of cancellation under this clause shall advise the "Named Certificate Holder" that he she or it has ten (10) days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within thirty (30) business days after receipt of the appeal;

(7) A determination by the commissioner that the continuation of the Policy could place the Company in violation of the insurance laws of this state; or

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing the insurance. This provision for cancellation for failure to pay dues does not apply to persons who are retired at sixty-two (62) years of age or older or who are disabled according to social security standards.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail written notice of cancellation by certified mail or first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1).; and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(8).

d. If notice is mailed, United States Postal Service proof of mailing will be sufficient proof the proper notice has been given.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If the Company does not provide proper notice as required in Subsection 2.a. above, the Policy shall continue in force until sixty (60) days after a notice of nonrenewal is received by the "Named Certificate Holder".

c. If notice is mailed, United States Postal Service proof of mailing will be sufficient proof the proper notice has been given.

d. If the "Named Certificate Holder" has obtained replacement coverage or has requested or agreed to nonrenewal, then the Company shall not be required to provide written notice of nonrenewal.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to the following:

(1) Lower Limits of Liability;

(2) Higher Deductible; or

(3) Higher rates, and/or higher rating plan

the Company shall mail by certified mail or first class mail, or deliver, written notice of the increase to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the expiration date of the Policy.

b. If renewal is subject to any of the conditions described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice sixty (60) days before the expiration date of this Policy, the "Named Certificate Holder" may elect to cancel the renewal Policy within the sixty (60) day period after receipt of the notice. Earned premium for the period of coverage, if any, shall be calculated pro rata upon the expiring Policy's rate.

c. If notice is mailed, United States Postal Service proof of mailing will be sufficient proof the proper notice has been given.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy A. Russell
Authorized Representative

01/17/2008
Date

EXHIBIT " 3 "
PAGE NO. 263

Endorsement

# Missouri Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 13669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancels this Policy by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall be mailed no fewer than sixty (60) days prior to the effective date of the cancellation, except where the cancellation is based on one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation affecting the Policy or in the presentation of a "Claim" thereunder or a violation of any of the terms or conditions of a Policy;

(3) Changes in conditions after the effective date of the Policy which have materially increased the hazards originally insured;

(4) The Company's insolvency; or

(5) The Company involuntarily loses reinsurance for the Policy;

In the event the Company cancel subject to Subsections 1.b.(1) through 1.b.(5) above, such cancellation shall be mailed by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, no fewer than ten (10) days prior to the effective date.

c. If the Company cancels this Policy, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

d. Any notice of cancellation will state the specific reason for such cancellation.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. An assignment or transfer of this Policy among affiliated companies within an insurance holding company system is not considered a cancellation in the state of Missouri.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the effective date of the nonrenewal.

b. Any notice of nonrenewal will state the specific reason for such nonrenewal.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. An assignment or transfer of this Policy among affiliated companies within an insurance holding company system is not considered a nonrenewal in the state of Missouri.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to an increase in premium by twenty-five percent (25%) or more, then the Company shall mail by certified mail, a "premium alteration requiring notification" to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the expiration date of the Policy.

b. If the Company fails to meet this notice requirement, the "Named Certificate Holder" shall have the option of continuing the Policy for the remainder of the notice period plus an additional thirty (30) days at the premium rate of the existing Policy. This provision does not apply if the Company has offered to renew the Policy without such an increase in premium or if the "Named Certificate Holder" fails to pay a premium due or any advance premium required by the Company for nonrenewal.

c. For purposes of this section, "premium alteration requiring notification" means an annual increase in premium of twenty-five percent (25%) or more, exclusive of premium increases due to a change in the operations of the "named insured" which increases either the hazard insured against or the individual loss characteristics, or due to a change in the magnitude of the exposure basis, including, without limitation, increases in payroll or sales.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy R. Russell [signature]
Authorized Representative

01/17/2008
Date

Endorsement

# Mississippi Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. The Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed unless this Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due. In that event, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

   d. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration of this Policy.

   b. If notice is mailed, proof of mailing will be sufficient proof of notice.

   c. The Policy may not be extended to meet nonrenewal notice requirements in Subsection 2.a. above.

   d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

   If the Company elects to renew this Policy and the renewal is subject to a reduction of coverage, the Company shall mail by certified mail written notice of the change(s) to the at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.



EXHIBIT " 3 "
PAGE NO. 266

I. Mailing Time

When calculating the time period for sending a notice the first day is not included in the count and the last day is included unless the last day is a Saturday, Sunday or legal holiday, then the next business day is the last day. All notices must allow five (5) to ten (10) days mailing time.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy M. Pascoal
Authorized Representative

01/17/2008
Date

Endorsement

# Montana Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 38669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy is in effect sixty (60) days or more, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) For reasons specifically allowed by statute; or

      (3) On grounds stated in the Policy which pertain to the following:

         (a) Material misrepresentation;

         (b) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk when the contract was written;

         (c) Substantial breaches of contractual duties, conditions or warranties;

         (d) Determination by the commissioner that continuation of the Policy would place the Company in violation of this code;

         (e) The Company's financial impairment; or

         (f) Any other reason approved by the commissioner.

      If the Company cancels subject to Subsections 1.c.(1) through 1.c.(3) above, shall mail by certified mail written notice of cancellation to the "Named Certificate Holder" at the address shown in Item 2. of the "Certificate of Insurance", and mail to the producer of record, if any. Written notice of cancellation shall take effect ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) through 1.c.(3).

      Any written notice of cancellation subject Subsections 1.c.(1) through 1.c.(3) shall state the reason for such cancellation and will be accompanied by a refund of unearned premium, except a premium that has been financed.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the expiration date of the Policy.

b.. The state law of Montana prohibits midterm increases in premium. If the "Named Certificate Holder" prepays the premium for a specific period, the Company cannot increase the rate charged or decrease the coverage provided for the prepaid "Policy Period" unless:

(1) There is a change in risk during the period because of the addition or removal of persons or property that was included in the rate at last renewal;

(2) The risk was misrepresented by the "Insured"; or

(3) The "Named Certificate Holder" requests a change in the Policy that increases the risk as a result of such request.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy R. Russell (signature)
Authorized Representative

01/17/2008
Date



EXHIBIT " 3 "
PAGE NO. 269

**Endorsement**

# North Carolina Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| LOC 92 138 81-02 | 12/31/2007 | 38669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII - CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than fifteen (15) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium in accordance with the Policy terms;

(2) An act or omission by the "Named Certificate Holder" or his representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining the Policy, continuing the Policy, or presenting a "Claim" under the Policy;

(3) Increase hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(4) Substantial breach of contractual duties, conditions, or warranties that materially affects the insurability of the risk;

(5) A fraudulent act against the Company by the "Insured" or his or her representative that materially affects the insurability of the risk;

(6) Willful failure by the "Named Certificate Holder" or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by the Company;

(7) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S.58-41-30;

(8) Conviction of the "Insured" of a crime arising out of acts that materially affect the insurability of the risk; or

(9) A determination by the commissioner that the continuation of the Policy would place the Company in violation of the laws of the state of North Carolina.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(9) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect fifteen (15) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) through 1.c.(9) above.

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(9) above shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

EXHIBIT " 3 "
PAGE NO. 270

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. The Company may refuse to renew a Policy that has been written for a "Policy Period" of one (1) year or less at the Policy's expiration date by mailing written notice of nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" at least forty-five (45) days prior to the expiration date of the Policy. The Company may refuse to renew a Policy that has been written for a "Policy Period" of more than one (1) year at the Policy anniversary date by mailing written notice of nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" at least forty-five (45) days prior to the anniversary date of the Policy.

b. The Company must file a plan with the commissioner at least fifteen (15) days before the issuance of a nonrenewal because of loss or reduction of reinsurance.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" has insurance elsewhere;

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so; or

(3) The "Named Certificate Holder" has requested or agreed to nonrenewal.

e. The Policy may not be extended to meet nonrenewal notice requirements in Subsections 2.a. above.

f. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to the following:

(1) Reduction in coverage;

(2) Increase in Deductible;

(3) Impose any kind of surcharge; or

(4) Increase premium rate.

b. If the Policy being conditionally renewed was written for a "Policy Period" of one (1) year or less, the renewal terms and statement of premium due must be mailed at least forty-five (45) days prior to the expiration date of the Policy. If the Policy being conditionally renewed was written for a "Policy Period" of more than one (1) year, the renewal terms and statement of premium due must be mailed at least forty-five (45) days prior to the anniversary date of the Policy. The Company shall mail by certified mail written notice of the changes to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailed to the producer of record, if any.

c. If the Company fails to furnish the conditional renewal terms and statement of premium due in the manner required in Subsection 3.b. above, the "Named Certificate Holder" may cancel the renewal Policy within the thirty (30) day period following receipt of the conditional renewal terms and statement of premium due. For refund purposes, earned premium for any period of coverage shall be calculated pro-rata upon the premium applicable to the Policy being renewed instead of the renewal Policy.

d. If the Company fails to comply with the forty-five (45) day written notice requirement in Subsection 3.b. above, the "Named Certificate Holder" is entitled to the option of coverage under the Policy being renewed and at the same cost of that Policy until forty-five (45) days have elapsed after the Company have provided the "Named Certificate Holder" with the notice.

e. If a Policy has been issued for a "Policy Period" longer than one (1) year, and for additional consideration a premium has been guaranteed for the entire "Policy Period", it is unlawful for the Company to increase that premium or require the Deductible, or other Policy or coverage provisions less favorable to the "Named Certificate Holder" during the term of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy H. Rascal 01/17/2008

Authorized Representative Date

**Endorsement**

# North Dakota Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|
| [illegible] 92 138 81-02 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect less than ninety (90) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy is in effect ninety (90) days or more, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Misrepresentation or fraud made by or with the knowledge of the "Insured" in obtaining the Policy in pursuing a "Claim" under the Policy;

      (3) Actions by the "Insured" that have substantially increased or substantially changed the risk insured;

      (4) Refusal of the "Insured" to eliminate known conditions that increase the potential for loss after notification by the Company that the condition must be removed;

      (5) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the contract;

      (6) Loss of reinsurance by the Company which provided coverage to the Company for a significant amount of the underlying risk insured. Any notice of cancellation pursuant this subsection must advise the "Named Certificate Holder" that the "Named Certificate Holder" has ten (10) days from the date of receipt of notice to appeal the cancellation to the insurance commissioner and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within five (5) days after receipt of the appeal;

      (7) A determination by the insurance commissioner that the continuation of the Policy could place the Company in violation of the insurance laws of the state of North Dakota;

      (8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance; except cancellation for failure to pay dues does not apply to persons who are retired at sixty-two (62) years of age or older or to any person who is disabled according to social security standards; or

      (9) A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard is insured against.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(9) above, the Company shall mail by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(9).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(9) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If this Policy has a "Policy Period" longer than one (1) year, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. The Company must provide such notice at least thirty (30) days prior to the anniversary date of the Policy. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. A concealment, either intentional or unintentional, is grounds for the injured party to rescind the Policy. An intentional and fraudulent omission to communicate information that proves or tends to prove the falsity of a warranty entitles the Company to rescind the Policy.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

g. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) If the "Named Certificate Holder" is transferred to a company within the same insurance group; or

(2) If the "Named Certificate Holder" has insurance elsewhere, has accepted replacement coverage, or has requested or agreed to nonrenewal.

d. The Policy may not be extended to meet nonrenewal notice requirements in Subsection 2.a. above. Failure to comply with notice requirements in Subsection 2.a. above results in an ineffective nonrenewal.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to the following:

a. Less favorable terms as to the dollar amount of coverage or Deductible; or

b. Renewal rates are in excess of fifteen percent (15%) of the expiring rate, unless the change in rate relates to guide "A" rates or excess rates, also known as "consent to rate".

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least ten (10) days prior to the expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: ______________________ ______________________

Authorized Representative Date

**Endorsement**

# Nebraska Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect more than sixty (60) days, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) The Policy was obtained through a material misrepresentation;

(3) Any "Insured" has submitted a fraudulent "Claim";

(4) Any "Insured" has violated any of the terms and conditions of the Policy;

(5) The risk originally accepted has substantially increased;

(6) Certification to the Director of Insurance of loss of reinsurance by the Company which provided coverage to the Company for all or a substantial part of the underlying risk insured; or

(7) The determination by the Director of Insurance that the continuation of the Policy could place the Company in violation of the insurance laws of this state.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

Any written notice of cancellation subject Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

f. The Company's substitution of insurance upon renewal which results in substantially equivalent coverage shall not be considered a cancellation of a Policy.

g. The transfer of a Policy between companies within the same insurance group shall be considered a cancellation of a Policy only if the transfer results in Policy coverage or rates substantially less favorable to the "Named Certificate Holder".

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 2 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. Any written notice of nonrenewal shall state the reason for such nonrenewal.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Policies may not be extended to meet notice requirements.

d. The Company's substitution of insurance upon renewal which results in substantially equivalent coverage shall not be considered a refusal to renew a Policy.

e. Changes in premium, Limits of Liability or coverage are considered refusals to renew.

f. The transfer of a Policy between companies within the same insurance group shall be considered a refusal to renew a Policy only if the transfer results in Policy coverage or rates substantially less favorable to the "Named Certificate Holder".

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to the following reasons:

a. Substantial changes in the terms and conditions of the Policy; or

b. Substantial increase in the renewal premium.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy J. Pascuk
Authorized Representative

01/17/2005
Date

EXHIBIT " 3 "
PAGE NO. 277

Endorsement

# New Hampshire Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 78669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If the Policy has been in effect for sixty (60) days or more, the Policy may be canceled by the Company for the following reasons:

(1) Nonpayment of premium;

(2) Substantial increase in hazard; provided that cancellation for this reason shall be effective only after prior approval of the commissioner ; or

(3) Fraud or material misrepresentation affecting the Policy or in the presentation of a "Claim" thereunder, or violation of any of the terms or conditions of the Policy.

If the Company cancels subject to Subsections 1.c.(1) through 1.c. (3) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(2) and

(ii) Sixty (60) days from the date of mailing for the reason set forth in Subsction 1.c.(3).

d. Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c. (3) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. The Company shall not be held liable in any "claim" or suit for "damages" arising solely from the Company's compliance with the requirement that the reason for cancellation be specified.

e. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. The Policy may be nonrenew by the Company for the following reasons:

(1) An increase in premium greater than twenty-five percent (25%);

(2) Increases in Deductible;

(3) Decrease in coverage; or

(4) Reduction in the Limits of Liability.

If the Company elects not to renew this Policy subject to any of the above reasons, the Company shall mail written notice of nonrenewal by certified mail stating the reason for nonrenewal to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date.

If the Company fails to provide timely written notice required by the paragraph above, the Company may not increase the premium more than twenty-five percent (25%) for a one (1) year period following the anniversary or expiration date.

If the Company fails to provide timely written notice required by the paragraph above, this Policy cannot be extended to meet the notice requirement.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The transfer of a Policy between companies with the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew the Policy and the renewal is subject to any of the following:

(1) A renewal premium quote less than current year premium, the same as current year premium, or greater than current year premium by no more than twenty-five percent (25%);

(2) A renewal premium quote with an increase of greater than twenty-five percent (25%);

(3) Decrease in coverage; or

(4) Reduction in the Limits of Liability.

b. The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least:

(1) Thirty (30) days prior to the anniversary or expiration date of the Policy for reason set forth in Paragraph 1.a.; and

(2) Sixty (60) days prior to the anniversary or expiration date of the Policy for reasons set forth in Paragraphs 1.b. through 1.d.

If renewal is subject to reason in Subsction 3.a.(1) above, and the Company fails to provide the written notice thirty (30) days prior to the anniversary or expiration date, then renewal must be provided at expiring rates, on a pro-rata basis, until the "Named Certificate Holder" has had thirty (30) days notice. Also, for reason in Subsection 3.a.(1) above, if the Company has the necessary information to issue a renewal Policy, the Company shall confirm the renewal premium, by written notice mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

If renewal is subject to reason in Subsection 3.a.(2) above, and the Company fails to provide the written notice sixty (60) days prior to anniversary or expiration date of the Policy, the Company may not increase the premium more than twenty-five percent (25%) for a one (1) year period following the anniversary or expiration date.

If renewal is subject to reasons in Subsections 3.a.(3) through 3.a.(4) the Policy anniversary or expiration date cannot be extended or shortened in order to circumvent the advance notice requirements above unless mutually agreed to by the Company and the "Named Certificate Holder".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy [signature] Authorized Representative

01/17/2003 Date

Endorsement

# New Jersey Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Moral hazard, as defined at N.J.A.C. 11:1-20.2(f) as follows:

(a) The risk, danger or probability that the "Insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an "Insured" that will increase the probability of such a destruction may be considered a moral hazard; and

(b) The substantial risk, danger or probability that the character, circumstances or personal habits of the "Insured" may increase the possibility of loss or liability for which the Company will be held responsible. Any change in the character or circumstances of an individual corporate, partnership or other "Insured" that will increase the probability of such a loss or liability may be considered a moral hazard;

(3) Material misrepresentation or nondisclosure to the Company of a material fact at the time of acceptance of the risk;

(4) Increase hazard or material change in the risk assumed which could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affecting insurability of the risk;

Lack of cooperation from the "Insured" on loss control matters materially affecting insurability of the risk;

(6) Fraudulent acts against the Company by the "Insured" or its representatives that materially affect the nature of the risk insured;

(7) Loss of or reduction in available insurance capacity. For the purposes of this subsection, loss of or reduction in available insurance capacity exists if:

(a) An insurance department or court of competent jurisdiction has declared the Company to be financially impaired or unsound, which shall include such actions as suspension, conservatorship, rehabilitation or liquidation; or

(b) Based upon information set forth in the Company's annual statements, the Company has experienced a significant deterioration in the Company's financial condition during the most recent annual statement period resulting in its designation by the National Association of Insurance Commissioners (NAIC) as being in need of "immediate attention", and the Company's:

(i) Ratio of net premium to surplus to "Named Certificate Holder" has gone above four (4) to one (1) and its surplus to Policyholders has fallen below twenty-five percent (25%) of net loss and loss expense reserves;

(ii) Ratio of net premium to surplus to "Named Certificate Holder" has increased to at least six (6) to one (1); or

(iii) Ratio of net losses and loss reserves to surplus to "Named Certificate Holder" has increased to at least six (6) to one (1).

(8) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal thereof;

(9) Loss of or substantial changes in applicable reinsurance. For the purposes of this subsection, loss of or substantial changes in applicable reinsurance shall be deemed to exist if any of the following have occurred:

(a) Termination by the reinsurer of treaty or facultative reinsurance affecting the individual risk or line, class or subclass of insurance, as applicable, proposed for cancellation and/or nonrenewal;

(b) Substantial reduction in the amount of available reinsurance or other changes to such contracts which effectively prohibit the Company from providing coverage at the same Limits of Liability and terms as the existing Policy; or

(c) Changes in the financial condition of the reinsurer which adversely affect its ability to honor its obligations. A change in the financial condition of the reinsurer shall be evidenced by an order issued by an insurance department or court of competent jurisdiction declaring the Company to be financially impaired or unsound, which shall include such actions as suspension, conservatorship, rehabilitation or liquidation;

(10) Failure by the "Insured" to comply with any federal, state or local fire, health, safety, building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within sixty (60) days of written notification of a violation of any such law, regulation or ordinance;

(11) Failure by the "Insured" to provide reasonable and necessary underwriting information to the Company upon written request therefor and a reasonable opportunity to respond; or

(12) Agency termination, provided:

(a) The Company documents that replacement coverage at comparable rates and terms has been provided to the "Named Certificate Holder", and the Company has informed the "Named Certificate Holder", in writing, of his or her right to continue coverage with the Company; or

(b) The Company has informed the "Named Certificate Holder", in writing, of his or her right to continue coverage with the Company and the "Named Certificate Holder" has agreed, in writing, to the cancellation or nonrenewal based upon the termination of his or her appointed agent.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(13) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1), written notice set forth in Subsection 1.c.(1) must state the amount of premium, when it is due and the consequences of nonpayment by due date;

(ii) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(2); and

(iii) Not more than one hundred and twenty (120) days nor less than thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(3) through 1.c.(13)

Any written notice of cancellation subject to Subsections 1.c.(1)through 1.c.(13) shall state in detail the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. When calculating the time period for sending written notice of cancellation, the first day is not included in the count and the last day is included unless it is a Saturday, Sunday or legal holiday, then the next business day is the last day.

d. All notices of cancellation, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the cancellation with the New Jersey Department of Insurance, Division of Licensing and Enforcement, P.O. Box 325, Trenton, New Jersey 08625-0325. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata. Whenever this Policy is canceled, the Company on notice thereof shall return to the "Named Certificate Holder", within a reasonable time frame not to exceed sixty (60) days of cancellation or notice whichever occurs last, on a short rate basis the amount of gross unearned premium. In the event that the Company fails to return the gross unearned premiums to the "Named Certificate Holder" within a reasonable time frame not to exceed sixty (60) days, the Company shall, as a penalty, in addition to the gross unearned premium, return to the "Named Certificate Holder" an additional amount equal to five percent (5%) of the gross unearned premium computed on a monthly basis for each month or part thereof past the final date on which the refund was due.

g. The Company shall not be required to provide notice of cancellation if the "Named Certificate Holder" has replaced coverage elsewhere or has otherwise specifically requested cancellation. The Company must, however, maintain in its file properly documented proof that cancellation was made at the request of the "Named Certificate Holder". Where the cancellation request is submitted by the first "named insured's" authorized representative, the Company must contain documentation that the authorized representative has been specifically authorized by the "Named Certificate Holder" to convey the cancellation request to the Company.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, not more than one hundred and twenty (120) days nor less than thirty (30) days prior to the expiration of this Policy.

b. The Company may nonrenew the Policy for the reasons set forth in Cancellation section Subsections 1.c.(1) through 1.c.(13) above. The Policy may also be nonrenewed based upon adverse loss experience; if using adverse loss experience as a reason for nonrenewal, the type of loss experience must be specifically identified in the written notice of nonrenewal.

c. If the Company fail to provide written notice of nonrenewal as required in Subsection 2.(a). above, the coverage shall remain in effect at the same terms and premium until proper written notice of nonrenewal is mailed. Policy may be extended in order to comply with notice requirements. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. All notices of nonrenewal, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the "Named Certificate Holder" that the "Named Certificate Holder" on behalf of the "Insured" may file a written complaint about the nonrenewal with the New Jersey Department of Insurance, Division of Licensing and Enforcement, P.O. Box 325, Trenton, New Jersey 08625-0325. The statement shall also advise the "Named Certificate Holder" to contact the Insurance Department immediately, in the event he, she or it wishes to file a complaint.

f. The Company may replace this Policy with a Policy issued by another company within the same insurance group under common management and control, provided the Company obtains from the "Named Certificate Holder" consent to do so and maintains records of such action.

g. The Company is not require to provide written notice of nonrenewal if the "Named Certificate Holder" has obtained replacement coverage elsewhere or agreed in writing to do so. The Company must maintain in the Company's file properly documented proof that termination was made at the request of the "Named Certificate Holder". Where the termination request is submitted by the "Named Certificate Holder" authorized representative, the Company's file must contain documentation that the authorized representative has been specifically authorized by the "Named Certificate Holder" to convey such termination request to the Company.

h. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. The Company shall mail by certified mail written notice of any change(s) of renewal terms to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, not more than one hundred and twenty (120) days nor less than thirty (30) days prior to the expiration date of the Policy. When calculating the time period for sending written notice of cancellation, the first day is not included in the count and the last day is included unless it is a Saturday, Sunday or legal holiday, then the next business day is the last day.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature] 01/17/2008
Authorized Representative Date

Endorsement

# New Mexico Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, this Policy may be canceled by the Company by mailing written notice to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than fifteen (15) days from the date the notice is mailed unless the Policy is canceled because the "Named Certificate Holder" has failed to pay a premium when due. For nonpayment of premium, such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed.

c. If this Policy is in effect for sixty (60) days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) There has been a substantial change in the risk assumed by the Company since the Policy was issued;

(3) The Policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company;

(4) Willful and negligent acts or omission by the "Insured" has substantially increased the hazards insured against; or

(5) The "Insured" has presented a "Claim" based on fraud or material misrepresentation.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice shall take effect:

(iii) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1);

(iv) Thirty (30) days from the date of mailing for the reason set forth in Subsection 1.c.(2)

(v) Fifteen (15) days from the date of mailing for the reason set forth in Subsections 1.c.(3) through 1.c.(5).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation.

d. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration date of this Policy.

3. Conditional Renewal

If the Company elects to renew this Policy, and the renewal is subject to the following:

a. Any change in Limits of Liability;

b. Restriction of coverage;

c. Change in Deductible; or

d. Any change in the required limits of the underlying coverage for an umbrella or excess liability Policy.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the effective date of the change(s).

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: Timothy R. Pascal
Authorized Representative

01/17/2008
Date

Endorsement

# Nevada Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect seventy (70) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than seventy (70) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Conviction of the "Insured" of a crime arising out of acts increasing the hazard insured against;

      (3) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a "Claim" hereunder;

      (4) Discovery of an act or omission; or a violation of any condition of the Policy which occurred after the first effective date of the current Policy and substantially and materially increases the hazard insured against;

      (5) A material change in the nature or extent of the risk, occurring after the first effective date of the current Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

      (6) A determination by the Commissioner that continuation of the Company's present volume of premiums would jeopardize the Company's solvency or be hazardous to the interests of "Insureds", its creditors or the public; or

      (7) A determination by the Commissioner that the continuation of the Policy would violate, or place the Company in violation of, any provision of the code.

   If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

   Written notice of cancellation shall take effect:

   (i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

   (ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

   Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If this Policy is longer than one (1) year, the Company may cancel this Policy for any reason by mailing written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than sixty (60) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" agreed to nonrenewal;

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so; or

(3) If the Policy is expressly designated as nonrenewable by terms and conditions approved or deemed to be approved by the Commissioner.

d. If the Company fails to provide a timely notice of nonrenewal described in Subsection 2.a. above, the Company shall provide the "Named Certificate Holder" with a Policy with identical terms and conditions as the expiring Policy. Policy may not be extended in order to comply with notice requirement. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Different rates; or

b. Different terms.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: *[signature]* 

Authorized Representative

01/17/2008

Date

# New York Regulation 121 and 107 Notice And Disclosure Statement

ZURICH

New York Regulation 121 (Claims Made Policy)

This Policy is written on a Claims Made basis. This Policy provides no coverage for "Claims" arising out of any negligent act, error or omission, or "Personal Injury" caused by an offense which took place prior to the "Retroactive Date". This Policy only covers "Claims" made against a "Named Certificate Holder" while the Policy remains in effect and within the Automatic Extended Reporting Period unless the "Named Certificate Holder" purchases an Optional Extended Reporting Period.

Claims Made rates are comparatively lower than occurrence rates and the "Named Certificate Holder" can expect substantial annual premium increases, independent of overall rate level increases, until the Claims Made relationship reaches maturity.

Please be advised that upon "Termination of Coverage", the "Named Certificate Holder" is entitled to an Automatic Extended Reporting Period and the "Named Certificate Holder" may purchase an Optional Extended Reporting Period.

Please seriously consider purchasing an Optional Extended Reporting Period. For a Claims Made policy, in the event of "Termination of Coverage" the "Named Certificate Holder" may purchase an Optional Extended Reporting Period during which any "Claim" first made shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" which occurred before the "Termination of Coverage" and on or after the "Retroactive Date". Consequently, the "Named Certificate Holder's" choice between accepting or declining the purchase of an Optional Extended Reporting Period is important.

The Company offers the following Optional Extended Reporting Periods (please refer to Section IX. of the New York Amendatory Endorsement for complete information):

Optional Extended Reporting Period – "Named Certificate Holder"

a. Three (3) years at two hundred (200%) of annual premium;

b. Five (5) years at three hundred (300%) of annual premium; or

c. Unlimited amount of time at four hundred (400%) of annual premium.

Options a. and b. above are available only to those "Named Certificate Holders" who, before the "Termination of Coverage": (i) retired from the business of providing "Professional Services" in accordance with the formal retirement procedure of the "Additional Insured"; (ii) became totally and permanently disabled in accordance with formal disability procedures of the "Additional Insured"; or (iii) died.

New York Regulation 107 (50% "Defense Costs" Offset)

The "Named Certificate Holder" hereby acknowledges that he or she is aware that the Limits of Liability shall be reduced by up to fifty percent (50%) by "Defense Costs" and, in such event, subject to the terms and conditions of the Policy, the Company issuing the Policy shall be liable for "Defense Costs" exceeding that fifty percent (50%).

President

Corporate Secretary

EXHIBIT " 3 "
PAGE NO. 289

Endorsement

# New York Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 38669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

**I.** The Preamble of the Policy is deleted in its entirety and replaced with the following:

THIS POLICY PROVIDES CLAIMS MADE COVERAGE
PLEASE READ THE ENTIRE POLICY CAREFULLY

**THIS POLICY PROVIDES CLAIMS MADE COVERAGE. "CLAIMS" MUST FIRST BE MADE TO THE COMPANY DURING THE "CERTIFICATE PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD OF THIS POLICY. THE PAYMENT OF "DEFENSE COSTS" REDUCES THE LIMITS OF LIABILITY.**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine an "Insured's" rights, duties and what is and is not covered.

This Policy provides insurance to the "Named Certificate Holder" shown in Item 1 of the "Certificate of Insurance" subject to the "Master Policy" Declarations issued to the "Named Insured". Unless otherwise stated, the phrase **the Policy** shall refer only to the insurance provided by the "Certificate of Insurance" and shall not refer to the "Master Policy" Declarations. Similarly, the phrase **Limits of Liability** shall refer to the Limits of Liability identified in the "Certificate of Insurance". The word **Company** shall refer to the company providing this insurance.

Refer to Section II – DEFINITIONS for the special meaning of words and phrases that appear in quotations.

In consideration of the payment of premium and in reliance upon the statements made by the "Additional Insured" in the application and its attachments and any material submitted therewith, all of which are made a part hereof, and subject to the "Certificate of Insurance" and the limitations, conditions, provisions and terms of this Policy (including any endorsements hereto), the Company and the "Named Certificate Holders" agree as follows:

**II.** Section I – INSURING AGREEMENT, Subsections A. and B. are deleted in their entirety and replaced with the following:

**I. INSURING AGREEMENTS**

A. COVERAGE – PROFESSIONAL LIABILITY

The Company shall pay on behalf of the "Insured", subject to the Limits of Liability shown in Item 4. of the "Certificate of Insurance", all sums in excess of the Deductible shown in Item 6. of the "Certificate of Insurance" that the "Insured" is legally obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made to the Company in writing during the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1. The "Claim" arises out of a negligent act, error or omission of the "Insured" in rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession as an "Agent", "General Agent", notary public, or "Registered Representative" while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such negligent act, error or omission occurred on or after the "Retroactive Date" and before the end of the "Certificate Period"; or

2. The "Claim" is for a "Personal Injury" caused by an offense arising out of rendering or failing to render "Professional Services" for others in the conduct of the "Named Certificate Holder's" profession identified in Section I – INSURING AGREEMENTS, Subsection A.1. above while there is in effect a contract between the "Named Certificate Holder" and the "Additional Insured"; and such "Personal Injury" occurred on or after the "Retroactive Date" and before the end of the "Certificate Period".



EXHIBIT " 3 "
PAGE NO. 290

B. COVERAGE - VICARIOUS LIABILITY

The Company shall pay on behalf of the "Additional Insured", subject to the shared Limits of Liability, all sums i excess of the Deductible shown in Item 6 of the "Certificate of Insurance" that the "Additional Insured" is legall obligated to pay as "Damages" and "Defense Costs" because of a "Claim" first made to the Company in writing durin the "Certificate Period", or any applicable Extended Reporting Period of this Policy, provided that:

1. The "Claim" would otherwise be insured under Section I – INSURING AGREEMENTS, Subsection A. and is no due to any actual or alleged negligent act, error or omission or "Personal Injury" of the "Additional Insured";

2. The Limits of Liability available to the "Additional Insured" for such "Claim" shall be shared with the Limits of Liability that are applicable to the "Named Certificate Holder". Such Limits of Liability shall not be in addition to the "Named Certificate Holder's" Limits of Liability;

3. The "Additional Insured" shall be subject to all of the terms, conditions, limitations and exclusions of this Policy to the same extent as the "Insured" and shall not be entitled to any rights greater than those available to the "Insured"; and

4. Upon the request of the Company, the "Additional Insured" shall pay the Deductible on behalf of the applicable "Named Certificate Holder" for a "Claim" for which the "Additional Insured" is afforded coverage under the Policy.

III. The following is added to Section I – INSURING AGREEMENTS, Subsection C.:

When the Limits of Liability actually have been exhausted in payment of "Damages" or "Defense Costs", the Company will notify the "Named Certificate Holder" or the "Additional Insured", in writing, as soon as practicable that such Limits of Liability have been exhausted and the Company's duty to defend any "Claims" seeking "Damages" subject to those Limits of Liability has ended.

The Company will initiate and cooperate in the transfer of control to the "Named Certificate Holder" or the "Additional Insured" all "Claims" when the Limits of Liability are about to be exhausted. The "Named Certificate Holder" or the "Additional Insured" must cooperate in the transfer of control of said "Claims".

The Company agrees to take such steps as it deems appropriate to avoid a default in or to continue the defense of any such "Claim" until such transfer is completed, provided the "Named Certificate Holder" or the "Additional Insured" is cooperating in completing such transfer. The Company will take no action whatsoever with respect to any "Claim" seeking "Damages" that would have been subject to the Limits of Liability had they not been exhausted, if the "Claim" is reported to the Company after the Limits of Liability have been exhausted.

The "Named Certificate Holder" or the "Additional Insured" involved in a "Claim" seeking "Damages" subject to the Limit of Liability, must arrange for the defense of such "Claim" within such time period as agreed to between the "Named Certificate Holder" or the "Additional Insured" and the Company. Absent any such agreement, arrangements for the defense of such "Claim" must be made as soon as practicable.

IV. Section II – DEFINITIONS, Subsection H.4. is deleted in its entirety. The following is added to Section I – INSURING AGREEMENTS:

SUPPLEMENTARY PAYMENT

Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the amount available for the judgment under this Policy. However, "Defense Costs" does not include remunerations of an "Insured's" or the Company's regular employees or officials or independent adjusters. This payment will not reduce the Limits of Liability.

V. Section II – DEFINITIONS, Subsection J.3. is deleted in its entirety and replaced with the following:

3. Any person acting on behalf of the "Named Certificate Holder" who was or is an employee of the "Named Certificate Holder" or the "Named Certificate Holder's" business entity, but only with respect to "Professional Services" provided by the "Named Certificate Holder"; or

VI. Section II – DEFINITIONS, Subsection T. is deleted in its entirety and replaced with the following:

T. "Termination of Coverage" means the earlier of the following:

1. The nonrenewal of this Policy;

2. The cancellation of this Policy; or

3. A decrease in Limits of Liability, a reduction of coverage, an increase in Deductible, a new exclusion or any othe change in coverage less favorable to the "Named Certificate Holder".

VII. Section III – LIMITS OF LIABILITY, DEDUCTIBLE AND MULTIPLE "CLAIMS" AND CLAIMANTS, Subsections A. an B. are deleted in their entirety and replaced with the following:

A. The Limits of Liability – Aggregate Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" i the most the Company will pay for all "Damages" and "Defense Costs" arising out of "Claims" against the "Name Certificate Holder", except for those "Defense Costs" which may be in addition to the Limit of Liability as set forth in the Limit of Liability – Each "Claim" Each "Named Certificate Holder" in the paragraph below.

B. Subject to Subsection A. above, the Limits of Liability – Each "Claim"/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" shall apply in excess of the Deductible shown in Item 6 of the "Certificate of Insurance" and is the most the Company will pay for "Damages" and up to fifty percent (50%) of the Each "Claim" Each "Named Certificate Holder" Limit of Liability for "Defense Costs". Any "Defense Costs" exceeding fifty percent (50%) of the Each "Claim" Each "Named Certificate Holder" Limit of Liability for "Defense Costs" are in addition to the Limit of Liability.

If the Aggregate/Each "Named Certificate Holder" Limit of Liability is exhausted by any settlement or judgment of any "Claim", the Company's obligation under this Policy shall be terminated and the Company shall have the right to withdraw from the further investigation or defense of any pending "Claim" by tendering control of such investigation or defense to the "Named Certificate Holder" or the "Additional Insured", and the "Named Certificate Holder" or the "Additional Insured" agrees, as a condition to the issuance of this Policy, to accept such tender.

VIII. Section IV – EXTENDED REPORTING PERIODS, Subsection A. is deleted and replaced with the following:

A. Automatic Extended Reporting Period – Cancellation Or Nonrenewal Of The "Master Policy"

In the event of cancellation or nonrenewal of the "Master Policy", the "Named Certificate Holder" shall have a free Automatic Extended Reporting Period of sixty (60) days after the date of such cancellation or nonrenewal to report in writing to the Company any "Claim" which is first made prior to the such cancellation or nonrenewal and arises out of a negligent act, error or omission or "Personal Injury" which occurred before the date of such cancellation or nonrenewal of the "Master Policy" and on or after the "Retroactive Date". The Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period, if purchased.

If a "Claim" is covered under this provision and any other valid and collectible insurance, this Policy shall be excess over any such other valid and collectible insurance whether it is primary, excess, contingent or otherwise.

IX. Section IV – EXTENDED REPORTING PERIODS, Subsections B., C., D., E., and F. are deleted in their entirety and replaced with the following:

B. Extended Reporting Periods – "Named Certificate Holder"

1. Automatic Extended Reporting Period of One (1) Year – "Named Certificate Holder"

In the event of "Termination of Coverage" the "Named Certificate Holder" shall have an Automatic Extended Reporting Period of one (1) year commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". This Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period, if purchased.

The Automatic Extended Reporting Period does not extend the "Certificate Period", change the scope of coverage, or reinstate or increase the Limits of Liability available under the "Certificate of Insurance". The Limits of Liability applicable to this Automatic Extended Reporting Period shall be the Limits of Liability remaining under the "Certificate of Insurance" at the time of "Termination of Coverage".

2. Optional Extended Reporting Period – "Named Certificate Holder"

a. Optional Extended Reporting Period of Three (3) Years

In the event of "Termination of Coverage" the "Named Certificate Holder" may purchase an Optional Extended Reporting Period of three (3) years commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or

after the "Retroactive Date". To purchase this Optional Extended Reporting Period of three (3) years, the "Name Certificate Holder" shall pay an additional premium equal to two hundred percent (200%) of the "Name Certificate Holder's" last annual premium within of sixty (60) days of "Termination of Coverage".

b. Optional Extended Reporting Period of Five (5) Years

If before "Termination of Coverage" the "Named Certificate Holder": retires from the business of providing "Professional Services" in accordance with formal retirement procedures of the "Additional Insured"; becomes totally and permanently disabled in accordance with formal disability procedures of the "Additional Insured"; or dies, then the "Named Certificate Holder", or the legal representative of the deceased "Named Certificate Holder" may purchase an Optional Extended Reporting Period of five (5) years commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". To purchase this Optional Extended Reporting Period of five (5) years, the "Named Certificate Holder" or the legal representative of the deceased "Named Certificate Holder, shall pay an additional premium equal to three hundred percent (300%) of the "Named Certificate Holder's" last annual premium within of sixty (60) days of "Termination of Coverage".

c. Unlimited Optional Extended Reporting Period

If before "Termination of Coverage" the "Named Certificate Holder": retires from the business of providing "Professional Services" in accordance with formal retirement procedure of the "Additional Insured"; becomes totally and permanently disabled in accordance with formal disability procedures of the "Additional Insured"; or dies, then the "Named Certificate Holder", or the legal representative of the deceased "Named Certificate Holder", may purchase an Unlimited Optional Extended Reporting Period commencing after the "Certificate Period" during which a "Claim" first made against an "Insured" shall be considered made during the "Certificate Period", provided that the "Claim" arises out of a negligent act, error or omission or "Personal Injury" that occurred before "Termination of Coverage" and on or after the "Retroactive Date". To purchase this Unlimited Optional Extended Reporting Period, the "Named Certificate Holder" or the legal representative of the deceased "Named Certificate Holder, shall pay an additional premium equal to four hundred percent (400%) of the "Named Certificate Holder's" last annual premium within of sixty (60) days of "Termination of Coverage".

C. "Claims" for any negligent act, error or omission or "Personal Injury" which are first made during an Extended Reporting Period, if applicable will be deemed to have been made on the last day of the "Certificate Period".

D. If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously for one (1) year or more and "Termination of Coverage" is based upon nonpayment of premium or fraud, the Optional Extended Reporting Period shall be made available but only upon request of such "Named Certificate Holder".

If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously for less than one (1) year and "Termination of Coverage" is based upon nonpayment of premium or fraud, the Optional Extended Reporting shall not be available to such "Named Certificate Holder".

E. Within thirty (30) days after "Termination of Coverage", the Company shall notify the "Named Certificate Holder" in writing of the Automatic Extended Reporting Period and the availability of, the premium for, and the importance of purchasing the Optional Extended Reporting Period.

F. The "Named Certificate Holder" shall have the greater of the following in which to submit in writing to the Company acceptance of the Optional Extended Reporting Period and submit payment of the additional premium:

1. Sixty (60) days from the "Termination of Coverage"; or
2. Thirty (30) days from the date of mailing or delivery of the notice required under Subsection F. above.

G. If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously for at least three (3) years, the annual aggregate Limit of Liability for any Optional Extended Reporting Period shall be one hundred percent (100%) of the Limits of Liability – Aggregate Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance".

If the claims made relationship between the "Named Certificate Holder" and the Company has existed continuously less than three (3) years, the annual Aggregate Each "Named Certificate Holder" Limit of Liability for any Optional Extended Reporting Period shall be the greater of:

1. The amount of coverage remaining in the Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance"; or

2. Fifty percent (50%) of the Limits of Liability – Aggregate Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance".

X. Section V – NOTICE PROVISION, Subsection B. is deleted in its entirety and replaced with the following:

B. NOTICE OF CIRCUMSTANCE

If during the "Certificate Period" the "Insured" or "Additional Insured" becomes aware of an act, error or omission or "Personal Injury" which may be expected to give rise to a "Claim" under the Policy, the "Insured" or "Additional Insured" may provide written notice to the Company during the "Certificate Period" containing particulars sufficient to identify an "Insured" or "Additional Insured" and reasonably obtainable information with respect to:

1. A detailed description of the specific act, error or omission or "Personal Injury";

2. The "Damage" or "Personal Injury" which has or may result from such negligent act, error or omission or "Personal Injury"; and

3. The circumstances by which the "Insured" or "Additional Insured" first become aware of such negligent act, error or omission or "Personal Injury";

and then any "Claim" made against the "Insured" or "Additional Insured", for which coverage is provided by this Policy, that arises out of such act, error or omission or "Personal Injury" shall be deemed to have been made on the date on which the notice was received by the Company.

XI. The following is added to Section V – NOTICE PROVISION, Subsection C.:

Written notice given by or on behalf of any "Insured" or "Additional Insured" to any licensed agent of the Company in the state of New York with particulars sufficient to identify the "Insured" or "Additional Insured" shall be deemed notice. Failure to give immediate written notice shall not invalidate any "Claim" if it shall be shown not to have been reasonably possible to give immediate written notice and that written notice was given as soon as was reasonably possible.

XII. Section VI – EXCLUSIONS, Subsection A. is deleted in its entirety and replaced with the following:

Arising out of any act, error or omission of the "Insured" committed with dishonest, fraudulent, malicious or knowingly wrongful purpose or intent; however, notwithstanding the foregoing, the "Insured" shall be afforded a defense, subject to the terms of this Policy, until the allegations are subsequently proven by a final adjudication.

XIII. Section VII – CONDITIONS, Subsection A. is deleted in its entirety and replaced with the following:

If a "Claim" is covered by this Policy and any other valid and collectible insurance, this Policy shall be excess over such other valid and collectible insurance whether it is primary, excess, contingent or otherwise.

XIV. Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or any of its authorized representatives, or by mailing written notice to the Company or any of its authorized representatives stating when such cancellation shall take effect. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for sixty (60) days or less, the Company may cancel the entire Policy for any reason not included in Subsection 1.c. below, by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than twenty (20) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel the entire Policy for the following reasons:

(1) Nonpayment of premium provided, however, that a notice of cancellation on this ground shall inform the "Named Certificate Holder" of the amount due

(2) Conviction of a crime arising out of acts increasing the hazard insured against;

(3) Discovery of fraud or material misrepresentation in the obtaining of the Policy or in the presentation of a "Claim" thereunder;

(4) After issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "Certificate Period";

(5) Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;

(6) A determination by the Superintendent that continuation of the present premium volume of the Company would jeopardize the Company's solvency or be hazardous to the interest of the Company's policyholders, creditors or public;

(7) A determination by the Superintendent that continuation of the Policy would violate, or would place the Company in violation of, any provision of the Insurance Code; or

(8) Revocation or suspension of the "Named Certificate Holder's" license to practice his or her profession.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Written notice of cancellation shall take effect fifteen (15) days from the date of mailing for reasons set forth in Subsection 1.c.(1) through 1.c.(8).

d. Notice of cancellation shall state the effective date of cancellation. The "Certificate Period" will end on that date.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

f. If the "Named Certificate Holder" cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the Company will be entitled to retain a minimum earned premium of ten percent (10%) of the total Policy premium or sixty dollars ($60), whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

g. If one of the reasons for cancellation in Subsection 1.c. above exists, the Company may cancel this entire Policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this Policy.

h. Failure to remit premiums when due to the Company shall not be considered nonpayment of premium by the "Named Certificate Holder" if:

(1) the "Named Insured" received the "Named Certificate Holder's" premium in a timely manner if the Company has authorized the "Named Insured" to collect premium from "Named Certificate Holders"; or

(2) the "Additional Insured" received the "Named Certificate Holder's" premium in a timely manner if the Company has authorized the "Additional Insured" to collect premium from the "Named Certificate Holders".

2. Nonrenewal

If the Company elects not to renew this Policy, the Company shall send notice as provided in Notices of Nonrenewal and Conditional Renewal below.

3. Conditional Renewal

If the Company conditions renewal of this Policy upon:

a. Change in the Limits of Liability;

b. Change in the type of coverage;

c. Reduction in the coverage;

d. Increased Deductible;

e. Addition exclusion; or

f. Increased premium in excess of ten percent (10%), exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating, or audit;

then the Company shall send notice as provided in Notices of Nonrenewal and Conditional Renewal below.

4. Notices of Nonrenewal and Conditional Renewal

a. If the Company decides not to renew this Policy or to conditionally renew this Policy as provided under the Nonrenewal and Conditional Renewal above, the Company shall mail or deliver written notice by certified mail to the "Named Certificate Holder", and to the producer of record, if any, at least sixty (60) but not more than one hundred twenty (120) days prior to:

(1) The expiration date or

(2) The anniversary date if this is a continuous Policy.

b. In the event the Company extends the "Certificate Period" to comply with Subsection 4.a. above, the Limits of Liability – Aggregate/Each "Named Certificate Holder" shown in Item 4 of the "Certificate of Insurance" of the expiring Policy shall be increased in proportion to the Policy extension.

c. Notice shall be mailed or delivered to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and to the producer of record, if any. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The Company shall not send the "Named Certificate Holder" shown in Item 1 of the "Certificate of Insurance" notice of nonrenewal or conditional renewal if such "Named Certificate Holder", the producer of record, if any, or another insurer of the "Named Certificate Holder" mails or delivers notice that the Policy has been replaced or is no longer desired.

e. The notice of nonrenewal shall state the reason for the nonrenewal. The notice of conditional renewal shall state the reason for the conditional renewal and the specific change(s) to the Policy condition(s) and or premium.

XV. Section VII – CONDITIONS, Subsections I. and K. are deleted in their entirety and replaced with the following:

I. SOLE AGENT

By acceptance of this Policy, the "Additional Insured" shall act on behalf of the "Insureds" and "Additional Insureds" for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this Policy, reimbursement to the Company of any Deductible advanced and the exercise of the rights provided in Section IV – EXTENDED REPORTING PERIODS or VII – CONDITIONS, Subsection C.

K. REPRESENTATION

In granting coverage under this Policy, the Company has relied upon the "Certificates of Insurance", agreements, and representations in the written application for this Policy. All such "Certificates of Insurance", agreements and representations are the basis of coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Signed by: [signature]
Authorized Representative

01/17/2008
Date

[illegible]-115-ANY [illegible]
Page 7 of 7

EXHIBIT "3"
PAGE NO. 296

Endorsement

# Ohio Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect ninety (90) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the first "named insured" at the address shown in Item 1 of the "Certificate of Insurance" and mail to the producer of record, if any. Such cancellation shall be no fewer than thirty (30) days from the date the notice is mailed, unless the Policy is canceled for reason set forth in Subsection 1.c. below. In that event such cancellation shall take effect no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any "Claims" submitted thereunder;

(3) Discovery of a moral hazard or willful or reckless acts or omissions on the part of the "Named Certificate Holder" that increase any hazard insured against;

(4) The occurrence of a change in the individual risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed, except to the extent the Company reasonably should have foreseen the change or contemplated the risk in writing the contract;

(5) Failure of an "Insured" to correct material violations of safety codes or to comply with reasonable written loss control recommendations;

(6) Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage; or

(7) A determination by the superintendent of insurance that the continuation of the Policy would create a condition that would be hazardous to an "Insured" or the public.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(7) above, the Company shall mail written notice of cancellation by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(7).

EXHIBIT " 3 "
PAGE NO. 297

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(7) shall state the date of the notice, the reason for such cancellation, the Policy number, and the effective date of cancellation.

d. The Company may issue a notice of cancellation at the first anniversary date of any Policy that is issued for a period greater than one (1) year. Not withstanding Subsection 1.c. above, such cancellation may be based on any reason.

e. The mailing of such notice as aforesaid shall be sufficient proof of notice. This Policy shall terminate and the "Certificate Period" shall end at the date and hour specified in such notice.

f. If the Policy is cancelled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration of this Policy.

If the Company fails to provide timely written notice required by the paragraph above, the Policy shall remain in effect until thirty (30) days after the date of mailing the notice, unless the "Named Certificate Holder" notifies the Company in writing that it accepts the nonrenewal as stated. The Company shall notify the "Named Certificate Holder" of the amount of premium for the time after the expiration date that the coverage may remain in effect, and the "Named Certificate Holder" shall pay such premium unless it accepts the stated nonrenewal. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or any other company within the same insurance group has offered to issue a renewal insurance; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

d. Any written notice of nonrenewal shall state the date of the notice, the reason for such cancellation, the Policy number, and the effective date of nonrenewal.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to a substantial increase in premium, the Company shall mail by certified mail or other first class mail, written notice of the increase to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and the producer of record, if any, at least thirty (30) days prior to the expiration date of the Policy.

b. If renewal is subject to the condition described in Subsection 3.a. above, and the Company fails to provide notice thirty (30) days prior to the expiration date of this Policy, the following procedures will apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after mailing the notice or delivery of the renewal Policy; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy shall be calculated pro rata at the rates applicable to the expiring Policy.

c. If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, is effective the day following the Policy's expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: Timothy H. Russell (signature)
Authorized Representative

01/17/2008
Date

Endorsement

# Oklahoma Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| [illegible] 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

c. If this Policy has been in effect less than forty-five (45) business days, this Policy may be canceled by the Company for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed.

d. If this Policy is in effect for forty-five (45) business days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any "Claims" submitted thereunder;

(3) Discovery of willful or reckless acts or omissions on the part of the "Named Certificate Holder" which increases any hazard insured against;

(4) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A determination by the Commissioner that the continuation of the Policy would place the Company in violation of the insurance laws of this state;

(6) Conviction of the "Insured" of a crime having as one of its necessary elements an act increasing any hazard insured against;

(7) Loss of or substantial changes in applicable reinsurance.



EXHIBIT " 3 "
PAGE NO. 300

(3) Changes in Policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________ ______________________
Authorized Representative Date

01/17/2008

EXHIBIT " 3 "
PAGE NO. 301

If the Company cancels subject to Subsections 1.d.(1) through 1.d.(7) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, no fewer than ten (10) days from the date the notice is mailed.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, shall mail written notice of nonrenewal by certified mail to the "Name Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, i any, at least forty-five (45) days prior to the expiration of this Policy. If the notice is mailed less than forty-five (45) day prior to the expiration, coverage shall remain in effect until forty-five (45) days after notice is mailed.

b. If the Company provides the notice as required and agreed thereafter to provide a ninety (90) day or less extension, ar additional notice of nonrenewal is not required with respect to such extension. Earned premium for any period of coverag that extends beyond the Policy expiration date shall be computed pro rata based on the expiring premium.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

(2) An "Insured" has obtained replacement coverage or agreed in writing to do so.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium;

(2) Change in Deductible;

(3) Reduction in Limits of Liability; or

(4) Reduction in coverage.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration date of the policy.

b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(4) above, and the Company fails to provide notice forty-five (45) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Forty-five (45) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. The above subsections shall not apply to:

(1) Changes in rate or plan filed with or approved by the State Board for Property and Casualty Rates or filed pursuant to the Commercial Property and Casualty Competitive Loss Cost Rating Act and applicable to an entire class of business;

(2) Changes based upon the altered nature of extent of the risk insured; or

Endorsement

# Oregon Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| FOC 92 138 81-02 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Policy may be canceled by the Company by mailing written notice by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall state the reason for cancellation and when, not less than ten (10) business days thereafter, such cancellation shall be effective. Such notice shall also inform the "Named Certificate Holder" that within thirty (30) days after receiving a notice of cancellation, under Oregon Statute 742.704, the "Named Certificate Holder" may request a hearing before the Director of the Department of Consumer and Business Services for the State of Oregon (Director).

The Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy or in presenting a "Claim" under the Policy.

(3) Substantial increase in the risk of "Damages" after insurance coverage has been issued or renewed, including but not limited to, an increase in exposure due to rules, legislation or court decision;

(4) Failure to comply with reasonable loss control recommendations;

(5) Substantial breach of contractual duties, conditions or warranties;

(6) Determination by the Director that the continuation of a line of insurance or class of business to which the Policy belongs will jeopardize the Company's solvency or will place the Company in violation of the insurance laws of Oregon or any other state;

(7) Loss or decrease in reinsurance covering the risk; or

(8) Any other reason approved by the Director by rule.

The mailing of such notice as aforesaid shall be sufficient proof of notice. This Policy shall terminate and the "Policy period" shall end at the date and hour specified in such notice.

If this Policy is cancelled by the "Named Certificate Holder" the Company shall retain the customary short rate portion of the premium. If the Policy is canceled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by us shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.



EXHIBIT " 3 "
PAGE NO. 303

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

As per Oregon Statute 742.690, the Company may not cancel this Policy solely because any "Insured" holds a public office.

c. If notice of cancellation is mailed, a post office certificate of mailing will be conclusive proof that the "Named Certificate Holder" received the notice on the third calendar day after the date of the certificate of mailing.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, written notice of nonrenewal prior to:

(1) The expiration date of the Policy; or

(2) The anniversary date of the Policy if the Policy is written for a term of more than one (1) year or without a fixed expiration date.

However, if this Policy is issued for a term of more than one (1) year and for additional consideration the premium is guaranteed, the Company may not refuse to renew the Policy at its anniversary date.

b. Nonrenewal will not be effective until at least thirty (30) days after "Named Certificate Holder" receives the Company's notice.

c. If notice of nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the "Named Certificate Holder received the notice on the third calendar day after the date of the certificate of mailing.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Higher rates; or

(2) Less favorable terms;

the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to the conditions described in Subsections 3.a.(1) or 3.a.(2), above, and the Company fails to provide notice thirty (30) days prior to the anniversary or expiration date of this Policy, the following procedures will apply:

(1). The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after receipt of the notice or delivery of the renewal Policy; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

c. If notice of conditional renewal is mailed, a post office certificate of mailing will be conclusive proof that the "Named Certificate Holder" received the notice on the third calendar day after the date of the certificate of mailing.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: [signature]
Authorized Representative

2/17/2003
Date

EXHIBIT " 3 "
PAGE NO. 304

Endorsement

# Pennsylvania Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 02 138 81-02 | 12.31.2007 | 13669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made which affects the insurability of the risk ;

(3) The Policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company;

(4) A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the "Certificate Period";

(5) Material failure to comply with Policy terms, conditions or contractual duties;

(6) Other reasons that the Insurance Commissioner may approve; or

(7) Loss of or a substantial decrease in reinsurance certified by the Commissioner as affecting in force Policy.

If the Company cancels subject to Subsections 1.b.(1) through 1.b.(7) above, the Company shall mail written notice of cancellation by certified mail or other first class mail, to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Fifteen (15) days from the date of mailing for the reasons set forth in Subsections 1.b.(1) and 1.b.(2); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.b.(3). through 1.b.(7).

Any written notice of cancellation subject to Subsections 1.b.(1) through 1.b.(7) above shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. Nothing in this paragraph shall restrict our right to rescind a Policy ab initio (from the beginning) upon discovery that the Policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company.

If canceled by the Company, the refund of premium shall be computed pro-rata.

c. If notice is mailed, proof of mailing will be sufficient proof of notice. Such notice shall be clearly labeled **Notice of Cancellation.**

d. A midterm cancellation shall state that, at the "Named Certificate Holder's" request, the Company shall provide loss information to the "Named Certificate Holder" for at least three (3) years or the period of time during which the Company

has provided coverage to the "Named Certificate Holder", whichever is less. The "Named Certificate Holder's" written reque: for loss information must be made within ten (10) days of the "Named Certificate Holder's" receipt of the midterm cancellatio notice. The Company shall have thirty (30) days from the date of receipt of the "Named Certificate Holder's" request to provid the requested loss information.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail o other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" anc mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. Notice of nonrenewal must state the reason(s) for nonrenewal. The reason(s) must be clear and complete. Notice must identify the condition, factor or loss experience which caused the nonrenewal and must provide sufficient information or data so that the "Named Certificate Holder" may correct the deficiency.

b. Policy cannot be nonrenewed unless notice requirement in Subsection 2.a. above has been met. The Policy cannot be extended to meet nonrenewal requirements. The Company must remain on the Policy for another year if the notice requirement is not met.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

e. If notice is mailed, proof of mailing will be sufficient proof of notice. Such notice shall be clearly labeled **Notice of Nonrenewal.**

f. A nonrenewal notice shall state that, at "Named Certificate Holder's" request, the Company shall provide loss information to the "Named Certificate Holder" for at least three (3) years or the period of time during which the Company has provided coverage to the "Named Certificate Holder", whichever is less. The "Named Certificate Holder's" written request for loss information must be made within ten (10) days of the "Named Certificate Holder's" receipt of the nonrenewal notice. The Company shall have thirty (30) days from the date of receipt of the "Named Certificate Holder's" request to provide the requested loss information.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to increase in premium, the Company shall mail by certified mail or other first class mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the renewal date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ____________________ Authorized Representative

____________________ Date

EXHIBIT " 3 "
PAGE NO. 306

Endorsement

# Rhode Island Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect sixty (60) days or less, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. When canceling for nonpayment of premium, notice must be provided no fewer than ten (10) days from the date the notice is mailed. When canceling for any other valid underwriting reason, notice must be provided no fewer than thirty (30) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than sixty (60) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Fraud or material misrepresentation made by or with the knowledge of the "Named Certificate Holder" in obtaining the Policy, continuing the Policy, or in presenting a "Claim" under the Policy;

      (3) Acts or omissions on the part of the "Named Certificate Holder" which increase any hazard insured against, including a failure to comply with loss control recommendations;

      (4) Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation, or court decision;

      (5) Loss or decrease in the Company's reinsurance covering all or part of the risk or exposure covered by the Policy;

      (6) A determination by the Commissioner of Insurance that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Rhode Island;

      (7) Owner or occupant incendarism;

      (8) Violation or breach by the "Named Certificate Holder" of any Policy terms or conditions;

EXHIBIT " 3 "
PAGE NO. 307

(9) Constructive or actual total loss of the insured property; or

(10) Such other reason as may be approved by the Commissioner of Insurance.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(10) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(10).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(10) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The Company or a company within the same insurance group has offered to issue a renewal Policy; or

(2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

If the Company provides the notice described in Subsections 2.a. above, and the Company subsequently extends the Policy for ninety (90) days at the request of the "Named Certificate Holder", an additional notice of nonrenewal is not required with respect to the extension.

d. If the notice of nonrenewal is mailed less than sixty (60) days before expiration, the coverage shall remain in effect until sixty (60) days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the expiring rate.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Increase in premium;

(2) Change in Deductible; or

(3) Reduction in Limits of Liability.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

b. If renewal is subject to any condition described in Subsections 3.a. above, and the Company fails to provide notice sixty (60) days prior to the anniversary or expiration date of this Policy, the following procedures apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Sixty (60) days after the date of mailing or delivery of the notice; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the following rates:

(a) The rates applicable to the terminated Policy; or

(b) The rates presently in effect.

(3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: [signature] 01/17/2008

Authorized Representative Date

EXHIBIT " 3 "
PAGE NO. 309

Endorsement

# South Carolina Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If this Policy has been in effect ninety (90) days or less and is not a renewal of a previously existing policy, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation notice shall be mailed no fewer than ten (10) days prior to the proposed effective date of cancellation, if such cancellation is based on nonpayment of premium and thirty (30) days for any other reason. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If this Policy has been in effect for more than ninety (90) days, the Company may cancel this Policy for the following reasons:

      (1) Nonpayment of premium;

      (2) Material misrepresentation of fact which, if known to the Company, would have caused the Company not to issue the Policy;

      (3) A substantial change in the risk, except to the extent the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy;

      (4) A substantial breach of contractual duties, conditions or warranties; or

      (5) Loss of the Company's reinsurance covering all or a significant portion of the particular Policy insured, or where continuation of the Policy would imperil the Company's solvency or place the Company in violation of the insurance laws of the state of South Carolina.

   If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

   Written notice of cancellation shall take effect:



EXHIBIT " 3 "
PAGE NO. 310

(i) Ten (10) days from the date of mailing for the reason set forth in Subsections 1.c.(1); and

(ii) Thirty (30) days from the date of the mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(5).

Prior to cancellation for reason permitted in Subsections 1.c.(5) above, the Company shall mail by certified mail to the Director or his or her designee, written notice of cancellation not less than sixty (60) days after mailing the cancellation, and the Director or his or her designee shall, within thirty (30) days of such notification, approve or disapprove such cancellation.

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the expiration of this Policy for a Policy with a "Policy Period" of one (1) year or less. For a Policy with a "Policy Period" of more than one (1) year, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the anniversary date of the Policy.

b. Policies issued for a term longer than one (1) year with a guarantee renewal or premium for which additional consideration has been paid may not be nonrenewed for any reason, regardless of notice.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. Any notice of nonrenewal shall state the precise reason for nonrenewal. This Policy may not be extended to comply with nonrenewal notice requirements.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to any of the following:

a. Change in Policy term;

b. Change in Limits of Liability; or

c. Increase in premium,

the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of the Policy.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________________
Authorized Representative

______________________________
Date

Endorsement

# Tennessee Amendatory Endorsement

ZURICH

| Policy No | Eff Date of End. | Producer | Add'l Prem | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days and is not a renewal, this Policy may be canceled by the Company for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy is in effect for sixty (60) days or more or if this Policy is a renewal, the Company may cancel for the following reasons:

(1) Nonpayment of premium, including nonpayment of any additional premiums, calculated in accordance with the Company's current rating manual;

(2) Conviction of an "Insured" of a crime having as one of its necessary elements an act increasing any hazard insured against;

(3) Discovery of fraud or material misrepresentation on the part of either of the following:

(a) An "Insured" or an "Insured's" representative in obtaining the insurance; or

(b) The "Named Certificate Holder" in pursuing a "Claim" under the Policy.

(4) Failure to comply with written loss control recommendations;

(5) Material change in the risk which increases the risk of loss after insurance coverage has been issued or renewed;

(6) Determination by the Commissioner that the continuation of the Policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Tennessee or any other state;

(7) Violation or breach by an "Insured" of any Policy terms or conditions; or

(8) Such other reasons that are approved by the Commissioner.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(8) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Such cancellation shall be effective not less than ten (10) days after the date the notice is mailed.

d. The mailing of such notice as aforesaid shall be sufficient proof of notice. This Policy shall terminate and the "Policy Period" shall end at the date and hour specified in such notice.

e. If the Policy is canceled by the Company, the earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of this Policy. If the notice is mailed less than sixty (60) days before expiration, the Company shall extend the existing Policy for sixty (60) days from the date such notice is provided. The premium for the extension provided in such circumstances shall be no more than a pro rata basis of the existing Policy.

   b. If the Company provides the notice as required and thereafter agrees to provide a ninety (90) day or less extension, an additional notice of nonrenewal is not required with respect to such extension. Earned premium for any period of coverage that extends beyond the Policy expiration date shall be computed pro rata based on the expiring premium.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

   d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

      (1) The Company or another company within the same insurance group has offered to issue a renewal Policy; or

      (2) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so.

3. Conditional Renewal

   a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

      (1) Increase of premium rates and/or factors by more than twenty-five (25%) percent;

      (2) Reduction in Limits of Liability; or

      (3) Elimination of coverages;

      the Company shall mail by certified mail written notice of the change(s) or amount of the increase to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration date of the Policy.

   b. If renewal is subject to any condition described in Subsections 3.a.(1) through 3.a.(3) above, and the Company fails to provide notice sixty (60) days before the expiration date of this Policy, the following procedures apply:

      (1) The existing Policy will remain in effect until the earlier of the following:

         (a) Sixty (60) days after the date of mailing or delivery of the notice; or

         (b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

      (2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the expiring Policy will be calculated pro rata at the rates applicable to the expiring Policy.

      (3) If the "Named Certificate Holder" accepts the renewal, the premium increase, if any, and other changes are effective the day following the Policy's expiration date.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________
Authorized Representative

01/17/200[illegible]
Date

EXHIBIT " 3 "
PAGE NO. 313

Endorsement

# Texas Amendatory Endorsement

ZURICH

| Policy No | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| OC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the Company cancels this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of cancellation stating the reasons for cancellation. The Company shall mail this notice not less than ten (10) days before the effective date of cancellation if cancellation is for nonpayment of premium or at least sixty (60) days before the effective date of cancellation if cancellation is for any other reason.

   c. The Company may cancel this Policy for the following reasons:

      (1) Failure to pay premium when due;

      (2) Fraud in obtaining coverage;

      (3) On an increase in hazard within the control of the "Named Certificate Holder" which would produce an increase in rate;

      (4) Loss of our reinsurance covering all or part of the risk covered by the Policy; or

      (5) The Company is placed in supervision, conservatorship or receivership if the cancellation is approved or directed by the supervisor, conservator, or receiver.

   d. If notice is mailed, proof of mailing will be sufficient proof of notice.

   e. If this Policy is cancelled by the "Named Certificate Holder", the Company shall retain the customary short rate portion of the premium. If the Policy is cancelled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, shall mail written notice of nonrenewal stating the reason for nonrenewal, by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration date. If notice is mailed less than sixty (60) days before the expiration date, this Policy shall remain in effect until the sixty-first (61st) day after the date on which the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the expiring premium.

b. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. The transfer of a "Insured" between admitted companies within the same insurance group is not considered a refusal to renew.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________ Authorized Representative

______________________ Date

EXHIBIT " 3 "
PAGE NO. 315

Endorsement

# Utah Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 13669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, this Policy may be canceled by the Company for any underwriting reason, including nonpayment of premium, by mailing written notice by certified mail or other first class mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance" and mailing to the producer of record, if any. Such cancellation shall state the reason for cancellation, and when, not less than ten (10) days after mailing or delivering of said notice, such cancellation shall be effective.

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation;

(3) Substantial change in the risk assumed, unless the Company reasonably should have foreseen the change or contemplated the risk when entering into the contract; or

(4) Substantial breaches of contractual duties, conditions, or warranties;

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(4) above, the Company shall mail written notice of cancellation by certified mail or other first class mail written notice of cancellation to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(iii) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(iv) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(4).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(4) shall state the reason for such cancellation, the effective date of cancellation, and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. The mailing of such notice as aforesaid shall be sufficient proof that the "Named Certificate Holder" received the notice on the third calendar day after the date of the mailing. This Policy shall terminate and the "Policy Period" shall end at the date and hour specified in such notice.

e. If this Policy is cancelled by the "Named Certificate Holder", the Company shall retain the customary short rate portion of the premium. If the Policy is canceled by or on behalf of the Company for any reason other than failure to pay a premium when due, the Company shall retain the pro rata portion of the premium. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

2. Nonrenewal

If the Company elects not to renew this Policy, the Company shall deliver or mail written notice of nonrenewal by certified mai or other first class mail, to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least thirty (30) days prior to the anniversary or expiration date of this Policy. Any written notice of nonrenewal shall state the reason for such nonrenewal and the effective date of nonrenewal. If notice is mailed, proof of mailing will be sufficient proof of notice.

If any of the following occur, the right to renew the Policy is extinguished:

(1) If not more than forty-five (45) days nor less than fourteen (14) days prior to the due date of a renewal premium, the Company shall mail by certified mail or other first class mail, a notice to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance":

(a) The renewal premium;

(b) How it may be paid; and

(c) That failure to pay the renewal premium by the due date extinguishes the "Named Certificate Holder" right to renewal.

(2) A notice of nonrenewal has been mailed by certified mail or other first class mail in accordance with Paragraph 1. above;

(3) The "Named Certificate Holder" has obtained replacement coverage or agreed in writing to do so;

(4) The "Named Certificate Holder" has requested or agreed to nonrenewal; or

(5) The Policy is expressly designated as nonrenewable.

3. Conditional Renewal

If the Company elects to renew this Policy and the renewal is subject to:

(1) Less favorable terms; or

(2) Higher rates;

the Company shall mail by certified mail or other first class mail, written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least thirty (30) days prior to the expiration date of the Policy.

If renewal is subject to Subsection 3.a.(1) or 3.a.(2) above, and the Company fails to provide notice thirty (30) days prior to the expiration date of this Policy, the following procedures will apply:

(1) The present Policy will remain in effect until the earlier of the following:

(a) Thirty (30) days after receipt of the notice or delivery of the renewal Policy; or

(b) The effective date of replacement coverage obtained by the "Named Certificate Holder".

(2) If the "Named Certificate Holder" elects not to renew, any earned premium for the period of extension of the terminated Policy will be calculated pro rata at the rates applicable to the expiring Policy.

c. If the "Named Certificate Holder" accepts the renewal, the renewal terms and higher rates are effective thirty (30) days after the receipt or delivery of the notice.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________ Authorized Representative

______________________ Date

Endorsement

# Virginia Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| [illegible] | 12.31.2007 | 36609 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

   a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

   b. If the Company cancels this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of cancellation stating the reasons for cancellation. The Company shall mail this notice not less than fifteen (15) days before the effective date of cancellation if cancellation is for nonpayment of premium or at least forty-five (45) days before the effective date of cancellation if cancellation is for any other reason. The certified mailing of notice, as aforementioned, shall be sufficient notice and the effective date of cancellation stated in the notice shall become the expiration date of the Policy. Such notice shall state the reason for cancellation and shall be accompanied by a refund of unearned premium, except a premium that has been financed.

   c. If the notice was sent using certified mail, the Company must obtain a written receipt from the United States Postal Service showing the name and address of the "Named Certificate Holder". The Company must keep the certified postal receipt and a copy of all required notices and statements for at least one (1) year from the date of cancellation.

   d. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

   a. If the Company elects not to renew this Policy, the Company shall mail by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, written notice of nonrenewal not less than fifteen (15) days prior to the expiration of this Policy if nonrenew is for nonpayment of premium or at least forty-five (45) days prior to the expiration of this Policy if cancellation is for any other reason.

   b. If the nonrenewal notice was sent using certified mail, the Company must obtain a written receipt from the United States Postal Service showing the name and address of the "Named Certificate Holder". The Company must keep the certified postal receipt and a copy of all required notices and statements for at least one (1) year from the date of nonrenewal.

   c. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

   a. If the Company elects to renew this Policy and the renewal is subject to increase in filed rate of twenty-five percent (25%) or more the Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days before the expiration date of the Policy.

   b. If the conditional renewal notice was sent using certified mail, the Company must obtain a written receipt from the United States Postal Service showing the name and address of the "Named Certificate Holder". The Company must keep the certified postal receipt and a copy of all required notices and statements for at least one (1) year from the date of conditional renewal.

c. If the required notice is not sent, coverage will remain in effect until forty-five (45) days after notice is mailed or delivered to the "Named Certificate Holder" or until such "Named Certificate Holder" secures replacement coverage. If the "Named Certificate Holder" rejects the renewal offer, the extended period of coverage will be under the expiring Policy terms. If the "Named Certificate

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________ ______________________

Authorized Representative Date

EXHIBIT " 3 "
PAGE NO. 319

[illegible]

Endorsement

# Vermont Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 38669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

I. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation affecting the Policy or in the presentation of a "Claim" thereunder,

(3) Violation of any of the terms or conditions of the Policy; or

(4) Substantial increase in hazard provided that cancellation for this reason shall be effective only after prior approval of the commissioner;

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(4) above, shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any. Five (5) days of mailing time must be added to the cancellation notice periods below:

Written notice of cancellation shall take effect:

(i) Fifteen (15) days from the date of mailing for the reason set forth in Subsection 1.c.(1); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(4).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(4) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. The Company shall not be held liable in any claim or suit for damages arising solely from our compliance with the requirement that the reason for cancellation be specified.

If canceled by the Company, the refund of premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

d. The commissioner of insurance has the authority to waive the notice period and reason requirement upon our written request.

e. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

(a) If the Company elects not to renew this Policy, shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the anniversary or expiration of this Policy. Five (5) days of mailing time must be added to the nonrenewal notice period.

(b) If the Company fails to provide timely written notice required by Subsection 2.(a) above, this Policy cannot be extended to meet the notice requirement.

(c) If notice is mailed, proof of mailing will be sufficient proof of notice.

(d) The Company is not required to provide written notice of nonrenewal if any one of the following occurs:

(1) The Company has manifested its willingness to renew;

(2) Nonpayment of premium; or

(3) The "Named Certificate Holder" fails to pay any advanced premium required by the Company for renewal.

(e) The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: [signature] Authorized Representative

01/17/2008 Date

EXHIBIT " 3 "
PAGE NO. 321

Endorsement

# Washington D.C. Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material and willful misstatement or omission of fact;

(3) Property or other interest of the "Insured" has been transferred; or

(4) The property, interest or use thereof must have materially changed with respect to its insurability;

If the Company cancels subject to Subsections 1.b.(1) through 1.b.(4) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, and mail to the producer of record, if any, five (5) days prior to mailing the written notice of cancellation to the "Named Certificate Holder".

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reason set forth in Subsection 1.b.(1); and

(ii) Thirty (30) days from the date of mailing for the reasons set forth in Subsections 1.b.(2) through 1.b.(4).

Any written notice of cancellation subject to Subsections 1.b.(1) through 1.b.(4) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

If canceled by the Company, the refund of premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. Failure to pay any premium at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

c. If notice is mailed, proof of mailing will be sufficient proof of notice. The envelope containing the notice must be labeled **Important Insurance Notice** in at least 18 point or larger type.

d. A copy of the notice of cancellation must be sent to the Superintendent of Insurance thirty (30) days before the proposed effective date of cancellation. No notice needs to be sent, however, in the case of cancellation for nonpayment of premium. Send notice to:

District of Columbia
Department of Insurance and Securities Regulation
810 First Street NE, Room 701
Washington, DC 20002

EXHIBIT " 3 "
PAGE NO. 322

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, at least thirty (30) days prior to the expiration of this Policy and mail to the producer of record, if any, five (5) days prior to mailing to the "Named Certificate Holder".

If the Company fails to provide timely written notice required by the Subsection 2.a. above, this Policy cannot be extended to meet the notice requirement.

b. If notice is mailed, proof of mailing will be sufficient proof of notice. The envelope containing the notice must be labeled **Important Insurance Notice** in at least 18 point or larger type.

c. A copy of the notice of nonrenewal must be sent to the Superintendent of Insurance thirty (30) days before the proposed effective date of nonrenewal. No notice needs to be sent, however, in the case of nonpayment of premium. Send notice to:

District of Columbia
Department of Insurance and Securities Regulation
810 First Street NE, Room 701
Washington, DC 20002

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

There is no statutory requirement for the Company to send notice of conditional renewal.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________ Authorized Representative

______________________ Date

EXHIBIT " 3 "
PAGE NO. 323

Endorsement

# Washington Amendatory Endorsement

ZURICH

| Policy No | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| FOC 92 138 81-02 | 12/31/2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS. Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. The Company may cancel this Policy by mailing written notice of cancellation by certified mail or delivered to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations no fewer than ten (10) days prior to the effective date of cancellation, and mailing within five (5) working days to the producer of record, if any, if cancellation is for nonpayment of premium. The Company may cancel this Policy by mailing written notice of cancellation by certified mail or delivered to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations at least forty-five (45) days prior to the effective date of cancellation and mailing within five (5) working days to the producer of record, if any, if cancellation is for any other reason. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. The written notice of cancellation to the producer of record, if any, may be provided electronically.

The Company shall also mail or deliver like notice to any mortgage holder, pledgee, or other person shown in this Policy to have an interest in any "Claim" which may occur under this Policy. This notice shall be the same as that mailed or delivered to the "Named Certificate Holder". For purpose of this amendatory, deliver includes electronic transmittal, facsimile, or personal delivery.

c. The commissioner of insurance has the authority to cancel the Policy:

(1) Under a statutory delinquency proceeding commenced under the provisions of chapter 48.31 RCW; or

(2) On a showing that the continuation of such coverage can reasonably be expected to create a condition in the Company hazardous to its "Insureds", or to its creditors, or to its member subscribers, or stockholders, or to the public.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, and mail to the producer of record, if any, at least forty-five days prior to the expiration of this Policy.

b. If the Company fails to provide timely written notice required by the Subsection 2.a. above, this Policy cannot be extended to meet the notice requirement.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy, the Company shall mail written notice of conditional renewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the Declarations, and mail to the producer of record, if any, at least twenty (20) days prior to the expiration of this Policy. The Company must provide the "Named Certificate Holder" renewal terms including the premium due. If the "Named Certificate Holder" subsequently fails to pay the premium when due, the coverage is nonrenewed. The written notice of conditional offer to renew must also include an explanation of the premium changes or Policy provision changes along with any premium due and the premium due date.

b. If the Company fails to meet the above, a renewal Policy must be issued with the same terms and conditions, and rates as the expiring Policy. The Company is then permitted to change the terms and conditions, and rates of the renewal Policy one time after giving twenty (20) days prior notice to the "Named Certificate Holder".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: ______________________ (signature) 01/17/2008
Authorized Representative — Date

EXHIBIT " 3 "
PAGE NO. 325

Endorsement

# Wisconsin Amendatory Endorsement

ZURICH

| Policy No. | Eff Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|
| EOC 92 138 81-62 | 12.31.2007 | 18669 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect for less than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation;

(3) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the contract;

(4) Substantial breaches of contractual duties, conditions or warranties; or

(5) Attainment of age specified as the terminal age for coverage.

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(5) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(5); and

(ii) Sixty (60) days from the date of mailing for the reasons set forth in Subsections 1.c.(2) through 1.c.(4).

Any written notice of cancellation subject Subsections 1.c.(1) through 1.c.(5) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

2. Nonrenewal

a. With respect to nonpayment of a renewal premium, the Company shall mail written notice of nonrenewal by certified mai to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the produce of record, if any, not more than seventy-five (75) days nor less than ten (10) days prior to the due date of the premium, and such written notice of nonrenewal states clearly the effect of nonpayment of premium by the due date. Any other reason the Company shall mail written notice of nonrenewal by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least sixty (60) days prior to the expiration of the Policy.

b. Failure to provide written notice of nonrenewal in Subsection 2.(a) above, entitles the "Named Certificate Holder" to a renewal at the same terms as the expiring Policy for a period not to exceed one (1) year. The Company may not extend the Policy to meet nonrenewal notice requirements in Subsection 2.(a) above.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. If either one of the following occurs, the Company is not required to provide written notice of nonrenewal:

(1) The "Named Certificate Holder" has obtained replacement coverage;

(2) The "Named Certificate Holder" has requested or agreed to nonrenewal; or

(3) The Policy is expressly designated as nonrenewable.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Less favorable terms; or

(2) Higher premium.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least sixty (60) days prior to the anniversary or expiration date of the Policy.

b. If the Company notifies the "Named Certificate Holder" within sixty (60) days prior to the anniversary or expiration date of the Policy, the new terms or premium do not take effect until sixty (60) days after the notice is mailed or delivered by certified mail, in which case the "Named Certificate Holder" may elect to cancel the renewal Policy at any time during that sixty (60) day period. The written notice of change(s) shall include a statement of the first "named insured's" right to terminate the Policy. If the "Named Certificate Holder" elects not to renew the Policy, return premium or additional premium shall be calculated proportionately on the basis of the expiring premium. If the Company fails to notify the "Named Certificate Holder" of the new terms or premium as required in Subsection 3.(a) above, shall continue the Policy for an additional period of time equivalent to the expiring "Certificate Period", at the same expiring terms and premium.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: [signature]
Authorized Representative

2/17/2008
Date

Endorsement

# Wyoming Amendatory Endorsement

ZURICH

| Policy No. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem |
|---|---|---|---|---|
| EOC 92 138 81-02 | 12.31.2007 | 18069 000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Life Insurance Company Sponsored Life Insurance Agents Errors and Omissions Liability Policy**

Section VII – CONDITIONS, Subsection G. is deleted in its entirety and replaced with the following:

1. Cancellation

a. This Policy may be canceled by the "Named Certificate Holder" by surrender of the Policy to the Company or by mailing written notice to the Company stating when such cancellation shall take effect. If canceled by the "Named Certificate Holder", the Company shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by the Company.

b. If this Policy has been in effect less than sixty (60) days and is not a renewal of a previously existing Policy for a term longer than sixty (60) days, the Company may cancel this Policy for any reason by mailing written notice by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mailing to the producer of record, if any. Such cancellation shall be no fewer than ten (10) days from the date the notice is mailed. Such notice shall state the reason for cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed.

c. If this Policy has been in effect for sixty (60) days or more, the Company may cancel this Policy for the following reasons:

(1) Nonpayment of premium;

(2) Material misrepresentation of fact which if known to the Company would have caused the Company not to issue the Policy;

(3) Substantial change in the risk assumed, except to the extent that the Company should reasonably have foreseen the change or contemplated the risk in writing the Policy; or

(4) Substantial breaches of contractual duties, conditions or warranties;

If the Company cancels subject to Subsections 1.c.(1) through 1.c.(4) above, the Company shall mail written notice of cancellation by certified mail to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any.

Written notice of cancellation shall take effect:

(i) Ten (10) days from the date of mailing for the reasons set forth in Subsections 1.c.(1) and 1.c.(2); and

(ii) Forty-five (45) days from the date of mailing for the reasons set forth in Subsections 1.c.(3) and 1.c.(4).

Any written notice of cancellation subject to Subsections 1.c.(1) through 1.c.(4) shall state the reason for such cancellation and if applicable be accompanied by a refund of unearned premium, except a premium that has been financed. If the Company cancels this Policy for any reason other than nonpayment of premium, at the time the notice of cancellation is given, a brief statement must be included advising the "Named Certificate Holder" of his, her, or its right to request loss information.

d. If notice is mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing will be sufficient proof of notice.

e. The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by "Named Certificate Holder". Under any other circumstances the refund shall be computed pro rata.

f. Cancellation notice shall not be required if a Policy is transferred from the Company to an affiliated company un common management and control:

(1) As a result of a merger, acquisition or restructuring; or

(2) If the transfer results in the same or broader coverage.

2. Nonrenewal

a. If the Company elects not to renew this Policy, the Company shall mail written notice of nonrenewal by certified mail the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and mail to the producer of record, if any, at least forty-five (45) days prior to the expiration or anniversary of this Policy.

b. Policy may not be extended in order to comply with nonrenewal notice requirement.

c. If notice is mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof o mailing will be sufficient proof of notice.

d. Nonrenewal notice shall not be required if a Policy is transferred from the Company to an affiliated company unde common management and control:

(1) As a result of a merger, acquisition or restructuring; or

(2) If the transfer results in the same or broader coverage.

e. The transfer of a Policy between companies within the same insurance group or changes in premium, Limits of Liability, Deductible or coverage are not refusals to renew.

f. If the Company nonrenews this Policy for any reason other than nonpayment of premium, at the time the notice of nonrenewal is given, a brief statement must be included advising the "Named Certificate Holder" of his, her, or its right to request loss information.

3. Conditional Renewal

a. If the Company elects to renew this Policy and the renewal is subject to any of the following:

(1) Less favorable terms; or

(2) Higher rates.

The Company shall mail by certified mail written notice of the change(s) to the "Named Certificate Holder" at the address shown in Item 1 of the "Certificate of Insurance", and to the producer of record, if any, at least forty-five (45) days prior to the expiration or anniversary date of this Policy.

b. If the Company fails to provide the renewal terms and statement of premium due in the manner required in Subsection 3.a. above, the "Named Certificate Holder" may elect to cancel the renewal Policy within forty-five (45) day period following the receipt of the renewal terms and statement of premium due. Earned premium for any period of coverage shall be calculated pro rata based upon the premium applicable to the original Policy and not the premium applicable to the renewal Policy.

c. If notice is mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

Signed by: [signature] Authorized Representative

01/17/2008 Date

EXHIBIT " 3 "
PAGE NO. 329

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 154546 - MB

August 29, 2008
11:20:58

Civ Fil Non-Pris
USAO #.: 08CV1588 CIVIL FILING
Judge..: DANA M SABRAW
Amount.: $350.00 CK
Check#.: BC68139

Total-> $350.00

FROM: ZURICH AMERICAN INSURANCE CO
VS MICHAEL PHILPOT, ET AL

ORIGINAL

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; and STEADFAST INSURANCE COMPANY, a Delaware corporation;

**DEFENDANTS**

MICHAEL L. PHILPOT; VIRGINIA B. HIRSCH; JOHN B. KUYKENDALL RENE ALEJANDRO LAPIDE, C. RICHIE MCNAMEE; and NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE

FILED 2008 AUG 29 AM 11:18 CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY DEPUTY

(b) County of Residence of First Listed Plaintiff Cook, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Los Angeles, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Edwin J. Richards / Christopher D. Glos
KUTAK ROCK LLP
18201 Von Karman Avenue, Suite 1100
Irvine, CA 92612
(949) 417-0971

Attorneys (If Known)
'08 CV 1588 DMS NLS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [X] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- [X] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury - Med. Malpractice
- [ ] 365 Personal Injury - Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motion to Vacate Sentence

Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus - Alien Detainee
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 USC, Sections 2201 and 2202

Brief description of cause:
Declaratory Relief Action

**VII. REQUESTED IN COMPLAINT:** [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** 75,000.00+ [ ] CHECK YES only if demanded in complaint: **JURY DEMAND:** [ ] Yes [X] No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE Roger T. Benitez DOCKET NUMBER 08CV0270BEN NLS

DATE August 28, 2008 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # 154716 AMOUNT $350.00 APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

MB 08/29/08

CSDJS44

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney tiling a case should complete the form as follows:

**I. (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When tlie petition for removal is granted, check this box.

Remanded &om Appellate Court. (3) Check this box for cases remanded to thedistrict court for hrther action. Use the date of remand as the lilitlg date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal tiom a magistrate judge's decision.

**VI. Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. 111 this space enter the dollar amount (in thousands ofdollars) being demanded or indicate other demand sucli as a preliminary injunclion.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.